# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| REPUBLIC OF KAZAKHSTAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANATOLIE STATI, GABRIEL STATI, | ) Civil Action No. 17-cv-02067-ABJ |
| ASCOM GROUP, S.A., AND TERRA RAF | ) |
| TRANS TRAIDING LTD., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

James E. Berger (DC Bar No. 481408)
Charlene C. Sun (DC Bar No. 1027854)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
csun@kslaw.com

Taylor T. Lankford (DC Bar No. 1002758)
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W., Ste. 200
Washington, DC 20006
Tel: (202) 737-0500
Fax: (212) 626-3737
tlankford@kslaw.com

*Counsel for Defendants*

April 20, 2018

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I.      INTRODUCTION ..................................................................................... 1

II.     LEGAL STANDARD................................................................................ 4

III.    FACTS ALLEGED IN THE COMPLAINT ............................................... 5

        A.      Construction Of The LPG Plant.................................................... 5

        B.      2008 Bidding Process For The LPG Plant .................................... 6

        C.      SCC Arbitration ........................................................................... 6

        D.      Swedish Annulment Proceedings ................................................ 7

        E.      Enforcement Proceedings ............................................................ 8

        F.      RICO Specific Allegations ........................................................... 9

IV.     ARGUMENT AND AUTHORITIES........................................................ 10

        A.      The ROK Fails to State A Claim Upon Which Relief May Be Granted For
                RICO ........................................................................................... 10

                1.      The Complaint Fails To Allege Cognizable Predicate Act Of
                        Racketeering ................................................................... 11

                        a.      Litigation Activities Do Not Constitute RICO Predicate Acts ..... 11

                        b.      The ROK Has Failed To Adequately Plead Money Laundering .. 14

                2.      The ROK Fails To Adequately Allege A Pattern of Racketeering
                        Activity ............................................................................ 16

                3.      The ROK Impermissibly Seeks To Apply RICO To Conduct That Is
                        Overwhelmingly Extraterritorial..................................... 21

                4.      The ROK Fails To Allege A Domestic Injury .......................... 25

                5.      The ROK Fails To Allege The Predicate Acts Are The But For Or
                        Proximate Cause Of Its Alleged Injuries ................................ 27

II.     THE ROK FAILS TO STATE A CLAIM AS TO RICO CONSPIRACY ...................... 28

III.   THE ROK'S FRAUD CLAIMS MUST BE DISMISSED ................................................ 29

    A.   The Court Lacks Subject Matter Jurisdiction Over The Fraud Claims ................ 29

    B.   The ROK Fails To State A Claim Upon Which Relief May Be Granted For Fraud
    ........................................................................................................................ 29

        1.   The ROK Does Not Plead Count III With Specificity ............................. 29

        2.   The ROK's Fraud Claims Regarding The U.S. Enforcement Actions Do
        Not Satisfy The Elements Of Fraud ......................................................... 33

IV.   THE ROK FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE
GRANTED FOR CIVIL CONSPIRACY ........................................................................ 36

V.   COMITY PRINCIPLES REQUIRE DEFERENCE TO THE SWEDISH COURTS ...... 36

    A.   Comity Requires Recognition Of the Seva Court Of Appeal's Ruling ................ 36

    B.   Claim Preclusion Bars The ROK's Claims .......................................................... 38

VI.   CONCLUSION .............................................................................................................. 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) ................................................................................36

*Anderson v. USAA Cas. Ins. Co.*,
  221 F.R.D. 250 (D.D.C. 2004) .............................................................................4

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*,
  No. 17-2324, 2018 WL 1464556 (7th Cir. Mar. 26, 2018) ................................26

*Armendariz v. Chowaiki*,
  EP-14-CV-451-KC, 2016 WL 8856919 (W.D. Tex. Mar. 31, 2016), *aff'd*, 683
  F. App'x 338 (5th Cir. 2017) ..............................................................................15

*W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
  235 F.3d 629 (D.C. Cir. 2001) ................................................................17, 18, 20

*B & H Nat'l Place, Inc. v. Beresford*,
  850 F. Supp. 2d 251 (D.D.C. 2012) ....................................................................36

*Bamba v. Res. Bank*,
  568 F. Supp. 2d 32 (D.D.C 2008) .......................................................................30

*Bascunan v. Elsaca*,
  874 F.3d 806 (2d Cir. 2017)................................................................................26

*Bender v. Rocky Mountain Drilling Assocs.*,
  648 F. Supp. 330 (D.D.C. 1986) .........................................................................32

*Bradley v. Nat'l Collegiate Athletic Ass'n*,
  249 F. Supp. 3d 149 (D.D.C. 2017) ....................................................................30

*Brewer v. D.C.*,
  105 F. Supp. 3d 74 (D.D.C. 2015) ......................................................................38

*Busby v. Capital One, N.A.*,
  772 F. Supp. 2d 268 (D.D.C. 2011) .............................................................*passim*

*Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*,
  569 F.3d 485 (D.C. Cir. 2009) .......................................................................40, 41

*Casares v. Wells Fargo Bank, N.A.*,
  268 F. Supp. 3d 248 (D.D.C. 2017) .................................................................39, 40

*Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu,*
  245 F. Supp. 3d 650 (D.N.J. 2017) ........................................................................25, 26

*Cheeks v. Fort Myer Constr. Corp.,*
  216 F. Supp. 3d 146 (D.D.C. 2016) ..............................................................................27

*City of Perry, Iowa v. Procter & Gamble Co.,*
  188 F. Supp. 3d 276 (S.D.N.Y. 2016)........................................................................4, 31

*Daedalus Capital LLC v. Vinecombe,*
  625 F. App'x 973 (11th Cir. 2015) ...............................................................................21

*E. Savs. Bank, FSB v. Papageorge,*
  31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd,* 629 F. App'x 1 (D.C. Cir. 2015)...................... *passim*

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n,*
  48 F.3d 1260 (D.C. Cir. 1995) .........................................................................17, 19, 20

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.,*
  246 F. Supp. 3d 52 (D.D.C. 2017) ..................................................................................4

*Elsevier, Inc. v. Grossman,*
  199 F. Supp. 3d 768 (S.D.N.Y. 2016), *order clarified sub nom.,* No. 12 Civ.
  5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016) ......................................26

*Exeed Indus., LLC v. Younis,*
  No. 15 C 14, 2016 WL 6599949 (N.D. Ill. Nov. 8, 2016)......................................26

*In the Matter of Extradition of Liuksila,*
  74 F. Supp. 3d 4 (D.D.C. 2014) ....................................................................................23

*Fehr v. McHugh,*
  413 A.2d 1285 (D.C. 1980) ...........................................................................................37

*Feld Ent. Inc. v. Am. Soc. for the Prevention of Cruelty to Animals,*
  873 F. Supp. 2d 288 (D.D.C. 2012) ............................................................................2, 12

*Golden v. Nadler, Pritikin & Mirabelli, LLC,*
  No. 05 C 0283, 2005 WL 2897397 (N.D. Ill. Nov. 1, 2005)............................20, 21

*Henry v. Farmer City State Bank,*
  808 F.2d 1228 (7th Cir. 1986) ......................................................................................41

*Himmelstein v. Comcast of the Dist., L.L.C.,*
  908 F. Supp. 2d 49 (D.D.C. 2012) .....................................................................33, 34, 35

*Hurst v. Socialist People's Libyan Arab Jamahiriya,*
  474 F. Supp. 2d 19 (D.D.C. 2007) ................................................................................38

*Ibrahim v. Titan Corp.*,
    391 F. Supp. 2d 10 (D.D.C. 2005) ...................................................................29

*Jackson v. ASA Holdings*,
    751 F. Supp. 2d 91 (D.D.C. 2010) ...............................................................4, 31

*Lary v. Ansari*,
    817 F.2d 1521 (11th Cir. 1987) ....................................................................40

*Lattisaw v. D.C.*,
    118 F. Supp. 3d 142 (D.D.C. 2015) ................................................................4

*Laufer v. Westminster Brokers, Ltd.*,
    532 A.2d 130 (D.C. 1987) .........................................................................38, 40

*Lefkowitz v. Reissman*,
    No. 12 Civ. 8703(RA), 2014 WL 925410 (S.D.N.Y. Mar. 7, 2014) .......................15

*Lewis v. Drug Enf't Admin.*,
    777 F. Supp. 2d 151 (D.D.C. 2011), *aff'd*, 2012 WL 1155698 (D.C. Cir. Mar.
    8, 2012) ..............................................................................................5, 8

*LG Display Co. v. Obayashi Seikou Co.*,
    919 F. Supp. 2d 17 (D.D.C. 2013) .................................................................37

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
    238 F.3d 363 (5th Cir. 2001) .........................................................................4

*Long Distance Serv. of Wash., Inc. v. MCI Telecomms. Corp.*,
    692 F. Supp. 1402 (D.D.C. 1988) ..................................................................29

*Luther v. Am. Nat. Bank of Minn.*,
    Civ. No. 12-1085 (MJD/LIB), 2012 WL 5471123 (D. Minn. Oct. 11, 2012)
    *report and recommendation adopted*, Civ. No. 12-1085 (MJD/LIB), 2012 WL
    5465888 (D. Minn. Nov. 9, 2012) ..................................................................14

*McCubbins v. BAC Home Loans Servicing, L.P.*,
    No. 2:11-CV-547, 2012 WL 140218 (S.D. Ohio 2012) .........................................34

*Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*,
    685 F. App'x 96 (3d Cir. 2017) .....................................................................29

*Nunn v. Satrom*,
    No. 2:12-CV-16, 2012 WL 12914317 (D.N.D. Oct. 26, 2012) ..............................16

*Peterson v. Phila. Stock Exch.*,
    717 F. Supp. 332 (E.D. Pa. 1989) *on reconsideration*, CIV. A. No. 89-0925,
    1989 WL 95553 (E.D. Pa. Aug. 14, 1989) .......................................................13

*Ricart v. Pan Am. World Airways, Inc.*,
  Civ. A. No. 89-0768(HHG), 1990 WL 236080 (D.D.C. Dec. 21, 1990)................................37

*RJR Nabisco, Inc. v. European Cmty.*,
  136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016) ............................................................... *passim*

*Roe v. Bernabei & Wachtel PLLC*,
  85 F. Supp. 3d 89 (D.D.C. 2015) ........................................................................20

*Safarini v. Ashcroft*,
  Civil Action No. 17-430 (RDM), 2018 WL 278658 (D.D.C Jan. 3, 2018) ............................36

*Saunders v. Davis*,
  Civil Action No.: 15-CV-2026 (RC), 2016 WL 4921418 (D.D.C. Sept. 15,
  2016) ......................................................................................................5

*Scott v. Dist. Hosp. Partners, L.P.*,
  60 F. Supp. 3d 156 (D.D.C. 2014), *aff'd*, No. 17-7061, 2018 WL 1391550
  (D.C. Cir. Mar. 6, 2018)..........................................................................5, 39, 40

*Snyder v. U.S. Equities Corp.*,
  No. 12-CV-6092 CJS, 2014 WL 317189 (W.D.N.Y. Jan. 28, 2014) ...................................13

*Son Ly v. Solin, Inc.*,
  910 F. Supp. 2d 22 (D.D.C. 2012) ......................................................................28

*U.S. Indus., Inc. v. Blake Constr. Co.*,
  765 F.2d 195 (D.C. Cir. 1985) .........................................................................39

*U.S. v. All Assets Held at Bank Julius*,
  251 F. Supp. 3d 82 (D.D.C. 2017) ..............................................................22, 23, 25

*U.S. v. One Gulfstream G-V Jet Aircraft*,
  941 F. Supp. 2d 1 (D.D.C. 2013) ...................................................................37, 39

*U.S. v. Pendergraft*,
  297 F.3d 1198 (11th Cir. 2002) ........................................................................13

*U.S. v. Philip Morris Inc.*,
  304 F. Supp. 2d 60 (D.D.C. 2004) .....................................................................23

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..........................................................................4

*Warnock v. State Farm Mut. Auto. Ins. Co.*,
  833 F. Supp. 2d 604 (S.D. Miss. 2011).................................................................13

*Watson v. Faris,*
    139 F. Supp. 3d 456 (D.D.C. 2015) ..................................................................16, 20

*Wiggins v. Hitchens,*
    853 F. Supp. 505 (D.D.C. 1994) ................................................................................36

*Wu v. Stomber,*
    883 F. Supp. 2d 233 (D.D.C. 2012), *aff'd,* 750 F.3d 944 (D.C. Cir. 2014) ............30

*In re Yelverton,*
    No. 09-00414, 2014 WL 7141938 (Bankr. D.D.C. Dec. 12, 2014), *aff'd,* 831
    F.3d 585 (D.C. Cir. 2016) ..........................................................................................28

**Statutes**

18 U.S.C. § 1341 ..............................................................................................................9. 22

18 U.S.C. § 1343 ..............................................................................................................9, 22

18 U.S.C. § 1956 ...................................................................................................................23

18 U.S.C. § 1956(a)(2)(A) ......................................................................................9, 14, 15, 22

18 U.S.C. § 1956(a)(2)(B)(i) ...................................................................................9, 14, 15, 22

18 U.S.C. § 1956(c)(7) .........................................................................................................15

18 U.S.C. § 1961 ..................................................................................................................10

18 U.S.C. § 1961(1)(A) .........................................................................................................10

18 U.S.C. § 1961(5) ..............................................................................................................10

18 U.S.C. § 1962(c) ........................................................................................................22, 28

18 U.S.C. § 1964(c) ..............................................................................................................25

28 U.S.C. § 1367(a) ..............................................................................................................29

28 U.S.C. § 1782 ..........................................................................................................9, 11, 33

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................................1, 5, 11

Restatement (Second) of Judgments § 24 (Am. Law Inst.1982) ......................................39

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Anatolie Stati, Gabriel Stati (collectively the "Statis"), Ascom Group S.A. ("Ascom"), and Terra Raf Trans Traiding Ltd. ("Terra") (together with the Statis, "Defendants"), submit this motion to dismiss the complaint and respectfully request that the complaint be dismissed without leave to amend.

## I.  INTRODUCTION

This action constitutes the latest chapter in the Republic of Kazakhstan's ("ROK") campaign to avoid its obligations under an arbitral award (the "Award") stemming from its expropriation of Defendants' investment in Kazakhstan.  As the Court is aware, the ROK has exhausted its ability to challenge to the Award directly, as the Swedish courts have (twice) refused to set aside the Award.  For its part, this Court has recognized the Award and entered judgment on it, creating the anomalous situation in which the ROK asks this Court to enjoin Defendants from enforcing **this Court's own judgment**.  In the end, however, the ROK's RICO and fraud claims fare no better than its efforts to avoid recognition of the Award under U.S. and international law.  Those claims fail at virtually every critical juncture, and they must be dismissed.

The ROK has made a painstaking effort to allege a "pattern" of "fraudulent acts" in an attempt to plead a RICO claim, which represents the only way it can invoke this Court's jurisdiction.  But even a cursory review of the complaint reveals it to rest on nothing more than a claim that Defendants allegedly overstated a single element of their damages in a foreign arbitration.  The ROK, in an effort to meet RICO's demanding pleading standards, alleges that **every** document containing **any** mention of that damages figure that was sent through the mail or over a wire constitutes a predicate act of "mail fraud" or "wire fraud," and it claims that every payment made by Defendants to their legal counsel in connection with the arbitration and related legal proceedings constituted an act of "money laundering."  It then claims, in opposition to both

1

reason and law, that Defendants' lawful petitions to seek recognition of the Award — which made **no claims** concerning the underlying facts, but rather merely set forth the findings of the arbitral tribunal and the courts that had already reviewed the Award – also constituted unlawful acts of racketeering.  The ROK makes these claims despite the longstanding and well-established principle that litigation conduct does not, absent allegations of additional, specified criminal activity, constitute actionable conduct under RICO.  *See, e.g., E. Savs. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) ("Abusive or sham litigation does not constitute a RICO predicate act"); *Feld Ent. Inc. v. Am. Soc. for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012) (outlining narrow exception).

In the end, the racketeering "scheme" alleged by the ROK constitutes nothing more than a claim that Defendants allegedly misrepresented to a Swedish arbitral tribunal how much money they spent building a liquefied petroleum gas plant (the "LPG Plant"), and the "pattern" alleged by the ROK amounts to nothing more than the fact that the allegedly inflated number was contained in multiple arbitration submissions, and that Defendants, once the Award had been rendered and given the imprimatur of Swedish law, sought to enforce that Award before national courts without confessing their alleged misconduct.  It is, Defendants submit, a preposterous theory that is completely inconsistent with established RICO jurisprudence.

Moreover, the only specifically-alleged injury — attorneys' fees and costs the ROK incurred in the U.S. Enforcement Actions — is not sufficiently alleged to have been proximately caused by the "scheme,"  which as alleged, could **only** have impacted the value of the LPG Plant (comprising only about 40% of the aggregate value of the awarded damages), and **no other components of the Award**.  Because the ROK has refused to pay **any** portion of the Award, it

2

would have incurred litigation costs in the U.S. Enforcement Actions even if the Award included no compensation for the LPG Plant.

Finally, even if the RICO claims were properly pled — and they are not — they would fail for multiple additional reasons. First, every critical occurrence in the "scheme" took place outside the United States – the ROK and Defendants are all domiciled outside the United States, the arbitration took place outside the United States, and any damage that the ROK suffered was suffered outside the United States. Second, the ROK's complaint is barred by the doctrine of comity, as it asks this Court to countermand the rulings of a foreign arbitral tribunal seated in Sweden and the Swedish courts by (a) exercising plenary jurisdiction over questions that the parties, by agreeing to arbitrate in Sweden, agreed to entrust to the arbitral tribunal and Swedish courts in their capacity as the supervisory jurisdiction courts , and (b) enjoining Defendants from enforcing an Award that was adjudged to be valid under the law governing it. Third, the claims in the complaint are barred by *res judicata*, as they were, in substance, fully litigated in the Swedish courts and in this Court.

The ROK's fraud claims fare no better. As any first-year law student knows, a fraud plaintiff must demonstrate that it has reasonably relied upon the alleged misrepresentation, and that it has suffered damage as a result. The ROK claims that it "relied" on Defendants' representations concerning the value of the LPG Plant, despite the fact that, as the complaint itself acknowledges, it contested Defendants' claims fiercely throughout the arbitration. Unsurprisingly, District of Columbia and federal courts have both held repeatedly that a party cannot claim to have "reasonably relied" on a litigation opponent's claims that it contested. *See, e.g., E. Savs.*, 629 F. App'x at 3 (finding no detrimental reliance on fraud perpetrated against the courts by plaintiffs' adversary in those proceedings) (citing *Aktieselskabet AF 21. Nov. 2001 v.*

*Fame Jeans Inc.*, 525 F.3d 8, 22–23 (D.C. Cir. 2008)).  That fundamental flaw, without more, compels dismissal of the fraud claim.

## II.     LEGAL STANDARD

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 66–67 (D.D.C. 2017) (citations omitted).  For purposes of this motion, factual allegations in the complaint are taken as true, but legal conclusions couched as factual allegations are not.  *See Lattisaw v. D.C.*, 118 F. Supp. 3d 142, 150–51 (D.D.C. 2015).

Importantly, Federal Rule of Civil Procedure 9(b) requires that a party making allegations sounding in fraud "state with particularity the circumstances constituting fraud or mistake," which includes the "who, what, when, where, and how." *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 252–53 (D.D.C. 2004).  General allegations of fraud – including collective or alternative allegations concerning who committed the allegedly fraudulent acts at issue – must be disregarded. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–05 (9th Cir. 2003); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368–69 (5th Cir. 2001)); *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 101 (D.D.C. 2010) (heightened pleading standard for fraud requires plaintiff to "specify which defendant or defendants committed each allegedly fraudulent act, instead [of] pleading fraud generally") (quoting *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 206 (D.D.C. 2009)); *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 290 (S.D. N.Y. 2016) (plaintiff's fraud claims failed to satisfy heightened pleading standards because, among others, it "lumps all Defendants together").  Because the ROK's RICO claims

4

are premised in fraud, those claims are subject to the 9(b) heightened pleading standard. *See*

*Saunders v. Davis*, Civil Action No.: 15-CV-2026 (RC), 2016 WL 4921418, at *12 (D.D.C.

Sept. 15, 2016) ("Where the alleged predicate act that forms the basis for the RICO claim

involves fraud, the predicate act must be plead with the particularity required by Federal Rule of

Civil Procedure 9(b).").

The Court may "'consider documents attached to or incorporated by the Complaint in

deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment'

including documents referenced or cited to in a complaint." *Scott v. Dist. Hosp. Partners, L.P.*,

60 F. Supp. 3d 156, 161 (D.D.C. 2014), *aff'd*, No. 17-7061, 2018 WL 1391550 (D.C. Cir. Mar.

6, 2018) (citations omitted).  In addition, "[t]he court may take judicial notice of public records

from other court proceedings." *Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C.

2011), *aff'd*, 2012 WL 1155698 (D.C. Cir. Mar. 8, 2012).

## III.     FACTS ALLEGED IN THE COMPLAINT

### A.     Construction Of The LPG Plant

The complaint alleges that between 1999 and 2004, the Statis acquired all the shares in

two Kazakh companies that had previously obtained approval to explore and develop various oil

and gas fields in Kazakhstan pursuant to Subsoil Use Contracts.  Compl. at ¶ 31.  Those

companies were Kazpolmunay LLP ("KPM") and TolkynneftegazLLP ("TNG").  *Id.*  KPM is

wholly-owned by Ascom, and TNG is wholly-owned by Terra, respectively.  *Id.* at ¶ 32.

Defendants and entities controlled by the Statis entered into various contracts to construct

the LPG Plant in 2006.  *Id.* at ¶ 59.  The ROK alleges that, in addition to contracting for

legitimate work, various Stati-related companies entered into illegitimate construction contracts

related to the LPG Plant.  *Id.* at ¶¶ 65-102.  The ROK alleges that these transactions artificially

inflated the construction costs.  *Id.* at ¶ 65.

The ROK alleges that TNG's financial statements, which it alleges were audited by KPMG, failed to disclose the role of Perkwood Investment Limited ("Perkwood"), a company controlled by the Statis, and its status as a related party. *Id.* ¶¶ 103-112. The ROK further alleges that the financial statements included false and misleading information about the costs incurred to construct the LPG Plant. *Id.* at ¶¶ 113-115. In addition, the ROK alleges that unaudited TNG interim financial statements and unaudited interim combined financial statements for TNG, KPM, and another Stati-controlled entity included false and misleading information about the costs incurred to construct the LPG Plant. *Id.* at ¶ 115.

### B.   2008 Bidding Process For The LPG Plant

In August 2008, the ROK alleges that the Statis attempted to sell the LPG Plant through a bidding process that included an Information Memorandum, which allegedly included inaccurate information (*id.* ¶¶ 119-125), and a KPMG report dated August 29, 2008 that also included inaccurate information about the LPG Plant (*id.* ¶ 126-129). The ROK alleges that one of the bidders was KazMunaiGas ("KMG"), the state-owned oil and gas company of Kazakhstan, and that KMG submitted a bid in reliance on the inaccurate information provided by the Statis and/or Stati companies during the 2008 sales process (the "KMG Indicative Offer"). *Id.* at ¶¶ 130-134.

### C.   SCC Arbitration

The ROK alleges that on or around March 12, 2009, construction of the LPG Plant was abandoned. *Id.* at ¶ 64. On July 21, 2010, the Kazakh Ministry of Oil and Gas terminated KPM and TNG's Subsoil Use Contracts, and on July 26, 2010, Defendants initiated an arbitral proceeding against the ROK pursuant to the Energy Charter Treaty and before the Stockholm Chamber of Commerce in Stockholm (the "SCC Arbitration"). *Id.* at ¶ 136-37. During the arbitration, the ROK alleges that the Defendants misled the SCC Arbitration tribunal regarding the amount of their investment in the LPG Plant. *Id.* at ¶ 141. The ROK also alleges that

Defendants violated a Document Production Order which it claims required that Defendants disclose the existence of an agreement with Perkwood. *Id.* ¶ 145. The ROK alleges that Defendants inaccurately represented to the SCC Arbitration tribunal that the KMG Indicative Offer was a reliable indication of the market value of the LPG Plant. *Id.* at ¶¶ 149-150. The ROK alleges that Defendants also submitted expert reports that relied on the bids in the 2008 sales process, submitted falsified financial statements, and gave false testimony. *Id.* at ¶ 153.

The SCC Arbitration tribunal issued a final award to Defendants and against the ROK of $497,685,101.00, which included $199 million for the LPG Plant. *Id.* ¶ 159.

### D.   Swedish Annulment Proceedings

The ROK has refused to satisfy the Award, and on March 19, 2014, the ROK instituted a proceeding before the Svea Court of Appeal in Stockholm to set-aside the Award ("Swedish Annulment Proceedings"). *Id.* ¶ 183. The ROK's initial filing contained no allegations of fraud, and attacked the award only on jurisdictional grounds. The ROK alleges that it only began to "unravel" the fraudulent scheme in August 2015, following its receipt of documents obtained through U.S. discovery proceedings. *Id.* at ¶¶ 182, 185. On October 5, 2015, the ROK amended its claim in the Swedish Annulment Proceedings to include an allegation that the Award was "procured by fraud," and thus contrary to Swedish public policy. *Id.* at ¶ 185. On December 9, 2016, however, the Svea Court of Appeal rejected the ROK's claim and issued a judgment refusing to annul the Award. *Id.* at ¶ 188. Among other things, the Svea Court of Appeal found that the allegedly false evidence concerning the LPG Plant costs, even if accepted as true, did not affect (either directly or indirectly) the SCC Arbitration tribunal's determination of the amount of damages. *Id.* at ¶ 188.

On February 3, 2017, the ROK filed a motion before the Swedish Supreme Court to quash the Svea Court of Appeal's judgment due to "grave procedural errors". *Id.* at ¶ 190.[1] As this Court is aware, the Swedish Supreme Court denied that motion on May 24, 2017, leaving the Svea Court of Appeals' judgment undisturbed. *See Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), ECF Nos. 36, 70.

### E.   Enforcement Proceedings

Because the ROK has refused to satisfy the Award voluntarily, Defendants commenced proceedings to enforce the Award in this Court (the "Washington Enforcement Proceedings"),[2] in New York (the "New York Enforcement Proceedings", and together with the Washington Enforcement Proceedings, the "U.S. Enforcement Proceedings"),[3] London (the "London Enforcement Proceedings"), Belgium, Sweden (the "Sweden Enforcement Proceedings"), the Netherlands (the "Netherlands Enforcement Proceedings"), and Luxembourg (the "Luxembourg Enforcement Proceedings") (together, the "Enforcement Proceedings"), and also initiated proceedings pursuant to 28 U.S.C. § 1782 in the United States (the "§ 1782 Proceedings"). *Id.* at ¶¶ 194-248. In each of those proceedings, the application filed by Defendants provided a brief overview of the dispute and the proceedings, and sought either (a) recognition of the Award, (b)

---

[1] The complaint, which was filed on October 5, 2017, does not account for the Swedish Supreme Court's October 24, 2017 decision denying the ROK's Motion for Extraordinary Review. *Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), Pet'rs' Suppl. Status Report Concerning Status of Proceedings in Sweden, ECF 64. In this motion to dismiss, "[t]he court may take judicial notice of public records from other court proceedings." *See Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011), *aff'd*, 2012 WL 1155698 (D.C. Cir. Mar. 8, 2012).

[2] On March 23, 2018 this Court confirmed the Award and denied the ROK's motion for reconsideration with respect to the Court's denial of the ROK's motion to amend its opposition to Defendants' petition to confirm the Award with the very same allegations of fraud that now form the basis of this action. *See Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), Memorandum Opinion, ECF No. 70 (Mar. 23, 2018).

[3] The New York Enforcement Proceedings were filed pursuant to Article 53 of the New York Civil Practice Law & Rules, which governs recognition of foreign country money judgments, and seek recognition of the Svea Court of Appeals' decision refusing to set aside the Award, which imbued the Award with the status of a Swedish court judgment. The New York Enforcement Proceedings further sought recognition of an additional judgment against the ROK in the amount of over $3.3 million, which the Svea Court of Appeal issued to compensate Defendants for their legal fees in connection with the set-aside action (and which the ROK has refused to do).

recognition of the Svea Court of Appeal's judgment, or (c) discovery in aid of foreign

proceedings.

### F.    RICO Specific Allegations

The ROK's RICO-specific allegations all concern the conduct of the arbitration and the

enforcement proceedings.  Specifically, the ROK alleges that Defendants and other agents and

employees of Anatole Stati, the Statis and/or the Stati Companies formed an associated-in-fact

enterprise (the "Enterprise"), and that the Defendants were employed by or associated with the

Enterprise and engaged in a "pattern of racketeering activity" through it.  *Id*. at ¶¶ 255-259.

The "pattern of racketeering activity" alleged by the ROK rests exclusively on two

categories of predicate acts:

**First**, the ROK alleges that Defendants' use of the mails and interstate/international wires

to file pleadings, briefs, and evidence in the SCC Arbitration, Swedish Annulment Proceedings,

Washington Enforcement Proceedings, § 1782 Proceedings, and the New York Enforcement

Proceedings constituted mail and/or wire fraud within the meaning of 18 U.S.C. §§ 1341 and

1343.  Compl. at ¶¶ 273, 167-168, 191-192, 204-205, 179-180, 249-250, 229-230.

**Second**, the ROK alleges that Defendants' payments to its counsel in the SCC Arbitration

and the Enforcement Proceedings constituted money laundering within the meaning of 18 U.S.C.

§ 1956(a)(2)(A) & (B)(i).  Compl. at ¶¶ 274, 169, 193, 226, 206, 181, 251, 231, 247.[4]

The ROK claims that these "racketeering acts" caused it – and unspecified "others" – to

suffer unspecified damages.  *Id*. at ¶¶ 277, 285.  The only "damages" that the ROK has alleged

specifically, however, are that the Enforcement Actions caused it to incur attorneys' fees and

expenses in the United States in connection with the United States legal proceedings.  *Id*.

---

[4] A list of the predicate acts alleged by the ROK, together with paragraph numbers, is attached hereto as Appendix A.

## IV.   ARGUMENT AND AUTHORITIES

### A.   The ROK Fails to State A Cognizable RICO Claim

RICO is predicated on the concept of "racketeering activity." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096–97, 195 L. Ed. 2d 476 (2016).  In order to state a claim under the civil RICO statute, a plaintiff must allege that the defendant committed, within a ten year period, "at least two acts of racketeering activity." 18 U.S.C. § 1961(5).  As pertinent here, the statute defines "racketeering activity" as "any act which is indictable" under an exclusive list of federal criminal offenses known as "predicate acts." *See id.* § 1961(1)(B); *see also RJR Nabisco*, 136 S. Ct. at 2096.[5]  For purposes of pleading a civil RICO action, however, pleading that a defendant committed two predicate offenses within the specified period is not itself enough – the plaintiff must also allege that the offenses were part of a "pattern of racketeering activity," meaning "a series of related predicates that together demonstrate the existence or threat of continued criminal activity," *RJR Nabisco*, 136 S. Ct. at 2097 (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)), **and** that the plaintiff suffered damages in the United States as a result of that pattern of racketeering activity. *Id.* at 2106.

The ROK's complaint fails at several of these levels. **First**, the predicate acts alleged by the ROK relate exclusively to Defendants' prosecution and conduct of the SCC Arbitration and the Enforcement Proceedings, and their payment of legal fees in connection with both.  Courts have, however, consistently rejected RICO claims based on the conduct of litigation, including fraudulent or maliciously-prosecuted litigation. **Second**, the ROK's complaint fails to

---

[5] The definition of "racketeering acts" also includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).  While Plaintiff's predicate act allegations do not specify which subsection of Section 1961 the alleged predicate acts fall within – *see, e.g.*, ¶ 231 ("each is an independent predicate act under 18 U.S.C. § 1961.") – Defendants respectfully submit that the complaint does not attempt to allege that Defendants engaged in any act that could fall within 1961(1)(A).

adequately plead either an "open ended" or "closed ended" pattern of racketeering activity within the meaning of governing law – it alleges, albeit in a longwinded and granular fashion, a single scheme, a single injury, and a single victim. **Third**, the "scheme" alleged in the complaint is predicated on activity that took place exclusively outside the United States. **Fourth**, the ROK's complaint fails to allege any facts from which the Court could conclude that the ROK (a) suffered damages as a "but for" and proximate result of the racketeering acts it has alleged, and/or (b) to the extent it did suffer recoverable damages, that it suffered those damages in the United States. Any one of these flaws independently would compel dismissal of the RICO counts of the complaint under Fed. R. Civ. P. 12(b)(6); collectively, they render those claims frivolous. They must be dismissed.

1. **The Complaint Fails To Allege Cognizable Predicate Act Of Racketeering**

a. **Litigation Activities Do Not Constitute RICO Predicate Acts**

As noted above, all of the allegations of mail and wire fraud in the complaint concern Defendants' use of the mails or interstate wires to transmit documents in connection with the SCC Arbitration and/or the Enforcement Proceedings. As to each of these adjudicative proceedings, the ROK alleges that "[e]ach pleading, brief, witness statement and/or other evidence in the SCC Arbitration, the Swedish Annulment Proceedings, the Washington Enforcement Proceedings, the New York § 1782 Proceedings, Defendants' § 1782 Proceedings, and the New York Enforcement Proceedings submitted through the Unites States mails, private or commercial interstate carriers, and/or interstate wires in furtherance of Defendants' fraudulent scheme to defraud Kazakhstan" constitutes racketeering activity. Compl. at ¶ 263.

This allegation — no matter how many times the ROK has repeated it in the complaint — simply does not support a civil RICO claim, as federal courts have refused consistently to

recognize RICO liability in connection with litigation activity.  Indeed, courts have held that

even "[a]busive or sham litigation does not constitute a RICO predicate act."  A court in this

District, in *Feld Entertainment Inc. v. American Society for the Prevention of Cruelty to Animals*,

873 F. Supp. 2d 288 (D.D.C. 2012), recognized the consensus among federal courts "refus[ing]

to allow 'litigation activities' such as filing fraudulent documents or engaging in baseless

litigation to serve as predicate acts for RICO" where, as here, the litigation acts constitute "the

only fraudulent conduct." *Id.* at 318 (citing *Dadanna v. Gaudio*, 156 F. Supp. 2d 153, 162 (D.

Conn. 2000)).  In *Feld*, the court permitted the RICO claim – which alleged that the defendant

had commenced both a lawsuit and engaged in extensive government advocacy through an agent

who it was alleged to have bribed – only because it found that the plaintiff had "adequately pled

the elements of money laundering, bribery, and obstruction of justice." *Id.* at 319.  The ROK has

not alleged any such acts in this case.[6]  More recently, in *Eastern Savings Bank, FSB v.

Papageorge*, 31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015), a court in

this District held, in reliance on authority from six federal circuits and four district courts, that

"[a]busive or sham litigation does not constitute a RICO predicate act." *Id.* at 13 (citations

omitted).  The *Eastern Savings Bank* court held that "the vast majority of the plaintiff's litany of

woes … cannot, as a matter of law, form the basis or a RICO complaint, since they are all

directly related to ongoing, non-frivolous litigation." *Id.* (citing *Deck v. Engineered Laminates*,

349 F.3d 1253, 1257-58 (10th Cir. 2003)).  That court, as others, also noted the important policy

reasons for refusing to allow losing litigants such as the ROK to bootstrap complaints about a

party's litigation conduct into a RICO claim, stating that "recognition of litigation related activity

---

[6] The ROK has alleged that Defendants' payments to their lawyers constituted "money laundering."  As discussed
in Section 1.b below, however, the ROK's allegation of money laundering is itself deficient on its face, and thus
cannot serve as an additional predicate to support the ROK's RICO claim.

as a predicate for RICO violations 'would subject almost any unsuccessful lawsuit to a colorable

extortion (and often a RICO) claim.'" *Id.* (citation omitted).

Other federal courts have reached the same conclusion, and indeed have stated the

principle in far stronger terms. *See, e.g., Snyder v. U.S. Equities Corp.*, No. 12-CV-6092 CJS,

2014 WL 317189, at *8 (W.D.N.Y. Jan. 28, 2014) (dismissing civil RICO claim where "the

gravamen of the allegations [was] . . . that the defendants pursued fraudulent litigation, using

fraudulent affidavits and filings, in an attempt to obtain money or property to which they were

not entitled," and finding that "litigation activities should not be actionable under the Civil RICO

statute . . ."); *Warnock v. State Farm Mut. Auto. Ins. Co.*, 833 F. Supp. 2d 604, 609 (S.D. Miss.

2011) ("Because the evidence demonstrates only the transmittal of allegedly false litigation

materials, . . . Warnock has not proven the predicate acts of mail or wire fraud.  For this reason

alone, Warnock's RICO claims under §§ 1962(c) and (d) must fail."); *U.S.  v. Pendergraft*, 297

F.3d 1198, 1208 (11th Cir. 2002) ("[P]rosecuting litigation activities as federal crimes would

undermine the policies of access and finality that animate our legal system. Moreover, allowing

such charges would arguably turn many state-law actions for malicious prosecution into federal

RICO actions."); *Peterson v. Phila. Stock Exch.*, 717 F. Supp. 332, 336 (E.D. Pa. 1989), *on*

*reconsideration*, CIV. A. No. 89-0925, 1989 WL 95553 (E.D. Pa. Aug. 14, 1989) (addressing

alleged RICO predicate acts of extortion and holding that ". . . Bear Stearns' attachment and

arbitration actions are legal proceedings, and not 'wrongful' within the meaning of § 1951(b)(2).

Thus, Mr. Peterson's reliance on the Hobbs Act, as a predicate racketeering activity, is

misplaced."); *Luther v. Am. Nat'l Bank of Minn.*, Civ. No. 12-1085 (MJD/LIB), 2012 WL

5471123, at *6 (D. Minn. Oct. 11, 2012), *report and recommendation adopted*, Civ. No. 12-1085

(MJD/LIB), 2012 WL 5465888 (D. Minn. Nov. 9, 2012) ("Even if any litigation documents that

were filed by the Defendant's counsel in the state court proceedings were false or fraudulent, as numerous courts around the country have held, such documents, generally, cannot be the basis of a RICO claim.") (citations omitted).

All the predicate acts the ROK alleges for its mail and wire fraud claims are related to legal filings.  Compl. at ¶¶ 263-273.  These "litigation activities" are simply not predicate acts within the meaning of RICO.

### b.    The ROK Has Failed To Adequately Plead Money Laundering

The ROK also claims that Defendants' payments of legal fees to their counsel constituted "money laundering" pursuant to 18 U.S.C. § 1956(a)(2)(A) & (B)(i), and that each such payment by Defendants to its counsel thus constituted a predicate act for RICO purposes.  This claim, too, is meritless.  In pertinent part, Section (a)(2) provides:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States-
>
> (A)    with the intent to promote the carrying on of specified unlawful activity; or
>
> (B)    knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part--
>
> > (i)    to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity

18 U.S.C. § 1956(a)(2)(A) & (B)(i).  The ROK's allegations fail to state a claim under either of the provisions they rely upon.

**First**, with respect to the ROK's allegation that Defendants' payment of legal fees to their counsel constituted a violation of Section 1956(a)(2)(A), the ROK has failed to allege any "specified unlawful activity" that the payments were made to "promote." Section 1956(c)(7) specifically lists the acts that must be promoted by a transfer of funds in order for the money laundering statute to potentially apply, and generally consists of the RICO predicate acts, including mail fraud and wire fraud. The "specified unlawful activity" is a material element of the offense under Section 1956(a)(2)(A). *See* 18 U.S.C. § 1956(a)(2)(A); *Lefkowitz v. Reissman*, No. 12 Civ. 8703(RA), 2014 WL 925410, at *6 (S.D.N.Y. Mar. 7, 2014) (finding no money laundering under 18 U.S.C. § 1956(a)(2)(A) because the only alleged "specified unlawful activity" was mail or wire fraud, and the plaintiff had not properly alleged that the defendants intended to commit mail or wire fraud). As noted above, the ROK, has failed to adequately allege any act or mail or wire fraud, and that failure fatally undermines its allegation of money laundering within the meaning of Section 1956(a)(2)(A). *Id.* Furthermore, a review of the list — which is set forth at 18 U.S.C. § 1956(c)(7) — reveals that the complaint does not allege **any** act covered by the crimes identified in that section. As specified above, federal courts have noted repeatedly that litigation activities — even fraudulent litigation activities — do not constitute unlawful activity.

The ROK's attempt to plead money laundering under Section 1956(a)(2)(B)(i) fails as well, for two reasons. In order to plead a violation of this provision, the ROK must allege that the money paid to the Defendants' attorneys was derived from the proceeds of an illegal activity. *See, e.g., Armendariz v. Chowaiki*, EP-14-CV-451-KC, 2016 WL 8856919, at *14 (W.D. Tex. Mar. 31, 2016), *aff'd*, 683 F. App'x 338 (5th Cir. 2017) ("Plaintiffs fail to allege that the money laundering involved the proceeds of unlawful activity, or that Defendants knew or believed that

it did."); *Nunn v. Satrom*, No. 2:12-CV-16, 2012 WL 12914317, at *4 (D.N.D. Oct. 26, 2012)

("Nunn has failed to plead that any of the alleged money laundering involved the proceeds of

unlawful activity."). The ROK makes no such allegation, and instead merely recites the

elements for a money laundering claim (Compl. at ¶ 274) without actually alleging that payments

to Defendants' counsel were made from the proceeds of illegal activities.[7]

In sum, the ROK's attempt to plead a money laundering claim fails to establish the

elements of that crime. As such, money laundering cannot be alleged as a predicate for the

RICO complaint. Coupled with the cases, discussed above, that have refused to recognize

litigation-related activities as RICO predicate acts, it is clear that the ROK has failed to

adequately allege even a single cognizable predicate act upon which to allege a RICO

conspiracy. The RICO claims must therefore be dismissed.

### 2.    The ROK Fails To Adequately Allege A Pattern of Racketeering Activity

Even if the predicate acts alleged by the ROK sufficed as "racketeering acts" — they do

not, for the reasons set forth above — the RICO claim fails to allege a "pattern" sufficient to

state a claim for relief under RICO. As a court in this District has noted, "[i]t will be the unusual

fraud that does not enlist the mails and wires in its service at least twice." *Watson v. Faris*, 139

F. Supp. 3d 456, 460–61 (D.D.C. 2015). Accordingly, courts caution that "RICO claims

premised on mail or wire fraud must be particularly scrutinized." *Id.* For those claims, the

pattern requirement takes special importance and "'helps to prevent ordinary business disputes

from becoming viable RICO claims.' Put another way, '[i]f the pattern requirement has any force

---

[7] The ROK likely has not alleged this because it cannot: There have been no "proceeds" from any of the litigation activities alleged in the complaint. The only "proceeds" there could be would be the amounts awarded to Defendants as damages in the Award. As the Court is aware, the ROK has not paid any part of the Award, and thus there are no "proceeds" that could have been used to pay counsel.

16

whatsoever, it is to prevent . . . ordinary commercial fraud from being transformed into a federal RICO claim . . .'"  *Id.* (citation omitted).

As noted above, in order to demonstrate a "pattern of racketeering activity," a RICO plaintiff must allege sufficient detail to plausibly suggest that the predicate acts "are related, and that they amount to pose a threat to **continued** criminal activity." *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 281–82 (D.D.C. 2011) (citation omitted) (emphasis added).  The ROK's complaint, aside from conclusory allegations, fails completely to allege this.  There is a threat to "continued criminal activity" if there is either (i) a "closed period of repeated conduct," or (ii) an open-ended continuity consisting of "past conduct that by its nature projects into the future with a threat of repetition." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995) (citation omitted).

The D.C. Circuit has created a multifactor analysis to evaluate whether the purported pattern of racketeering activity is sufficiently supported by factual allegations.  The relevant factors include "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2001) (*citing Edmondson*, 48 F.3d at 1265). In applying this test it is well-established that a 'single scheme . . . designed to frustrate one transaction and inflict[] a single, discrete injury on a small number of victims . . . fails to meet RICO's requirement of a pattern of racketeering activity.'" *Busby*, 772 F. Supp. 2d at 282 (citation omitted).  The focus of the pattern analysis is the alleged predicate acts. *See, e.g.*, *Busby*, 772 F. Supp. 2d at 281–82.

The ROK has failed to allege any cognizable predicate acts. Even if it had, however, it is clear that the complaint alleges a single scheme, comprised entirely of a single claim made by Defendants in an arbitration, and related litigations that became necessary to enforce the result of that arbitration, directed at a single "victim," the ROK. *See, e.g.,* Compl. at ¶ 258 ("Defendants operated the Enterprise to defraud Kazakhstan and others of money and property and/or to unjustly enrich themselves."). With respect to the first, second, and third factors — the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts — the complaint purports to allege a series of predicate acts from July 2010 to the present, Compl. at ¶¶ 135-169 (SCC Arbitration proceedings); ¶¶ 182-193 (Svea Court of Appeal proceedings); ¶¶ 194-206; 227-231;248-251 (U.S. Enforcement Proceedings); *see also* ¶¶ 263-274, but it is clear that these "acts" all amount to nothing more than (a) repetition of the **same fact** in the many papers that ordinarily would be filed in a major, complex and long-running arbitration, and/or (b) Defendants' failure to confess the alleged falsity of their prior statements in later recognition proceedings. These various "acts," in other words, are not "acts" at all, but rather the **same alleged act** repeated over and over again. The same can be said of the ROK's allegations that Defendants engaged in "money laundering" by paying their U.S. attorneys over a period of time for work in these proceedings. *Id.* at ¶¶ 274-78. Furthermore, as noted above, **all** the acts relate to Defendants' prosecution or defense of the various legal proceedings between Defendants and the ROK related to the ROK's decision to expropriate Defendants' investment in oil and gas fields in Kazakhstan. In *W. Assocs.*, 235 F.3d at 634, the D.C. Circuit addressed RICO claims related to a business dispute involving alleged fraud and cover up over an eight-year period. It affirmed dismissal of the complaint because the plaintiff had alleged a single claim, and concluded that "Market's conduct is more accurately characterized as a single effort

to diminish the value of Western's partnership interest, primarily by concealing cost overruns or shifting the burden of financing them." *Id.* Similarly, the ROK alleges a single scheme to maximize its potential recovery resulting from the ROK's expropriation of the LPG Plant. As in *W. Associates,* the fact that the scheme is alleged to have spanned several years and to have involved multiple misrepresentations in financial and related documents is rendered immaterial by the fact that the "misrepresentations" were all the same, and the "scheme" had a singular objective and target. Just as the D.C. Circuit found that the complaint in *W. Associates* was required to be dismissed, so must the ROK's RICO claim here.

The fourth and fifth factors — the number of victims and the number of perpetrators — also demonstrate a single scheme. Although the ROK alleges that the scheme has victims other than the ROK (*see* Compl. at ¶ 258), it never identifies any of them, and conclusory allegations of "other victims" do not suffice. *See Busby*, 772 F. Supp. 2d at 282 ("Although the plaintiff states in a conclusory fashion that other D.C. homeowners have been similarly victimized by the defendants, the plaintiff has identified no similar actions taken by the defendants against any other homeowners."). The **only** alleged "victim" of the alleged predicate acts is the ROK, and the **only** alleged perpetrators are the four defendants. Combined with the single goal, this indicates a single scheme. In *Edmondson,* the D.C. Circuit affirmed dismissal of a complaint against tenants who employed a variety of tactics "to prevent or delay the sale of Alban Towers, or to secure a ransom for allowing the sale to proceed." 48 F.3d at 1265. The court stressed the single discrete goal as the most important factor, but also noted that the alleged scheme involved "a single discrete injury, the loss of the sale (or payment of the ransom), suffered by a small number of victims." *Id.*; *see also Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 101 (D.D.C. 2015) ("Here there is but a single victim of Defendants' alleged racketeering activity:

Plaintiff.  There is a single goal to the racketeering activity: an increased likelihood of success in the Phoenix litigation, and a single (albeit repetitive) injury: infringement of Plaintiff's intellectual property rights.").

The sixth factor, the character of the unlawful activity, also suggests a single scheme. As an initial matter, because the alleged scheme deals with alleged racketeering based on predicate mail and wire fraud claims, the alleged pattern must be particularly scrutinized. *Watson*, 139 F. Supp. 3d at 460–61.  In addition, the alleged scheme deals with litigation activity related to a single dispute.  As noted above, courts have held that is not a "scheme" at all; assuming, *arguendo*, the Court were to disagree, it is a "scheme" whose simplicity weighs heavily against a finding of a "pattern of racketeering."  *See generally Golden v. Nadler, Pritikin & Mirabelli, LLC*, No. 05 C 0283, 2005 WL 2897397 at *7 (N.D. Ill. Nov. 1, 2005).

In sum, **all** of the alleged predicate acts relate to a single element of a single legal dispute between the parties concerning the expropriation of Defendants' investment in Kazakhstan. These factors demonstrate compellingly that the ROK has alleged a single scheme.

The ROK's failure to adequately allege a pattern of racketeering is further illustrated by its failure to allege a threat of "continued criminal conduct."  Although the ROK alleges that Anatolie Stati demonstrated a pattern of engaging in deceptive conduct (*see* Compl. at ¶ 94), there is no allegation that the Statis or other defendants engaged in fraudulent litigation activities outside of the claims related to the valuation of the LPG Plant.  In sum, because the alleged racketeering addresses a single scheme with limited victims, there is no "closed-ended continuity."  *See W. Assocs.*, 235 F.3d at 633-34; *Edmondson*, 48 F.3d 1260.

Nor is there any "open-ended continuity."  Although the ROK alleges that the scheme is "ongoing" (by virtue of the continued pendency of recognition and enforcement proceedings)

and seeks an injunction, the alleged scheme has a natural ending point — enforcement and satisfaction of the Award — which leads to the conclusion that there is no threat of repetition. *See Golden v. Nadler, Pritikin & Mirabelli, LLC*, 2005 WL 2897397 at *7 (N.D. Ill. Nov. 1, 2005) ("The Seventh Circuit has held that schemes that have a natural ending point cannot support 'a specific threat of repetition.' The conduct alleged by Golden has a natural ending point: the end of the domestic relations case.") (citation omitted); *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 976–77 (11th Cir. 2015) ("We agree with the district court '[t]here is no threat that [Appellees'] alleged pattern of racketeering activity will continue into the future because their goal has been realized in the acquiring of the QU Project, and there is no longer a working relationship between the two companies giving rise to the opportunity for Defendants' pattern of predicate acts to persist into the future.").

In short, the ROK's RICO claims should be dismissed for failure to allege facts sufficient to demonstrate a pattern of racketeering activity, as required to state a claim for RICO.

### 3. The ROK Impermissibly Seeks To Apply RICO To Conduct That Is Overwhelmingly Extraterritorial

Count I must also be dismissed because the ROK impermissibly seeks to apply RICO to conduct that is overwhelmingly extraterritorial. The Supreme Court has provided a two-step framework for examining the extraterritorial application of federal law. First, courts must determine whether the statute in question expresses a clear indication that it applies extraterritorially. *RJR Nabisco,* 136 S. Ct. at 2100. If the statute does express an intent that it applies extraterritorially, then it would apply to conduct abroad. *Id.* at 2101. If the statute does not, courts must move to the second step and examine the "statute's 'focus'" to evaluate whether "the case involves a permissible domestic application" of the statute. *Id.* Under the second step, "if the conduct relevant to the focus occurred in a foreign country, then the case involves an

impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." *Id.*

### a. D.C. Courts Find No Clear Indication Of Extraterritoriality In The Mail And Wire Fraud Statutes

Analysis of the first prong has already been settled by existing case law, and no further analysis is required.  In *RJR*, the Supreme Court held that "RICO gives a clear, affirmative indication that § 1962 applies to foreign racketeering activity — but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *Id* at 2102.

Count I addresses violations of Section 1962(c).  In *RJR* the Supreme Court held that Section 1962(c) "applies abroad . . . to the extent that the underlying predicate statutes are extraterritorial." *Id.* at 2104.  The ROK alleges racketeering activities in violation of the federal: (1) mail fraud statute, 18 U.S.C. § 1341; (2) wire fraud statute, 18 U.S.C. § 1343; and (3) money laundering statute, 18 U.S.C. § 1956(a)(2)(A) & (B)(i), as predicate acts for its RICO claims. *See* Compl. at ¶¶ 259, 263-274.

In the appeal underlying the *RJR* case, the Second Circuit held, and RJR did not dispute, that the statutes for mail and wire fraud "do not contain the clear indication needed to overcome the presumption against extraterritoriality," but that "the relevant provision of the money laundering . . . statute[] expressly provide[s] for extraterritorial application in certain circumstances." *Id.* at 2105.  Recent cases from this District are in accord with the Second Circuit's view.  In *U.S. v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 101–02, 93 (D.D.C. 2017), the court addressed the extraterritoriality of wire fraud and concluded that "[n]othing in the text, legislative history, or context of the wire fraud statute expressly rebuts the presumption against extraterritoriality."  It also addressed money laundering and concluded that "[t]he language of 18 U.S.C. § 1956 expressly indicates that Congress intended for the statute to

22

apply to conduct abroad." *Id.* Because the mail and wire fraud statutes are nearly identical, courts in this District have held that cases construing one of the statutes apply equally to the other. *See, e.g., U.S. v. Philip Morris Inc.*, 304 F. Supp. 2d 60, 70 n.5 (D.D.C. 2004) ("The requisite elements of 'scheme to defraud' under the wire fraud statute . . . and the mail fraud statute . . . are identical. Thus, cases construing mail fraud apply to the wire fraud statute as well.") (citing *U.S. v. Lemire*, 720 F.2d 1327, 1335 n. 6 (D.C. Cir. 1983)); *In the Matter of Extradition of Liuksila*, 74 F. Supp. 3d 4, 11 (D.D.C. 2014). Accordingly, the holding that the wire fraud statute is not expressly extraterritorial applies equally to the mail fraud statute, and those statutes do not apply to conduct outside the United States.

### b. The Focus Of The Mail And Wire Fraud Statutes Do Not Involve Domestic Application In This Case

With respect to the second prong, courts "determine whether the case involves a domestic application of the statute . . . by looking to the statute's 'focus.'" *RJR*, 136 S. Ct. at 2101.

Analyzing the wire fraud statute, the court in *Bank Julius* held that the scheme to defraud is the focus of a wire fraud claim, and that "a complaint alleges a domestic application of wire fraud when (1) a defendant or coconspirator commits a substantial amount of conduct in the United States, (2) the conduct is integral to the commission of the scheme to defraud, and (3) at least some of the conduct involves the use of U.S. wires in furtherance of the scheme to defraud." *Bank Julius*, 251 F. Supp. 3d at 103, 93. The ROK's complaint does not establish any of these elements.

First, the ROK has not alleged that a substantial amount of the scheme to defraud took place in United States. As the complaint makes clear, the central purpose of the "scheme" — which is alleged to have been perpetrated by non-U.S. domiciliaries — was to maximize the value of the LPG Plant, which is in Kazakhstan, in an arbitration, which took place in Sweden.

23

With respect to the mail and wire fraud claims, the only conduct related to the "scheme" to defraud specifically alleged to have occurred in the United States is (1) Defendants' communications with U.S. counsel who represented Defendants in various foreign proceedings (Compl. at ¶¶ 135-251); and (2) Defendants' commencement and prosecution of legal proceedings to recognize and enforce the Award in the U.S., including in Washington, D.C. and New York. *Id.* at ¶¶ 194-206; 227-231;248-251. The vast majority of the conduct related to the alleged scheme to defraud is alleged to have taken place outside of the United States, including the following: (1) the SCC Arbitration proceedings (*id.* at ¶¶ 135-169) (Sweden); (2) the Svea Court of Appeal proceedings (*id.* at ¶¶ 182-193) (Sweden); (3) Swedish Supreme Court proceedings (Sweden); and (4) various legal proceedings abroad to enforce the Award including the (a) London Enforcement Proceedings (*id.* at ¶¶ 207-226); (b) Sweden Enforcement Proceedings (*id.* ¶¶ 234-240); (c) Netherlands Enforcement proceedings (*id.* at ¶ 241); and (d) Luxembourg Enforcement Proceedings (*id.* at ¶¶ 242-247).

Second, none of the conduct alleged to have taken place in the United States is critical to the alleged scheme to defraud. The core allegations relate to the proceedings in Sweden (the SCC Arbitration Proceeding and the Swedish Annulment Proceedings) that resulted in the Award; everything else — including the Enforcement Proceedings — is necessarily derivative of the Award, and aside from alleging that Defendants somehow acted fraudulently by claiming that the Award was valid (*see* Compl. at ¶¶ 194-251),[8] the ROK does not allege that Defendants made any false statements in the course of the Enforcement Proceedings. The sole U.S. connection to the SCC Arbitration is that Defendants were represented by U.S.-based lawyers, and that they communicated with and paid counsel in connection with that proceeding. *Id.* at ¶¶

---

[8] The Award is, of course, valid, as found by the Svea Court of Appeal (and the Swedish Supreme Court), and subsequently by this Court.

135-251.  Defendants' retention of lawyers based in the United States is not alleged to have been

integral to the commission of the alleged scheme to defraud.  The ROK also alleges that

Defendants initiated and participated in various legal proceedings in the United States related to

enforcement of the Award, including legal proceedings in Washington, D.C. and New York.  *Id.*

at ¶¶ 194-206; 227-231;248-251.  Those U.S. proceedings are not central to the commission of

the alleged scheme to defraud.  As the ROK alleges, Defendants have sought to enforce the

Award in multiple other jurisdictions.  Accordingly, the ROK's complaint improperly seeks

relief for extraterritorial conduct.  *See Bank Julius*, 251 F. Supp. 3d at 82; *RJR Nabisco,* 136 S.

Ct. at 2102.

### 4.    The ROK Fails To Allege A Domestic Injury

The RICO claims must also be dismissed because the ROK has failed to adequately plead

a domestic injury.  The court in *RJR* held that section 1964(c), which gives a private right of

action to "[a]ny person injured in his business or property by reason of a violation of Section

1962" (18 U.S.C. § 1964(c)), must be evaluated separately from section 1962, and that it "does

not overcome the presumption against extraterritoriality" (*RJR*, 136 S. Ct. at 2106).  As the

Supreme Court explained, "providing a private civil remedy for foreign conduct [would] create[]

a potential for international friction beyond that presented by merely applying U.S. substantive

law to that foreign conduct."  *Id.*  Accordingly, "[a] private RICO plaintiff . . . must allege and

prove a **domestic** injury to its business or property."  *Id.* (emphasis in original).

Although the issue of how to prove domestic injury has not been addressed by the D.C.

Circuit since *RJR* was decided, most courts to address the issue have "focused on where

plaintiffs' injuries were felt."  *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, 245 F. Supp. 3d 650,

657-58 (D.N.J. 2017).  To determine where an injury is felt, courts first determine what kind of

injury the plaintiff is alleged to have suffered.  "If the plaintiff has suffered an injury to his or her

business, the court should ask where substantial negative business consequences occurred.  By contrast, if the plaintiff has suffered an injury to his or her property, the court should ask where the plaintiff parted with the property or where the property was damaged." *Elsevier, Inc. v. Grossman*, 199 F. Supp. 3d 768, 786 (S.D.N.Y. 2016), *order clarified sub nom.*, No. 12 Civ. 5121 (KPF), 2016 WL 7077037 (S.D.N.Y. Dec. 2, 2016).  An injury to money is an injury to property.  *Bascunan v. Elsaca*, 874 F.3d 806, 820–21 (2d Cir. 2017).  If the injury is to specific money, the injury is tangible and is "domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." *Id.*  By contrast, with respect to intangible property, "[i]t is well understood that a party experiences or sustains injuries . . . at its residence . . ." *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, No. 17-2324, 2018 WL 1464556, at *4 (7th Cir. Mar. 26, 2018) (citations omitted).

With respect to its RICO claims, the ROK has alleged damage in the form of attorneys' fees for various proceedings in the United States, and it alleges that the expenses were incurred "in the United States." Compl. at ¶ 277.  Despite this conclusory assertion, it is clear that the alleged "injury" was not the theft of specific funds (*i.e.*, tangible property), but rather the incurrence of an obligation to pay legal fees (*i.e.*, a debt, which constitutes intangible property). As the Seventh Circuit held in *Armada*, an injury to intangible property is sustained at the party's residence – here, in Kazakhstan.  *Armada*, 2018 WL 1464556, at *4.  Moreover, the alleged injury flows from the Award and the Swedish proceedings affirming the award.  *See Exeed Indus., LLC v. Younis*, No. 15 C 14, 2016 WL 6599949, at *3 (N.D. Ill. Nov. 8, 2016); *Cevdet*, 245 F. Supp. 3d at 658.  If the SCC Arbitration panel did not award Defendants allegedly improper damages, the ROK would have no injury.  There is no question that the ultimate source

of the ROK's alleged injury, the Award and the Swedish proceedings affirming the award, have

no connection to the United States at all.

### 5. The ROK Fails To Allege The Predicate Acts Are The But For Or Proximate Cause Of Its Alleged Injuries

Finally, to prevail on its RICO claims, the ROK must show "that a RICO predicate

offense 'not only was a "but for" cause of his injury, but was the proximate cause as well'.

There must be 'some direct relation between the injury asserted and the injurious conduct

alleged. A link that is too remote, purely contingent, or indirect[t] is insufficient.'" *Cheeks*, 216

F. Supp. 3d at 153 (*citing Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9, 130 S.Ct. 983, 175

L.Ed.2d 943 (2010) (internal quotation marks omitted). "Put another way, 'the compensable

injury flowing from a RICO violation necessarily is the harm caused by the predicate acts.'" *E.*

*Savs. Bank*, 31 F. Supp. 3d 1, 12 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) (citing

*Hemi Grp.* 559 U.S. at 13). The ROK does not even attempt to allege such a causal relationship.

Although the ROK claims that the alleged "racketeering" caused it to suffer unspecified

damages, the only "damages" that the ROK has alleged specifically are attorneys' fees and

expenses in connection with the U.S. Enforcement Actions. Compl. at ¶¶ 277, 285. The alleged

"racketeering," however, is not the "but for" or proximate cause of those litigation costs and

expenses, for two reasons. First, the ROK has not alleged that, but for the alleged wrongful

conduct, the SCC arbitration tribunal would not have ruled in Defendants' favor, even if for a

lesser amount that excluded or reduced damages for the LPG Plant. Second, the ROK has not

alleged that it would have paid the Award promptly and voluntarily had the additional value of

the LPG Plant that the ROK attributes to Defendants' alleged inflation of its construction costs

not been included in the Award. *Id.* at ¶¶ 159-273. Accordingly, the ROK has not alleged that

its legal expenses in connection with the U.S. Enforcement Proceedings were caused by the

fraud; to the contrary, the most reasonable inference from the complaint is that the ROK would

have incurred litigation expenses in the Enforcement Actions **even if the Award had contained**

**no amounts for the LPG Plant**.  Accordingly, the ROK has not alleged damages that are the

proximate cause of the alleged racketeering activity and its RICO claims must be dismissed.

*See, e.g., E. Savs. Bank*, 31 F. Supp. 3d at 15 ("[T]he alleged economic damages arose from the

plaintiff's expenditure of funds in pursuing or defending litigation with the defendants.  This is

exactly the type of injury barred by [RICO case law], since the injury—expending funds on

litigation—is wholly removed from the alleged predicate acts—extortion, witness tampering, and

witness bribery.").

For all the foregoing reasons, the ROK's RICO claim fails to state a cognizable cause of

action under the civil RICO statute.  It must be dismissed.

## II.   THE ROK FAILS TO STATE A CLAIM AS TO RICO CONSPIRACY

Count II of the complaint must also be dismissed.  Because the ROK has not stated a

claim under RICO Section 1962(c), its claim for RICO conspiracy under Section 1962(d)

necessarily fails as well. *E. Sav. Bank*, 31 F. Supp. 3d 1, 15 (D.D.C. 2014), *aff'd*, 629 F. App'x 1

(D.C. Cir. 2015) ("[I]ts claim under § 1962(d) must fail, because there was no violation in which

the defendant could have conspired.") (citations omitted); *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d

22, 27–28 (D.D.C. 2012) ("For the reasons explained above, plaintiffs have failed to set forth any

claim for a RICO violation.  Accordingly, they are unable to establish that 'two or more people

agreed to commit a [RICO violation],' which is necessary to state a claim for a RICO

conspiracy."); *In re Yelverton*, No. 09-00414, 2014 WL 7141938, at *14 (Bankr. D.D.C. Dec. 12,

2014), *aff'd*, 831 F.3d 585 (D.C. Cir. 2016) ("Because Yelverton's RICO claim under § 1962(c)

fails to plead a violation, his RICO conspiracy claim under § 1962(d) based on the same facts

fails as well.") (citations omitted); *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x

96, 102 (3d Cir. 2017) ("Because Northeast Revenue's substantive RICO claim fails as a matter
of law, it follows that its conspiracy claim also fails.").

## III.    THE ROK'S FRAUD CLAIMS MUST BE DISMISSED

### A.    The Court Lacks Subject Matter Jurisdiction Over The Fraud Claims

The ROK has sought to invoke the Court's supplemental jurisdiction in connection with
its fraud claims pursuant to 28 U.S.C. § 1367(a).  Compl. at ¶ 28.  There is no other basis for
subject matter jurisdiction over the fraud claims.  The ROK has not alleged any claims other than
its RICO claims that raise a federal question.  *See, e.g., Long Distance Serv. of Wash., Inc.*, 692
F. Supp. 1402, 1406 (dismissing state law claims, including fraud claims, because no federal
question was pleaded).  Moreover, the ROK has not alleged, and this Court cannot exercise,
diversity jurisdiction over the fraud claims.  *See Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 29
(D.D.C. 2005) (no diversity jurisdiction when suit consists of only foreign persons against
another foreign person).  Because the Court lacks subject matter jurisdiction over the fraud
claims and the RICO claims upon which they depend for jurisdiction are themselves subject to
dismissal, they must be dismissed.  *E.g., Long Distance Serv. of Wash., Inc. v. MCI Telecomms.
Corp.*, 692 F. Supp. 1402, 1406 (D.D.C. 1988) (dismissing common law claims of fraud, among
other claims, after dismissal of RICO claims absent any other basis for federal jurisdiction).

### B.    The ROK Fails To State A Cognizable Cause of Action for Fraud

#### 1.    The ROK Does Not Plead Fraud With Specificity

The Court must dismiss Count III of the complaint because the ROK does not plead its
fraud allegations with the specificity required by the "heightened pleading standard" under Rule
9(b), which  "requires plaintiffs to plead with particularity the 'who, what, when, where, and
how' concerning the circumstances of the fraud." *Wu v. Stomber*, 883 F. Supp. 2d 233, 270

(D.D.C. 2012), *aff'd*, 750 F.3d 944 (D.C. Cir. 2014) (citing *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004)).

Bare, conclusory allegations and threadbare recitals of the elements of fraud do not satisfy the heightened pleading requirement under Rule 9(b). *See, e.g.*, *Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 171 (D.D.C. 2017); *Bamba v. Res. Bank*, 568 F. Supp. 2d 32, 35 (D.D.C. 2008) (conclusory statements do not satisfy heightened pleading requirement for fraud claims) (citing *Bennett v. Kiggins*, 377 A.2d 57, 59-69 (D.D.C. 1977)); *Busby*, 772 F. Supp. 2d at 276 (citing *U.S. ex rel. Joseph v. Cannon*, 642 F. 2d 1373, 1386 (D.C. Cir. 1981)); *E. Savs.*, 31 F. Supp. 3d at 17 ("fraud 'is never presumed and must be particularly pleaded'") (citation omitted).  That heightened pleading requirement not only "discourage[s] the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude," it also "guarantee[s] all defendants sufficient information to allow for preparation of a response." *Id.* (quoting *U.S. ex rel. Joseph v. Cannon*, 642 F. 2d 1373, 1386 (D.C. Cir. 1981)) (internal quotations omitted).

Although the complaint alleges misrepresentations and/or omissions, the ROK does not plead **which** misrepresentations and omissions form the basis for its fraud claim. *See* Compl. at ¶ 289.  Instead, the ROK simply re-alleges all 279 paragraphs of the factual narrative from its complaint. *Id.* As the court in *Busby* observed, "'fraud' encompasses a wide variety of activities." *Busby*, 772 F. Supp. 2d at 277 (citation omitted).  As such, the complaint's allusions to a wide variety of conduct dating back to the 2006 execution of the Perkwood Agreement that could potentially relate to its fraud claims, are insufficiently specific.  For example, although the complaint alleges that the fraud claims "aris[e] under state law" (Compl. at ¶ 28), the misrepresentations and omissions alleged in the narrative of the complaint span numerous

jurisdictions around the world, and have no recognizable connection to the District of Columbia. The scattershot fashion in which the ROK has pleaded its fraud claims is precisely one of the situations that Rule 9(b) was intended to prevent, as the complaint leaves Defendants to comb through a 93-page complaint to determine the acts that form the basis of the ROK's fraud claims.

In addition, the ROK has also impermissibly accused Defendants of fraud *en bloc*. The heightened pleading standard for fraud requires the ROK to "specify which defendant or defendants committed each allegedly fraudulent act, instead [of] pleading fraud generally." *Jackson v. ASA Holdings*, 751 F. Supp. 2d 91, 101 (D.D.C. 2010) (quoting *Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 206 (D.D.C. 2009)); *see City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 290 (S.D. N.Y. 2016) (plaintiff's fraud claims failed to satisfy heightened pleading standards because, among others, it "lumps all Defendants together").   The ROK has not done this, instead alleging that **all** Defendants committed (unspecified) acts of fraud.  Compl. at ¶¶ 288-294.   Yet again, Defendants are left to deduce not just the substance of the ROK's accusations, but the defendants against whom they are directed.  The ROK's pleading of fraud in gross fails to satisfy the requirements of Rule 9(b) because it does not provide Defendants with sufficient information and notice with respect to the allegations against them.

Similarly, the ROK alludes to numerous acts of purported fraud in reference to "Anatolie Stati, or in the alternative the Statis and/or the Stati Companies." *See, e.g.*, Compl. at ¶¶ 96 (alleging that TNG was caused to pay "or purport[ed] to pay" for unspecified equipment), 112 (alleging that falsified financial statements were obtained with the blessing of a major international accounting firm), 114 (costs of LPG Plant were artificially inflated through fraudulent schemes), 124 (alleging that TNG's purportedly falsified financial statements and other false information were provided for the Information Memorandum), 125, 128 (alleging

31

failure to disclose Perkwood as a related party), 131 (alleging that false and misleading

information provided to KMG), 163 (alleging that KMG indicative offer was falsely and

fraudulently obtained)).  Not only has the ROK lumped Defendants together, it has even mixed

them with third parties that are not subject to the complaint, which defines "Stati Companies" as

"multiple corporate entities ultimately controlled by the Statis."  *Id.* at ¶ 2.  As to who these other

"Stati Companies" are, the complaint does not say.  Defendants — and this Court — are left to

guess.

Finally, the ROK relies extensively on "information and belief" allegations.  *See* Compl.

at ¶¶ 52 (representations to purchasers of Notes were false), 101 (alleging that entry in TNG

accounting database was a false entry and artificially inflated construction costs of LPG Plant),

111 (failure to make any disclosures regarding Perkwood in TNG's audited financial statements

was not inadvertent error, but deliberate concealment), 148 (Defendants' failure to disclose

Perkwood Agreement in arbitration was deliberate), 168, 160, 180, 181, 192, 193, 205, 206, 225,

226, 230, 231, 246, 247, 250, 251, 273 (Defendants sent other communications through U.S.

mails or paid U.S. counsels in furtherance of fraudulent scheme).  The D.C. Circuit has cautioned

that, while fraud pleadings on information and belief are not strictly prohibited, they may only be

used "when the necessary information lies within defendants' control," and that such allegations

may not be used as "a pretext for the discovery of unknown wrongs."  *E. Savs. Bank*, 31 F. Supp.

3d at 16 (quoting *Kowal v. MCI Comms. Corp.*, 16 F. 3d 1271, 1279 n.3 (D.C. Cir. 1994));

*Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 336 (D.D.C. 1986) (fraud claims

based on "information and belief" generally disfavored and inadequate under Rule 9(b)).  The

ROK's "information and belief" allegations are improper because they do not state that they are

based on information that the ROK does not have access to.

For instance, in support of the purported "Equipment for Construction Fraud (Compl. at ¶¶ 96-101), the ROK alleges on "information and belief" that the recording of $72,003,345.00 in the TNG accounting database was a false entry and artificially inflated the construction costs of the LPG Plant, stating, without explanation, that "[i]t is not possible that [the amount] was actually expended." *Id*. at ¶ 101.  The ROK then argues "in the alternative" that if the amount **was** actually expended on construction costs, then "that expenditure was not made in good faith." *Id*.  The complaint does not identify the facts on which these assertions are made, and further, the ROK does not explain why, or even allege that, the "necessary information" that requires these pleadings to be made "on information and belief" lies solely within the Defendants' control.  *See E. Savs.*, 31 F. Supp. 3d at 16-17 (citing *Kowal*, 16 F. 3d at 1279 n. 3) (plaintiff has not alleged that defendants control documents containing "necessary information").  For this additional reason, the ROK's fraud claims fail the heightened pleading standards of Rule 9(b).

In sum, the Court should dismiss Count III because the complaint lumps all Defendants together and alludes to but does not identify acts of fraud in a narrative involving third parties. The complaint is fatally laden with generalized pleadings, allegations on "information and belief," and uncertainty as to which Defendants (and third parties) committed the alleged fraud.

### 2. The ROK's Fraud Claims Regarding The U.S. Enforcement Actions Do Not Satisfy The Elements Of Fraud

The Court should also dismiss the ROK's fraud claims pertaining to the U.S. Enforcement Proceedings, and Defendants' § 1782 Proceedings, because they do not satisfy the elements of the common law of fraud in D.C.  *See, e.g., Himmelstein*, 908 F. Supp. 2d at 59.

The elements of a common law fraud claim in D.C. are as follows (1) the defendant made a false representation; (2) in reference to material fact; (3) with knowledge of its falsity; (4) with the intent to deceive the plaintiff; (5) the plaintiff acted in reasonable reliance on that

representation; (6) which consequently resulted in provable damages. *See, e.g., Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 59 (D.D.C. 2012).

First, to the extent the ROK alleges fraud in connection with alleged misrepresentations and/or omissions made by Defendants during legal proceedings, the ROK could not plausibly have relied upon those misrepresentations and/or omissions. *See, e.g., E. Savs.*, 629 F. App'x at 3 (finding no detrimental reliance on fraud perpetrated against the courts by plaintiffs' adversary in those proceedings) (citing *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 22–23 (D.C. Cir. 2008)). The ROK has heavily contested those proceedings. *See* Compl. at ¶¶ 135-169; 182-193; 194-206; 227-231; 248-251; 207-226; 234-240; 241; 242-247. As other courts have held, legal and factual arguments advanced by a party during the course of legal proceedings generally cannot serve as the basis of a fraud claim by the opposing party due to the lack of reasonable reliance. *See, e.g., McCubbins v. BAC Home Loans Servicing, L.P.*, No. 2:11-CV-547, 2012 WL 140218, 6 (S.D. Ohio 2012) (unclear how a party to an action could justifiably rely upon and be damaged by opposing party's formal representations to court). Because the ROK has vigorously defended its positions in the U.S. Enforcement Actions, the ROK has not shown how it has "reasonably relied" on Defendants' purported misrepresentations. Instead, the ROK falls back on formulaic assertions that it "relied on the pleadings, briefs, witness statements and/or other evidence," (*see e.g.*, Compl. at ¶¶ 268, 269), which in any event, fail to satisfy the heightened pleading requirements of Rule 9(b).

Second, the ROK's fraud claims in respect of the U.S. Enforcement Actions fail because it has not plausibly alleged any damages that resulted from these injuries. The ROK merely alleges that it has suffered "significant and pecuniary damages." Compl. at ¶ 293. That is not sufficient under Rule 9(b). This failure to explain how Defendants' alleged misrepresentations

34

caused damage to the ROK is a fatal defect in its fraud claim.  Indeed, it is clear that the legal

expenses that the ROK asserts it incurred as a result of the U.S. Enforcement Actions (Compl. at

¶ 252) do not constitute damages that "resulted" from Defendants' purported allegedly false

statements to courts, as the ROK has not even alleged that it would have complied promptly with

the Award had the arbitral tribunal not included the portion of damages to which the ROK now

objects,.  *See Himmelstein*, 908 F. Supp. 2d. at 59.  Rather, the ROK's legal expenses in U.S.

Enforcement Proceedings are the result of the ROK's failure to voluntarily satisfy the Award,

which, as noted above, would have been issued regardless of Defendants' claims concerning the

value of the LPG Plant.

Third, the ROK's fraud claim is undermined by the fact that courts in this District have

consistently rejected attempts to claim damages resulting from attorneys' fees and costs.  Indeed,

"it is far from clear that the cost of legal services can constitute detrimental reliance for purposes

of fraud, given the American Rule against fee shifting." *Busby*, 772 F. Supp. 2d at 277 (citing

*Oliver t. Carr Co. v. United Tech. Commc'ns Co.*, 604 A. 2d 881, 883 (D.D.C. 1992) (plaintiff's

consultation of legal counsel because of fraudulent representations did not satisfy detrimental

reliance requirement)).

Finally, the fraud alleged by the ROK in relation to the U.S. Enforcement Actions was, at

best, intended to induce reliance by the courts, not the ROK itself.  Reliance by third parties,

however, cannot form the basis of a fraud claim by the ROK.  *E. Savs.*, 31 F. Supp. 3d at 19

(misrepresentations and/or omissions intended to obtain favorable rulings from D.C. courts and

administrative tribunals cannot form the basis of a fraud claim). *See also, e.g. Aktieselskabet AF*

*21. November 2001 v. Fame Jeans Inc.*, 525 F. 3d 8, 23-24 (D.C. Cir. 2008) (rejecting fraud

claims where plaintiff's only action in response to fraudulent misrepresentation was opposition

to application and plaintiff argued that third party Patent and Trademark Office relied on the
misrepresentation); *Safarini v. Ashcroft*, Civil Action No. 17-430 (RDM), 2018 WL 278658
(D.D.C Jan. 3, 2018) (rejecting fraud claims when the misrepresentations were made to the
government of Pakistan, a third party).

## IV.   THE ROK FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED FOR CIVIL CONSPIRACY

Because the ROK fails to state a claim for fraud, its civil conspiracy claim also fails as a
matter of law. "[I]t is well established that 'there is no recognized independent tort action for
civil conspiracy in the District of Columbia.'" *Wiggins v. Hitchens*, 853 F. Supp. 505, 513
(D.D.C. 1994). Rather, the elements of a claim for civil conspiracy are: "an agreement to do an
unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement
by someone participating in it; and injury caused by the act." *Id.* Because the ROK has not
alleged any underlying torts, it has not alleged an actionable claim for civil conspiracy. *B & H
Nat'l Place, Inc. v. Beresford*, 850 F. Supp. 2d 251, 263 (D.D.C. 2012).

## V.   COMITY PRINCIPLES REQUIRE DEFERENCE TO THE SWEDISH COURTS

### A.   Comity Requires Recognition Of the Svea Court Of Appeal's Ruling

The ROK has already litigated this case, and lost. As the Court is aware, the ROK
presented the same allegations it makes in the complaint to the Svea Court of Appeal in its
attempt to set aside the Award. The Svea Court of Appeal rejected those claims in their entirety.
Compl. at ¶ 185-188. *Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.),
Pet'rs' Suppl. Status Report Concerning Status of Proceedings in Sweden, ECF 64. Under the
principle of international comity, the Court should defer to the ruling of the Svea Court of
Appeal, which the Swedish Supreme Court left in place, and dismiss this case.

36

To promote international cooperation and "encourage reciprocal recognition of U.S. judgments in foreign courts," the comity doctrine provides that "a U.S. court should give full effect to a foreign judgment that has been rendered with impartiality and due process." *U.S. v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 8 (D.D.C. 2013). While recognition of a foreign judgment is not automatic (*Ricart v. Pan Am. World Airways, Inc.*, Civ. A. No. 89-0768(HHG), 1990 WL 236080, at *1 (D.D.C. Dec. 21, 1990)), courts generally recognize a foreign judgment unless there is evidence that: (1) the court that rendered the judgment did not have jurisdiction over the subject matter of the action; (2) the defendant did not receive notice of the proceedings in a sufficient time to enable him to defend; (3) the judgment was obtained by fraud; (4) the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought; (5) the judgment conflicts with another final judgment that is entitled to recognition; or (6) the proceeding in the foreign court was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum. *LG Display Co. v. Obayashi Seikou Co.*, 919 F. Supp. 2d 17, 31 (D.D.C. 2013) (citing Restatement (Third) of Foreign Relations Law § 482(2)). In addition, the judgment must be final "according to the jurisdiction in which it was rendered." *See Ricart v. Pan Am. World Airways, Inc.*, Civ. A. No. 89-0768(HHG), 1990 WL 236080, at *1 (D.D.C. Dec. 21, 1990); *Fehr v. McHugh*, 413 A.2d 1285, 1287 (D.C. 1980).

None of these grounds for non-recognition applies here. First, the ROK itself initiated the proceeding before the Svea Court of Appeal (Compl. at ¶ 183) and cannot claim that the court did not have jurisdiction over the subject matter of the action. Second, the proceeding was contested and all parties actively participated. *See id.* at ¶¶ 183-188. Third, the Svea Court of

Appeal rejected the ROK's fraud theory, and the ROK has not alleged any other fraud in connection with those proceedings. *Id.* at ¶¶ 185-189. Fourth, the cause of action on which the judgment was based and the judgment itself are not repugnant to the public policy of the United States. *See Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), Memorandum Opinion, ECF 70, p. 15. Fifth, the ROK has not alleged any other final judgment that conflicts with the Svea Court of Appeal's ruling or that the proceeding was contrary to an agreement between the parties to submit the controversy on which the judgment is based to another forum. Finally, it is undisputed the ruling is final, and all avenues of appeal have been exhausted. *Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), Pet'rs' Suppl. Status Report Concerning Status of Proceedings in Sweden, ECF 64.

### B.    Claim Preclusion Bars The ROK's Claims

After recognizing a foreign judgment, comity may also be extended to grant estoppel effect to foreign judgments. *Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 136 (D.C. 1987) ("We hold, therefore, that because the issue of Westminster's alleged fraud was one which might have been litigated in the original action before the High Court of Justice, the English judgment raises an absolute bar to Laufer's counterclaims based on the same alleged fraud."). Courts apply federal standards in determining whether to give preclusive effect to a foreign judgment. *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 32–33 (D.D.C. 2007) ("The majority of U.S. courts . . . follow domestic rules of preclusion, whether they apply those of the applicable federal or state court. This court agrees . . . that it is appropriate to apply federal standards in determining whether to give Al-Megrahi's conviction preclusive effect.").

"[T]he doctrine of claim preclusion bars a successive action when a plaintiff files a new suit arising out [of] the same facts as an earlier unsuccessful cause of action." *Brewer v. D.C.* , 105 F. Supp. 3d 74, 85 (D.D.C. 2015). "Claim preclusion . . . embodies the principle that a party

who once has had a chance to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so. . . ." *Alford v. Providence Hosp.*, 60 F. Supp. 3d 118, 124–25 (D.D.C. 2014) (internal quotation marks omitted).  Under the doctrine of claim preclusion "'a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" *Casares v. Wells Fargo Bank, N.A.*, 268 F. Supp. 3d 248, 254 (D.D.C. 2017) (A.B. Jackson, J.).

The second, third, and fourth elements are easily met.  The ROK and Defendants were all parties to the Svea Court of Appeal proceedings. *Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), Joint Report, Exhibit 3, The ROK's English Translation of Svea Court of Appeal Dec. 9, ECF 45-3, p. 2.  In addition, the judgment by the Svea Court of Appeal was final, and the ROK's efforts to challenge the order in the Swedish Supreme Court concluded with a ruling in favor of the Stati parties. *Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), Memorandum Opinion, ECF 70, p. 9.  Moreover, as outlined above, it is appropriate to recognize the judgment of the Svea Court of Appeal and the Svea Court of Appeal is a court of competent jurisdiction. *See One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 9.

With respect to the final element — whether the prior litigation involves the same claims — the D.C. Circuit follows "the Restatement (Second) of Judgments' pragmatic, transactional approach to determining what constitutes a cause of action." *U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985); *see generally* Restatement (Second) of Judgments § 24 (Am. Law Inst. 1982).  "To determine whether the facts of each lawsuit are similar enough to qualify as the same 'cause of action,' the D.C. Circuit instructs courts to use a 'transactional test' that looks at whether the claims arise from the same 'nucleus of facts.'" *Alford*, 60 F. Supp. 3d

at 125. A court should ask "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Casares*, 268 F. Supp. 3d at 254. If the two actions share a common nucleus of operative facts, then they involve the same claim for claim-preclusion purposes. *See Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490–91 (D.C. Cir. 2009); Restatement (Second) of Judgments § 24 cmt. b (Am. Law Inst. 1982).

The ROK's claims in this action are not merely "related" or "similar" to the claim it asserted in Sweden. **They are virtually identical**. The ROK seeks relief based on the same alleged "fraudulent scheme" about which it claims to have presented "detailed and specific allegations" to the Svea Court of Appeal. *E.g.,* Compl. at ¶ 188; *see also Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), Joint Report, Exhibit 3, the ROK's English Translation of Svea Court of Appeal Dec. 9, ECF 45-3, pp 10-14. This complaint and the proceeding before the Svea Court of Appeal to set aside the Award both address the same nucleus of facts: The procurement of the Award based on an alleged fraudulent scheme to inflate the value of the LPG Plant. Because both actions address the same nucleus of facts and the same alleged fraudulent scheme, this complaint should be dismissed. *See Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 136 (D.C. 1987) ("We hold, therefore, that because the issue of Westminster's alleged fraud was one which might have been litigated in the original action before the High Court of Justice, the English judgment raises an absolute bar to Laufer's counterclaims based on the same alleged fraud."); *Lary v. Ansari*, 817 F.2d 1521, 1523 (11th Cir. 1987) ("Because Lary had an opportunity in his first lawsuit to litigate claims relating to his business relationship with Ansari, any future claims relating to the same business relationship are barred by *res judicata*. **Although styled as a RICO claim, the complaint here relies on the**

**same allegations of misconduct by Ansari as did the prior suit.  The present action against Ansari is therefore barred by res judicata.**" (emphasis supplied)).

In fact, although the ROK's previous efforts to set aside the Award were rejected by the Swedish courts, that is precisely the relief the ROK seeks with this complaint, which requests a permanent injunction barring Defendants from prosecuting any action in the United States to enforce, confirm, or recognize the Award.  Compl. at p. 93.  Granting such relief would improperly require the Court to effectively overrule not only the Svea Court of Appeal's ruling, but also to effectively invalidate its own judgment recognizing the Award.  *See generally, Capitol Hill Grp*, 569 F.3d at 492 (D.C. Cir. 2009) ("To allow CHG to litigate malpractice claims against Shaw Pittman now, based on the same representation, would nullify the initial judgment or impair the rights established by Shaw Pittman in the bankruptcy fee litigation."); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1236 (7th Cir. 1986) ("Even assuming, however, that the federal courts have exclusive jurisdiction over RICO claims, the Henrys were still required to raise their allegations of fraud and forgery, which form the sole basis for their RICO claims, as a defense to the mortgage foreclosures. . . .  To hold otherwise and allow the Henrys to bring their RICO claim now would completely undermine the Bank's judgments of foreclosure, which necessarily determined the validity of the underlying mortgage.") (citations omitted).  Because the ROK's claims arise from the same nucleus of facts as its claims to set aside the Award before the Svea Court of Appeal, the claims are barred by res judicata.

## VI.    CONCLUSION

WHEREFORE, Defendants respectfully request that the Court dismiss the complaint without leave to amend.

Dated: New York, New York
      April 20, 2018

Respectfully submitted,

James E. Berger (DC Bar No. 481408)
Charlene C. Sun (DC Bar No. 1027854)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
csun@kslaw.com

Taylor T. Lankford (DC Bar No. 1002758)
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W., Ste. 200
Washington, DC  20006
Tel: (202) 737-0500
Fax: (212) 626-3737
tlankford@kslaw.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 20, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

_Counsel for Defendants_