**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **REPUBLIC OF KAZAKHSTAN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 1:17-cv-02067-ABJ** |
| **ANATOLIE STATI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**REPUBLIC OF KAZAKHSTAN'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Matthew H. Kirtland (D.C. Bar No. 456006)
Katie Connolly (D.C. Bar No. 1048518)
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW, Suite 1000
Washington, D.C. 20001
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
matthew.kirtland@nortonrosefulbright.com
katie.connolly@nortonrosefulbright.com

Kelly Klingseisen (admitted *pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 536-5260
Facsimile: (512) 536-4598
kelly.klingseisen@nortonrosefulbright.com

*Counsel for Plaintiff Republic of Kazakhstan*

May 25, 2018

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARD .................................................................................................... 4

ARGUMENT AND AUTHORITIES ........................................................................... 5

I.     The Doctrine of Judicial Estoppel Compels Denying the Motion to Dismiss ............................................................................................................ 5

II.     The Complaint States a Cognizable RICO Claim ................................... 7

    A.     The Complaint Alleges Cognizable Predicate Acts of Racketeering ........ 8

        1.     Litigation Activities That Are Part of a Larger Illegal Pattern Are Proper Predicate Acts ................................. 9

        2.     The Complaint Adequately Pleads Money Laundering .............. 12

    B.     The Complaint Adequately Alleges a Pattern of Racketeering Activity ................................................................................................. 14

        1.     The Complaint Pleads Open-ended Continuity ......................... 14

        2.     The Complaint Pleads Closed-ended Continuity ....................... 16

        3.     The Complaint Satisfies the D.C. Circuit Multifactor Analysis ..................................................................................... 20

    C.     The Complaint Alleges Domestic Application of the Mail and Wire Fraud Statutes ........................................................................... 22

    D.     The Complaint Alleges a Domestic Injury ............................................ 25

    E.     The Complaint Alleges the Predicate Acts Are the But For and Proximate Causes of Kazakhstan's Injuries ....................................... 28

III.     The Complaint States a Cognizable RICO Conspiracy Claim ........................... 30

IV.     The Complaint States a Cognizable Fraud Claim ............................................ 31

    A.     The Court Has Subject Matter Jurisdiction Over the Fraud Claims ........ 31

    B.     The Complaint Sufficiently Alleges a Fraud Claim .............................. 31

        1.     The Complaint Pleads Fraud with Specificity ........................... 31

        2.     The Fraud Claims Regarding the U.S. Enforcement Proceedings Satisfy the Elements of Fraud ................................. 35

V.     The Complaint States a Cognizable Civil Conspiracy Claim ............................. 38

VI.     Principles of Comity Do Not Apply Except to the Extent They Compel the Rejection of the Stati Parties' Argument ....................................................... 38

    A.     The Swedish Annulment Proceedings .................................................. 38

    B.     Claim Preclusion Does Not Bar Kazakhstan's Claims ........................... 40

VII.     There Is No Basis for Dismissal with Prejudice ................................................ 42

CONCLUSION ........................................................................................................................ 42

## TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Abraham v. Singh*,
    480 F.3d 351 (5th Cir. 2007) .................................................................15

*Akishev v. Kapustin*,
    No. 13-cv-7152, 2016 WL 7165714 (D.N.J. Dec. 8, 2016).................................27

*Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008) .................................................................37

*Am. Special Risk Ins. v. Greyhound*,
    1996 U.S. Dist. Lexis 14231 (S.D.N.Y. 1996) ........................................15

*Answering Serv., Inc. v. Egan*,
    785 F.2d 1084 (D.C. Cir. 1986) ...........................................................37

*Antoine v. U.S. Bank Nat. Ass'n*,
    547 F. Supp. 2d 30 (D.D.C. 2008) .......................................................34

*In re APA Assessment Fee Litig.*,
    766 F.3d 39 (D.C. Cir. 2014) ...............................................................36

*Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*,
    885 F.3d 1090 (7th Cir. 2018) .........................................................26, 27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................5

*Atherton v. D.C. Office of the Mayor*,
    567 F.3d 672 (D.C. Cir. 2009) .............................................................4

*Bankers Tr. Co. v. Rhoades*,
    859 F.2d 1096 (2d Cir. 1988).............................................................37

*Bascunan v. Elsaca*,
    874 F.3d 806 (2d Cir. 2017)................................................................26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................4

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) .............................................................4

*Bryant v. Mattel, Inc.*,
    CV 04-9049, 2010 WL 2705668 (C.D. Cal Aug. 2, 2010)..............................17, 18

*Burger v. Kuimelis*,
    325 F. Supp. 2d 1026 (N.D. Cal. 2004) .............................................27, 37

i

*Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*,
   569 F.3d 485 (D.C. Cir. 2009) ............................................................................41

*Cassidy v. Owen*,
   533 A.2d 253 (D.C. 1987) ..................................................................................36

*Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*,
   245 F. Supp. 3d 650 (D.N.J. 2017) ....................................................................26

*Choimbol v. Fairfield Resorts, Inc.*,
   428 F. Supp. 2d 437 (E.D. Va. 2006) .................................................................12

*Comcast Corp. v. FCC*,
   600 F.3d 642 (D.C. Cir. 2010) .............................................................................6

*United States ex rel. Conteh v. IKON Office Solutions, Inc.*,
   27 F. Supp. 3d 80 (D.D.C. 2014) .......................................................................34

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
   758 F. Supp. 2d 153 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. Law Offices of*
   *David M. Bushman*, *Esq.*, 443 F. App'x 582 (2d Cir. 2011) .................................10

*Daddona v. Gaudio*,
   156 F. Supp. 2d 153 (D. Conn. 2000) ................................................................11

*Daedalus Capital LLC v. Vinecombe*,
   625 Fed. App'x 973 (11th Cir. 2015) .................................................................16

*United States ex rel. Davis v. Dist. of Columbia*,
   591 F. Supp. 2d 30 (D.D.C. 2008) .....................................................................33

*Eastern Savings Bank, FSB v. Papageorge*,
   31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) .....................9, 30, 38

*Edmondson & Gallagher v. Alban Towers Tenants Association*,
   48 F.3d 1260 (D.C. Cir. 1995) ................................................................19, 20, 21

*Edwards v. Prime Inc.*,
   602 F.3d 1276 (11th Cir. 2010) ....................................................................16, 21

*Elemary v. Phillipp Holzmann A.G.*,
   533 F. Supp. 2d 116 (D.D.C. 2008) ...................................................................18

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ................................................................................................4

*Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
   873 F. Supp. 2d 288 (D.D.C. 2012) ..........................................................9, 10, 11, 28, 30

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) .............................................42

*G-I Holdings, Inc. v. Baron & Budd*,
   238 F. Supp. 2d 521 (S.D.N.Y. 2002) ................................................................35

*Gen. Cigar Co., Inc. v. CR Carriers, Inc.*,
   948 F. Supp. 1030 (M.D. Ala. 1996) ................................................................12

*Golden v. Nadler, Pritikin & Mirabelli, LLC*,
   2005 WL 2897397 (N.D. Ill. Nov. 1 2005) ...............................................15, 16

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ...........................................14, 15, 16, 17, 20, 21

*Hall American Center Assoc. L.P. v. Dick*,
   726 F. Supp. 1083 (E.D. Mich. 1989) ..........................................................11

*Handeen v. Lemaire*,
   112 F.3d 1339 (8th Cir. 1997) ...............................................18, 21, 37

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999) ......................................................................32

*Hemi Group, LLC v. City of New York*,
   559 U.S. 1 (2010) .................................................................................28, 29

*Hilton v. Guyot*,
   159 U.S. 113 (1895) ...................................................................................38

*Holmes v. Sec. Investor Protection Corp.*,
   503 U.S. 258 (1992) ...................................................................................28

*United States ex rel. Hood v. Satory Global, Inc.*,
   946 F. Supp. 2d 69 (D.D.C. 2013) ...........................................................33

*Hurd v. D.C., Gov't*,
   864 F.3d 671 (D.C. Cir. 2017) ..................................................................42

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ..........................................................4, 5, 33

*Lary v. Ansari*,
   817 F.2d 1521 (11th Cir. 1987) ................................................................41

*Laufer v. Westminster Brokers, Ltd.*,
   532 A.2d 130 (D.C. Cir. 1987) ..................................................................41

*Lemelson v. Wang Laboratories Inc.*,
   874 F. Supp. 430 (D. Mass. 1994) .............................................................11

*Lewis v. Lhu*,
   696 F. Supp. 723 (D.D.C. 1988) ...............................................................18

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
   431 F.3d 353 (9th Cir. 2005) .....................................................................18

*Lu v. Lezell*,
   45 F. Supp. 3d 86 (D.D.C. 2014) ..............................................................19

*Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*,
   792 F.2d 341 (3d Cir. 1986), *aff'd sub nom. Agency Holding Corp. v. Malley-*
   *Duff & Associates, Inc.*, 483 U.S. 143 (1987)............................................................37

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
   470 U.S. 373 (1985)............................................................................................................41

*Marshall v. Honeywell Tech. Sys. Inc.*,
   828 F.3d 923 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 830 (2017) ........................5

*United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*,
   251 F. Supp. 2d 114 (D.D.C. 2003) ...............................................................................32

*McNamara v. Picken*,
   965 F. Supp. 2d 1 (D.D.C. 2013) ....................................................................................37

*McQueen v. Woodstream Corp.*,
   248 F.R.D. 73 (D.D.C. 2008)............................................................................................32

*Montana v. U.S.*,
   440 U.S. 147 (1979)............................................................................................................40

*Moses v. Howard Univ. Hosp.*,
   606 F.3d 789 (D.C. Cir. 2010) .....................................................................................5, 6

*New Hampshire v. Maine*,
   532 U.S. 742 (2001)........................................................................................................5, 6

*NRDC v. EPA*,
   513 F.3d 257 (D.C. Cir. 2008) ........................................................................................41

*Oceanic Expl. Co. v. ConocoPhillips, Inc.*,
   2006 U.S. Dist. Lexis 72231 (D.D.C. 2006)..............................................................16, 21

*Parcoil Corp. v. NOWSCO Well Serv., Ltd.*,
   887 F.2d 502 (4th Cir. 1989) ...........................................................................................17

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)..............................................................................................................5

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
   238 F. Supp. 2d 258 (D.D.C. 2002) ...............................................................................33

*Resolution Tr. Corp. v. Stone*,
   998 F.2d 1534 (10th Cir. 1993) .......................................................................................14

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S. Ct. 2090 (2016)..................................................................................................22, 25

*Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*,
   985 A.2d 443 (D.C. 2009) ................................................................................................37

*Safarini v. Ashcroft*,
   285 F. Supp. 3d 407 (D.D.C. 2018) ...............................................................................37

*Shea v. Clinton*,
   880 F. Supp. 2d 113 (D.D.C. 2012) ........................................................5

*Shields v. Washington Bancorporation*, CIV. A. 90-1101(RCL), 1992 WL 88004
   (D.D.C. Apr. 7, 1992) ........................................................42

*Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002), *aff'd*, 409
   F.3d 414 (D.C. Cir. 2005) ........................................................34

*Stati, et al. v. Republic of Kazakhstan*,
   No. 1:14-cv-01638-ABJ (D.D.C.) ........................................................27, 39

*Stochastic Decisions, Inc. v. DiDomenico*,
   995 F.2d 1158 (2d Cir. 1993) ........................................................37

*Tatung Co., Ltd. v. Shu Tze Hsu*,
   217 F. Supp. 3d 1138 (C.D. Cal. 2016) ........................................................27, 28

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) ........................................................17

*U.S. Indus., Inc. v. Blake Const. Co., Inc.*,
   765 F.2d 195 (D.C. Cir. 1985) ........................................................41

*United States v. All Assets Held at Bank Julius*,
   251 F. Supp. 3d 82 ........................................................22, 23

*United States v. Eisen*,
   974 F.2d 246 (2d Cir. 1992) ........................................................11

*United States v. First Choice Armor & Equip. Co.*,
   808 F. Supp. 2d 68 (D.D.C. 2011) ........................................................12, 23, 31, 34, 35

*United States v. Palfrey*,
   499 F. Supp. 2d 34 (D.D.C. 2007) ........................................................16, 21

*United States v. Phillip Morris*,
   566 F.3d 1095 ........................................................16, 21, 23

*United States v. Richardson*,
   167 F.3d 621 (D.C. Cir. 1999) ........................................................16, 21

*United States v. Wilson*,
   605 F.3d 985 (D.C. Cir. 2010) (per curiam) ........................................................15, 16, 20

*Vicom, Inc. v. Harbridge Merchant Servs.*,
   20 F.3d 771 (7th Cir. 1994) ........................................................14

*W. Assocs. v. Market Square Assocs.*,
   235 F.3d 629 (D.C. Cir. 2001) ........................................................17, 19, 20

*Weisman v. Middleton*,
   390 A.2d 996 (D.C. 1978) ........................................................37

v

**Rules and Statutes**

18 U.S.C. § 1341 ..................................................................................................8

18 U.S.C. § 1343 ..................................................................................................8

18 U.S.C. § 1956 ...................................................................................8, 12, 13, 22

18 U.S.C. § 1961 .........................................................................................8, 12, 18

18 U.S.C. § 1962 ..............................................................................................7, 30

18 U.S.C. § 1964 ......................................................................................7, 18, 25

Fed. R. Civ. P. 9 ........................................................................................32, 33, 34

Fed. R. Civ. P. 12 ............................................................................................4, 35

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) .........................................................26

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
    Practice and Procedure § 4477 (2d ed. 2002) ...........................................6

Restatement (Second) of Judgments § 26(1)(c) (1982) ................................41

Plaintiff Republic of Kazakhstan ("Kazakhstan") respectfully submits this Memorandum of Points and Authorities in Opposition to the Motion to Dismiss the Complaint, ECF 19 ("Def. Mem."), filed by Defendants Anatolie Stati, Gabriel Stati, Ascom Group, S.A. ("Ascom"), and Terra Raf Trans Traiding Ltd. ("Terra Raf") (collectively, the "Stati Parties").

## INTRODUCTION

As a preliminary matter, the Stati Parties' Motion to Dismiss should be denied on the basis of the doctrine of judicial estoppel, given that the Stati Parties, on March 26, 2018, represented to the High Court in London—in enforcement proceedings concerning the SCC Award[1]—that the merits of Kazakhstan's fraud allegations will be adjudicated in this case, after discovery and oral evidence. *See* Approved Judgment Setting Aside Notice of Discontinuance, Case No: CL-2014-000070 (High Court of Justice, Business and Property Courts of England & Wales, Commercial Court (QBD), May 11, 2018), attached hereto as **Exhibit A**, ¶ 28 (citing argument by the Stati Parties' counsel that this Court, in this case, "will consider every aspect of the fraud alleged in the proceedings, and more, and after a trial involving full disclosure and oral evidence."). The Stati Parties, represented by their same counsel in this proceeding—the law firm of King & Spalding— made this representation in an effort to have the London High Court rule in their favor on a dispositive issue, as detailed below. Having made this representation, the Stati Parties cannot now do an about-face before this Court and assert that Kazakhstan's fraud allegations should be dismissed at this preliminary stage before the "full disclosure and oral evidence" that they promised the London High Court would occur here. This playing fast-and-loose with the legal system should not be countenanced and, for this reason alone, the Stati Parties' Motion to Dismiss should be denied with prejudiced.

---

[1] Capitalized terms not otherwise defined bear the meaning prescribed them in the Complaint, ECF 1.

The Stati Parties' Motion to Dismiss also should be denied because its arguments have no merit. The 93-page Complaint thoroughly and specifically sets forth the facts underlying Kazakhstan's Racketeer Influenced and Corrupt Organizations Act ("RICO"), RICO conspiracy, fraud, and civil conspiracy claims. It details how the Enterprise formed by the Stati Parties, from no later than July 2010, continuing through the date of the filing of the Complaint, has knowingly and intentionally engaged in a continued pattern of racketeering activity consisting of numerous acts of racketeering in the United States and elsewhere. It explains how this racketeering activity, which includes multiple repeated acts of mail fraud, wire fraud, and money laundering, furthered the Enterprise's ongoing scheme to defraud Kazakhstan, and caused injury to Kazakhstan in the United States.

The Complaint details the Stati Parties' sophisticated and wide-ranging illegal pattern of racketeering, showing that the Stati Parties raised funds in the United States to fund the construction of a liquefied petroleum gas plant ("LPG Plant") in Kazakhstan; that they falsely represented to their investors and others that they engaged in arms-length transactions with an unrelated third-party in connection with the LPG Plant construction; that, in reality, they fraudulently inflated the construction costs of the LPG Plant; and that they then used those falsified costs and financial statements to fraudulently obtain a bid for the LPG Plant from the Kazakh state oil and gas company. The Complaint exposes the Stati Parties' fraud in the subsequent SCC Arbitration, wherein they concealed their underlying fraud, and, in fact, affirmatively used the fraudulently obtained bid and their fraudulent costs and falsified financial statements as evidence of the LPG Plant's value, which, at minimum, resulted in their being awarded $199 million in compensation for the LPG Plant. The Complaint illuminates the continuation of the Stati Parties' scheme, explaining that they sought to enforce and/or collect on

the fraudulently procured SCC Award in multiple jurisdictions, including in the United States, England, Sweden, the Netherlands, and Luxembourg, and that they opposed proceedings instituted by Kazakhstan to set-aside and/or annul the SCC Award in Sweden.

As the Complaint makes clear, each communication to United States counsel, pleading, brief, witness statement, and/or other evidence in the SCC Arbitration, the Swedish Annulment Proceedings, the Washington Enforcement Proceedings, the New York § 1782 Proceedings, the Stati Parties' § 1782 Proceedings, and the New York Enforcement Proceedings submitted through the United States mails, private or commercial interstate carriers, and/or interstate wires in furtherance of this fraudulent scheme constitutes an act of mail or wire fraud, and therefore a RICO predicate act. And, each transfer of monies to U.S. counsel in connection with those proceedings violated the money laundering statute. Kazakhstan was directly injured as a direct and proximate result of these racketeering activities.

The Stati Parties' criticisms of the Complaint fall flat. With respect to the RICO claims, they contend the Complaint fails to allege the predicate acts of racketeering, but their argument, at bottom, is that the mail and wire fraud allegations cannot lie because the money laundering claim is inadequately pleaded, and vice versa. This circular reasoning fails. They challenge the continuity of the racketeering predicates, ignoring that the acts include a specific threat of repetition extending indefinitely into the future, are part of an ongoing regular course of conduct, and extend over a substantial period of time. They claim that a substantial amount of conduct integral to the scheme did not occur in the United States, overlooking the funds raised in the United States, their reliance upon U.S. counsel and U.S. experts in the SCC Arbitration, the New York § 1782 Proceedings, the Washington Enforcement Proceedings, the New York Enforcement Proceedings, and the Stati Parties' § 1782 Proceedings. They maintain Kazakhstan

did not suffer a domestic injury, despite that Kazakhstan clearly incurred attorneys' fees in the United States. And, the Stati Parties' argument that their actions did not proximately cause Kazakhstan's damages flies in the face of the direct relation between the injurious conduct and Kazakhstan's injury. In sum, the Stati Parties narrowly focus on particular well-pleaded aspects of the fraudulent scheme to further obscure the character of the unlawful activity alleged.

The Stati Parties fare no better in their attack of the fraud allegations. The Complaint satisfies the elements of fraud, and does so with specificity. Moreover, despite the Stati Parties' desperate attempt to claim otherwise, principles of comity are not at issue in this case. No foreign court has ever adjudicated the truth of the matters pleaded in the Complaint. This, the Stati Parties well know.

This action requires the Stati Parties to finally answer for their widespread, multi-jurisdictional criminal and fraudulent conduct. The Motion to Dismiss, an unavailing attempt to avoid facing the consequences of those wrongs, should be denied.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint[,]'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A court need not, however, "accept

inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* In addition, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662(2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

## ARGUMENT AND AUTHORITIES

I.  **The Doctrine of Judicial Estoppel Compels Denying the Motion to Dismiss**

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). "The inconsistent stances can be in the same or different proceedings." *Shea v. Clinton*, 880 F. Supp. 2d 113, 117 (D.D.C. 2012). The purpose of judicial estoppel is to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," thereby playing "fast and loose with the courts." *New Hampshire*, 532 U.S. at 749-50 (citations omitted).

The District of Columbia Circuit has explained that:

> [t]here are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

*See Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) (citing *New Hampshire*, 532 U.S. at 750-51). Furthermore, "in order for judicial estoppel to apply, there must be 'a discernible connection' between the [first] proceeding and the current lawsuit." *Marshall v.*

*Honeywell Tech. Sys. Inc.*, 828 F.3d 923, 928 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 830, 197 (2017) (quoting *Moses*, 606 F.3d at 799).

The Supreme Court has made clear that these three factors are not "inflexible prerequisites," and "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire*, 532 U.S. at 751. "Doubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits." *Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010) (quoting 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477, at 594 (2d ed. 2002)). At bottom, the doctrine of judicial estoppel is an equitable one, "invoked by a court at its discretion." *Moses*, 606 F.3d at 797 (quoting *New Hampshire*, 532 U.S. at 750).

Here, the doctrine of judicial estoppel should compel the denial of the Stati Parties' Motion to Dismiss, given that all three questions set forth by the D.C. Circuit in *Moses* are answered in the affirmative. First, the Stati Parties' position before this Court – that Kazakhstan's fraud allegations should be dismissed at this preliminary phase – is "clearly inconsistent" with its earlier position before the High Court, i.e., that this Court in this case "will consider every aspect of the fraud alleged [by Kazakhstan], and more, and after a trial involving full disclosure and oral evidence." *See* Exhibit A ¶ 28. Second, the Stati Parties did succeed in persuading the High Court to accept this earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750. Indeed, one of the reasons cited by the High Court in London in deciding to keep its trial date for Kazakhstan's fraud allegations on its calendar for October and November 2018, was that the result of that trial might assist other

courts (including this Court) in resolving the merits of such allegations. *See* Exhibit A ¶ 59 ("it is possible that an English judgment following a trial here would be available before proceedings before the US Courts are complete and [such judgment] would be of assistance and given some weight"). If this Court were to grant the Stati Parties' present Motion – and dismiss Kazakhstan's RICO claims – this clearly would create the perception that the High Court in London was misled by the Stati Parties' contrary representations that the merits of Kazakhstan's fraud allegations would be decided in this RICO case *after* discovery and oral evidence. Third, the party seeking to assert the inconsistent position (the Stati Parties), if not estopped, would derive the manifestly unfair advantage of having Kazakhstan's RICO case dismissed by this Court, having had represented to the High Court in London that the exact opposite would occur, i.e., that this RICO case would be decided on the merits after full discovery and trial.

For these reasons, the Stati Parties' Motion to Dismiss should be denied on the basis of the doctrine of judicial estoppel.

## II.      The Complaint States a Cognizable RICO Claim

Kazakhstan's RICO claim arises under 18 U.S.C. § 1962(c), which prohibits any person associated with an enterprise from conducting, or participating directly or indirectly in the conduct of the affairs of that enterprise through a pattern of racketeering activity, known as "predicate acts." *Id.* Kazakhstan's claim for damages arises under 18 U.S.C. § 1964(c), which provides for recovery of damages to business or property "by reason of a violation of section 1962." *Id.* The Stati Parties claim the Complaint does not adequately plead the elements of the predicate acts, "pattern," injury, or proximate cause, Def. Mem. at 10-28, but these arguments have no merit.

A.      **The Complaint Alleges Cognizable Predicate Acts of Racketeering**

A "pattern of racketeering activity" is defined by 18 U.S.C. § 1961(5) to be the commission of "at least two acts of racketeering," which in turn are defined as the offenses set out in 18 U.S.C. § 1961(1). In this case, Kazakhstan has alleged the Stati Parties committed the predicate acts of mail fraud, wire fraud, and money laundering. Compl. (ECF 1) ¶¶ 259, 263, 273-74. Specifically, the Complaint alleges that, in relation to the SCC Arbitration, the Swedish Annulment Proceedings, the London Enforcement Proceedings, the Washington Enforcement Proceedings, the New York § 1782 Proceedings, the Stati Parties' § 1782 Proceedings, the New York Enforcement Proceedings, and the Other European Enforcement Actions, the Stati Parties sent pleadings, briefs, witness statements, other evidence, and communications through the United States mails, private or commercial interstate carriers and/or interstate wires in furtherance of their fraudulent scheme, and each mailing or wiring violated the federal mail fraud statute, 18 U.S.C. § 1341, or the federal wire fraud statute, 18 U.S.C. § 1343, and constituted an independent predicate act under 18 U.S.C. § 1961. Compl. (ECF 1) ¶¶ 167, 179-80, 191-92, 204-05, 249-50, 229-30, 263, 274. In addition, the Complaint alleges that the Stati Parties made payments in relation to the above-referenced legal proceedings from outside the United States to counsel in the United States in furtherance of their fraudulent scheme, and each payment violated the federal money laundering statute, 18 U.S.C. § 1956(a)(2)(A) & (B)(i), and constituted an independent predicate act under 18 U.S.C. § 1961. Compl. (ECF 1) ¶¶ 169, 181, 193, 206, 231, 247, 251, 274.

The Stati Parties contend the Complaint fails to allege the predicate acts of racketeering, Def. Mem. at 11-16, because (1) courts don't recognize RICO liability in connection with litigation activity and (2) the mail and wire fraud allegations cannot lie because the money

laundering claim is inadequately pleaded, and vice versa. *Id.* at 12 n.6, 15. This circular reasoning fails.

### 1.    Litigation Activities That Are Part of a Larger Illegal Pattern Are Proper Predicate Acts

The Stati Parties maintain that the mail and wire fraud allegations, all of which concern the use of the mails or interstate wires to transmit documents and communications in connection with adjudicative proceedings, do not support a civil RICO claim because "federal courts have refused consistently to recognize RICO liability in connection with litigation activity." Def. Mem. at 11-14 (collecting cases).[2] This is incorrect. Courts have held that litigation activities can be proper predicate acts unless the litigation activities "constitute the only allegedly fraudulent conduct" and are therefore better addressed by malicious prosecution or abuse of process claims. *Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012). Kazakhstan's claim is *not* that the Stati Parties engaged in "abusive or sham litigation." Nor does the Complaint allege that the fraudulent conduct is limited to the litigation; quite the opposite. Kazakhstan's claim is that the fraudulent scheme predates and substantially exceeds the litigation; and that the litigation is merely one vehicle through which the Stati Parties' long-running, multi-faceted scheme was employed to injure Kazakhstan.

Allegations of litigation misconduct are grounds for a RICO case unless they are limited to claims that the defendants "filed false documents with the [c]ourt or otherwise engaged in frivolous and harassing litigation." *Feld Entm't Inc.*, 873 F. Supp. 2d at 319. Courts have carved

---

[2] The Stati Parties heavily rely on *Eastern Savings Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015), in which the court held that "[a]busive or sham litigation does not constitute a RICO predicate act." Def. Mem. at 12 (citing 31 F. Supp. 3d at 13). That case is inapposite. The court was discussing the predicate act of *extortion*, not mail or wire fraud. 31 F. Supp. 3d at 13. Indeed, in *Eastern Savings Bank*, the court concluded that "recognizing litigation as a form of extortion would transform a state common-law action into a federal crime." *Id.* (internal quotations and citation omitted).The Stati Parties omit this crucial distinction from their brief. *See* Def. Mem. at 12-13.

out this exception because without it, any disgruntled client could bring a RICO claim, and therefore claim for treble damages, against their attorney challenging the firm's legal fees, litigating their obligation to pay those fees and/or challenging the professional conduct through a malpractice action. *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 171 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. Law Offices of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011).

However, this exception is not applicable, if, as here, the entire lawsuit is based on a fraudulent scheme. *Feld Entm't Inc*, 873 F. Supp. 2d 319 (finding that the exception did not apply where "the entire lawsuit was based on the bribery of the lead plaintiff and witness."). This is not a case where a party submitted a few false documents during a litigation or filed a lawsuit solely for harassment purposes. Much to the contrary, this case involves multiple frauds perpetrated in multiple jurisdictions around the world—including the United States—and the use of the U.S. mails and interstate wires to transmit documents and communications made these frauds possible. The Complaint sets out the details of the Stati Parties' elaborate and fraudulent scheme to artificially inflate the construction costs of the LPG Plant, conceal that fraud during the SCC Arbitration to obtain the SCC Award, and then attempt to enforce the fraudulently procured SCC Award in multiple jurisdictions, including the United States. Compl. (ECF 1) ¶¶ 1-252. This is not an abusive or sham litigation one-off; the entire case is based on fraud, and therefore the exception does not apply.

Further, the litigation activities exception is reserved for those cases where such acts are the only allegedly fraudulent conduct. *Id.* at 318 ("where 'additional allegations of extortion or some other pattern of racketeering activity' are involved, courts 'have found that alleged mail and wire fraud violations arising out of malicious prosecution or abuse of process could be RICO

predicate acts.'" (quoting *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 163 (D. Conn. 2000))). In *Feld Entertainment*, the court permitted the RICO claim because, in addition to the litigation activities-based mail and wire fraud claims, the plaintiff had alleged other predicate acts, including money laundering. *Id.* at 319; *see also United States v. Eisen*, 974 F.2d 246, 251-54 (2d Cir. 1992) (mail and wire fraud violations arising out of scheme to deprive civil defendants of money through the filing of fraudulent lawsuits, bribery and intimidation of witnesses, and the creation of false evidence of accidents for use before and during trial could be RICO predicate act); *Hall American Center Assoc. L.P. v. Dick*, 726 F. Supp. 1083, 1097 (E.D. Mich. 1989) (finding that plaintiff's allegations that defendants engaged in filing lawsuits and notices of lis pendens as one part of a larger extortionate scheme to obtain plaintiff's property could be considered a RICO predicate act); *Lemelson v. Wang Laboratories Inc.*, 874 F. Supp. 430, 434 (D. Mass. 1994) (mail and wire fraud violations in case claiming extortion of millions of dollars through a pattern of litigation and subsequent settlement over fraudulently obtained patents were RICO predicate act). Kazakhstan's fraud claims are not the only bases for the civil RICO violation. Kazakhstan has also adequately pleaded that the Stati Parties violated the federal money laundering statute each time they made payments from outside the United States to counsel in the United States in furtherance of their fraudulent scheme, and that each such payment constituted a predicate act for RICO purposes. *See* Compl. (ECF 1) ¶¶ 169, 181, 193, 206, 226, 231, 247, 251, 274. Accordingly, the mail and wire fraud allegations concerning the use of the mails or interstate wires to transmit documents and communications in connection with adjudicative proceedings support Kazakhstan's civil RICO claim.

## 2.     The Complaint  Adequately  Pleads  Money  Laundering

The Stati Parties contend the money laundering allegations in the Complaint are deficient with respect to both 18 U.S.C. § 1956(a)(2)(A) and (B)(i). Def. Mem. at 14-16. These arguments have no merit.

*First*, section 1956(a)(2)(A) prohibits the transportation or transmission of money into or outside the United States when done "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(2)(A). The phrase "specified unlawful activity" generally consists of the RICO predicate acts, including mail and wire fraud. *Id.* § 1956(c)(7)(A) ("any act or activity constituting an offense listed in section 1961(1)"). The "specified unlawful activity" described in the Complaint in connection with this allegation is the "carrying on of the fraudulent scheme." Compl. (ECF 1) ¶ 274. In other words, Kazakhstan claims the Stati Parties transported money into and/or outside the United States with the intent to commit mail and wire fraud—i.e., intending each payment to their counsel in the United States to ensure the continued submission of fraudulent pleadings, briefs, witness statements, and other evidence in the various legal proceedings. *Id.* This properly states a claim. *See Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 444 (E.D. Va. 2006) (plaintiffs stated a claim of money laundering, as a predicate act under RICO, by alleging defendant used the proceeds of mail fraud with the intent to promote the carrying on of mail fraud).

The Stati Parties' only response is that Kazakhstan's "failure to adequately allege any act o[f] mail or wire fraud . . . fatally undermines its allegation of money laundering." Def. Mem. at 15. But, as stated above, Kazakhstan's litigation-based fraud claims lie because they are not limited to isolated litigation misconduct—indeed, the Stati Parties' entire scheme is wrought with fraud—and the Complaint alleges other predicate acts, i.e., money laundering, Compl. (ECF 1) ¶¶ 169, 181, 193, 206, 226, 231, 247, 251, 274. *See Gen. Cigar Co., Inc. v. CR Carriers, Inc.*,

948 F. Supp. 1030, 1039 (M.D. Ala. 1996) (rejecting argument that mail fraud and money laundering must be two separate offenses for a claim to be stated for both under RICO). In any event, the Stati Parties' reasoning is flawed. They claim the predicate acts that sound in fraud are inadequate to support a civil RICO claim because the additional allegations of racketeering activity—the money laundering claims—are also insufficient. Def. Mem. at 12 n.6 ("the ROK's allegation of money laundering is itself deficient on its face, and thus cannot serve as an additional predicate to support the ROK's RICO claim"). But, the Stati Parties' issue with the money laundering allegations is that the money was transported intending to commit mail and wire fraud. *Id.* at 15 ("the ROK, has failed to adequately allege any act o[f] mail or wire fraud"). In other words, the Stati Parties do not substantively fault either predicate act—fraud or money laundering; rather, they criticize the interrelatedness of the two. This circular logic fails.

*Second*, section 1956(a)(2)(B)(i) prohibits the transportation or transmission of money into or outside the United States when done, in relevant part, knowing the monies involved "represent the proceeds of some form of unlawful activity." 18 U.S.C. § 1956(a)(2)(B)(i). The Stati Parties argue Kazakhstan had to allege that "the money paid to the Defendants' attorneys was derived from the proceeds of an illegal activity." Def. Mem. at 15. They contend that no such proceeds exist, as "[Kazakhstan] has not paid any part of the [SCC] Award." *Id.* at 16 n.7. The Stati Parties' focus is misguided. The proceeds of the Stati Parties' unlawful activity are not derived from payments made by Kazakhstan on the SCC Award but rather, as alleged, from the proceeds of the Stati Parties' underlying fraudulent scheme—namely, the proceeds raised fraudulently in the United States to fund the LPG Plant construction costs, which were artificially inflated. Compl. (ECF 1) ¶¶ 38-57, 65-102. Accordingly, the Complaint adequately alleges the predicate act of money laundering—under both 18 U.S.C. § 1956(a)(2)(A) and (B)(i).

**B.     The Complaint Adequately Alleges a Pattern of Racketeering Activity**

"[T]o prove a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). The Stati Parties do not challenge the relatedness of the predicate acts; they challenge only their continuity. Def. Mem. at 17-21. Their arguments fail.

Continuity is measured "as of the time suit is filed." *Resolution Tr. Corp. v. Stone*, 998 F.2d 1534, 1545 (10th Cir. 1993) "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 241. While only one is necessary to properly plead a RICO claim, the Complaint pleads both open- and closed-ended continuity.

**1.     The Complaint Pleads Open-ended Continuity**

"Open-ended continuity is present when (1) 'a specific threat of repetition' exists, (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 779 (7th Cir. 1994) (quoting H.J., Inc. ., 492 U.S. at 242-43). The Complaint pleads open-ended continuity in two ways. First, it alleges that there is a specific threat of repetition extending indefinitely into the future. Second, it alleges that the predicate acts are part of a way of doing business.

At that time Kazakhstan filed the Complaint, in October 2017, the Stati Parties' pattern of racketeering activity was in high gear. *See* Compl. (ECF 1) ¶ 263 (describing the Stati Parties' racketeering activities by date). The Complaint also specifically pleads open-ended continuity by alleging that the racketeering "extends over a substantial period of time, up to *and beyond* the

date of this Complaint." *Id.* ¶ 262 (emphasis added). The conduct complained of in the Complaint continued long beyond the artificial inflation of the construction costs of the LPG Plant, and the fraudulent procurement of the SCC Award, to the various enforcement proceedings that are ongoing. *Id.* ¶ 263. Thus, what occurred was the enterprise's "regular way of doing business," which establishes the "threat of continuity." *H.J.*, 492 U.S. at 242. Moreover, given the intent of the Stati Parties' fraudulent scheme, the gravity of the alleged wrongs committed to pursue it, and the fact that the agenda has not yet been fully achieved, there is a distinct threat of long-term racketeering activity. *See United States v. Wilson*, 605 F.3d 985, 1021 (D.C. Cir. 2010) (per curiam) (open-ended continuity shown, by, *inter alia*, statement of defendant that "[n]othing will stop this money train"); *see also Abraham v. Singh*, 480 F.3d 351, 356 (5th Cir. 2007) (open-ended continuity shown, *inter alia*, because acts "would . . . have continued indefinitely" had plaintiffs not sued); *Am. Special Risk Ins. v. Greyhound*, 1996 U.S. Dist. Lexis 14231 at \*238, 240-41 (S.D.N.Y. 1996) (witness bribes paid annually over several years for testimony that became more favorable over time was open-ended pattern).

The Stati Parties disagree that the Complaint pleads open-ended continuity, arguing that there is no threat of repetition, as the scheme has a natural ending point: enforcement and satisfaction of the SCC Award. Def. Mem. at 21. For this, the Stati Parties rely on inapposite cases. In *Golden v. Nadler, Pritikin & Mirabelli, LLC*, 2005 WL 2897397 (N.D. Ill. Nov. 1 2005), the District Court for the Northern District of Illinois found that communications, alleged to have been an abuse of legal process, would not support an inference that any scheme was open-ended because the abuse would necessarily end when the lawsuit did. *Id.* at \*7. The court held more specifically that "[t]here is certainly a distinction between carrying out fraud, for example, incidental to normal business operations and fraud *being the point* of the normal

business operation," and only the latter establishes open-ended continuity. *Id.* (emphasis added). Here, unlike in *Golden*, the Complaint alleges that fraud is the entire point of the Stati Parties' scheme including, but not limited to, the enforcement and satisfaction of the SCC Award. Compl. (ECF 1) ¶ 262. And, that scheme will continue, as it is the Stati Parties' regular way of doing business. *Id.* ¶¶ 261-79.

The Stati Parties' reliance on *Daedalus Capital LLC v. Vinecombe*, 625 Fed. App'x 973 (11th Cir. 2015), is similarly misplaced. Def. Mem. 21. There, the RICO defendants had realized their goal, which eliminated the threat of continuity. 625 Fed. App'x at 976-77. Here, as alleged, the Stati Parties are continuing their attempts to enforce the fraudulently obtained SCC Award in multiple jurisdictions worldwide, with no signs of stopping. Compl. (ECF 1) ¶¶ 194-251.

### 2.      The Complaint Pleads Closed-ended Continuity

Closed-ended continuity may be shown by "a series of related predicates extending over a substantial period of time." *H.J.*, 492 U.S. at 242. The Complaint's allegation of more than 68 related predicate acts over a 7-year period, Compl. (ECF 1) ¶ 263, readily establishes closed-ended continuity. *See id.* at 250 (unspecified number of bribe payments over period of 6 years showed closed-ended continuity); *Wilson*, 605 F.3d at 1021 (drug activity over period of 16 months showed open-ended and closed-ended continuity); *United States v. Phillip Morris*, 566 F.3d 1095, 1117-18 (108 predicate acts of mail and wire fraud over several decades was a sufficient pattern); *United States v. Richardson*, 167 F.3d 621, 623, 625-26 (D.C. Cir. 1999) (pattern shown by 15 separate violent criminal incidents over 2.5 months); *United States v. Palfrey*, 499 F. Supp. 2d 34, 46 (D.D.C. 2007) (indictment sufficiently showed continuity with 14 prostitution-related predicate acts between 1998 and 2006); *Oceanic Expl. Co. v. ConocoPhillips, Inc.*, 2006 U.S. Dist. Lexis 72231 at *58-59 (D.D.C. 2006) (continuous bribes of government officials over a decade was a pattern); *see also Edwards v. Prime Inc.*, 602 F.3d

1276, 1297 (11th Cir. 2010) (that defendants committed predicate acts "far more times than two" adequately alleged pattern).

The Stati Parties contend that there is no close-ended continuity because the Complaint has alleged (1) a single scheme, (2) directed against a single victim (3) in connection with a single lawsuit. Def. Mem. at 18-21. This is a misstatement of both the law and alleged facts. First, the Supreme Court has explicitly rejected the argument that "predicate acts of racketeering may form a pattern only when they are part of separate illegal schemes." *H.J.*, 492 U.S. at 234, 236, 240 (pattern shown by single scheme to bribe utility commissioners). This argument also has been rejected by the D.C. Circuit and other circuit and district courts. *See W. Assocs. v. Market Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) ("[i]t is true that . . . a single scheme may suffice for purposes of RICO"); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) ("Evidence of multiple schemes is not required to show a threat of continued criminal activity, and, indeed, proof of a single scheme can be sufficient so long as the predicate acts involved are not isolated or sporadic" (internal quotations omitted)); *Parcoil Corp. v. NOWSCO Well Serv., Ltd.*, 887 F.2d 502, 503 (4th Cir. 1989) ("there is now no question but that a single scheme may be sufficient to establish a pattern"); *Bryant v. Mattel, Inc.*, CV 04-9049 DOC RNBX, 2010 WL 3705668, at *9 (C.D. Cal. Aug. 2, 2010) ("Neither form of continuity requires a showing that the defendants engaged in more than one 'scheme' or 'criminal episode." (internal quotations and citations omitted)).

Furthermore, as alleged, the Stati Parties' racketeering activity was not limited to a single transaction but rather was a wide-ranging scheme that involved, at minimum, the Stati Parties fraudulently obtaining funds in the United States and elsewhere, falsifying multiple financial statements, using these financial statements to fraudulently obtain bids for the Stati Parties'

17

Kazakh-based assets (including the LPG Plant), using the KMG bid to fraudulently obtain an arbitral award, and then engaging in multiple litigations, in the U.S. and other jurisdictions, to attempt to enforce and collect on the fraudulently obtained award. Compl. (ECF 1) ¶¶ 1-252. As the Complaint further alleges, the Stati Parties raised funds in the United States under false pretenses, a scheme wholly separate from the attack on Kazakhstan and that did not clearly emerge until Kazakhstan filed the New York § 1782 Proceedings. Compl. (ECF 1) ¶¶ 38-57, 170-81. And the effort that the Stati Parties went to conceal their activities itself is a separate scheme, and one that was employed to execute the scheme to defraud. *Bryant*, 2010 WL 3705668, at *6 ("the 'cover up' of a scheme to defraud executes the scheme").

Second, nor is it the case that a pattern of racketeering activity cannot arise with respect to a single victim or a single lawsuit. *Handeen v. Lemaire*, 112 F.3d 1339, 1343-44 (8th Cir. 1997) (a single "intricate scheme through which [defendant] sought to fraudulently obtain a discharge . . . by manipulating the bankruptcy system" which victimized one person in one case was a pattern of racketeering activity); *see also Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 357, 364-65 (9th Cir. 2005) (reversing summary judgment for defendants; fraudulent discovery conduct by defendant in consolidated products liability litigation was pattern of racketeering activity); *Elemary v. Phillipp Holzmann A.G.*, 533 F. Supp. 2d 116, 142-43 (D.D.C. 2008) (single victim, single scheme pattern of racketeering activity over 3 years stated RICO cause of action); *Lewis v. Lhu*, 696 F. Supp. 723, 727-28 (D.D.C. 1988) (single victim of fraud on FCC through pattern of racketeering activity). Nothing in the statute requires that a pattern of racketeering activity victimize more than one person to be actionable. 18 U.S.C. § 1961(5) (definition of "pattern"); § 1964(c) ("[a]ny person injured" may sue).

The cases on which the Stati Parties rely—*Edmondson & Gallagher v. Alban Towers Tenants Association*, 48 F.3d 1260 (D.C. Cir. 1995), and *Western Associates v. Market Square Associates*, 235 F.3d 629 (D.C. Cir. 2001)—are inapposite.  Neither case establishes the per se rule on closed-ended continuity that the Stati Parties describe.  *Edmondson* involved a single scheme to defeat a single sale of a single building, the wrongs occurred over the course of one month, and the only persons affected were the buyer, seller, and real estate broker and only with respect to that one transaction.  The conduct had "no potential to extend to other persons or entities."  48 F.3d at 1265 (citation omitted).  This is why it was "virtually impossible for plaintiffs"—*in that case*—"to state a RICO claim."  *Id.*  Such a limited scheme is fundamentally different than the pattern of racketeering alleged in Kazakhstan's Complaint.

*Western* was a dispute between parties to a business transaction gone sour that was predicated solely on a claim of mail and wire fraud.  While the dispute lasted 8 years, it was still in essence a case of commercial fraud impacting a single partnership.  As the court noted, such cases should be scrutinized "to prevent ordinary business disputes from becoming viable RICO claims . . . simply because the parties used the United States mails or a fax machine to transmit financial documents."  235 F.3d at 637.  The instant case does not involve an "ordinary business dispute" in which some correspondence was mailed.  It involves a complex, far-reaching fraudulent scheme that extended over an extensive period of time and involved multiple individuals, companies, jurisdictions, acts, victims and legal proceedings.  The prohibition of such conduct, if Kazakhstan's allegations are taken to be true, lies at the heart of the reason why the RICO statue, and its civil enforcement mechanism, were enacted.  Such conduct certainly satisfies the pleading requirements of a RICO claim.  *See Lu v. Lezell*, 45 F. Supp. 3d 86, 99–100 (D.D.C. 2014) (allowing RICO plaintiffs to go forward where defendants engaged in mail and

wire fraud to carry out a scheme that was not alleged to have had any particular goal at all other than to net illicit gains).

### 3. The Complaint Satisfies the D.C. Circuit Multifactor Analysis

The Stati Parties argue that Kazakhstan does not meet the D.C. Circuit's multifactor analysis for determining whether the pattern of activity is sufficiently supported by factual allegations. Def. Mem. at 17-21. This is incorrect for multiple reasons. Primarily, the six factors that the cited cases suggest be considered in determining whether a pattern has been alleged do not "establish a per se rule for pattern analysis." *Western*, 235 F.3d at 637. That is, "the court continues to endorse a case-by-case, fact-specific approach." *Id.* Nonetheless, the factors—(1) the number of unlawful acts, (2) the length of time over which the acts were committed, (3) the similarity of the acts, (4) the number of victims, (5) the number of perpetrators, and (6) the character of the unlawful activity—clearly establish a pattern of racketeering activity, here, on the facts alleged by Kazakhstan. *Id.* (citing *Edmondson*, 48 F.3d at 1265).

With respect to the first three factors—the number of unlawful acts, the length of time over which the acts were committed, and the similarity of the acts—the Complaint alleges 68 different predicate offenses extending continually over a seven-year period. Compl. (ECF 1) ¶ 263. This long-term criminal conduct is "highly relevant" to the pattern analysis. *Western*, 235 F.3d at 636. The Stati Parties claim the predicate acts were "nothing more than repetition of the same fact in the many papers . . . or Defendants' failure to confess the alleged falsity of their prior statements[.]" Def. Mem. at 18. In other words, they argue continuity cannot exist because they merely overtly or by omission repeated the same fraud in each of the 68 different acts of mail fraud, wire fraud, and money laundering over a seven-year period. That is more than sufficient to allege closed-ended continuity. *H.J.*, 492 U.S. at 250; *Wilson*, 605 F.3d at 1021

20

*Phillip Morris*, 566 F.3d at 1117-18; *Richardson*, 167 F.3d at 623, 625-26; *Palfrey*, 499 F. Supp. at 46; *Oceanic Expl. Co.*, 2006 U.S. Dist. Lexis 72231 at *58-59; *see also Edwards*, 602 F.3d at 1297.

The fourth and fifth factors—the number of victims and the number of perpetrators—also support a pattern. Kazakhstan alleges multiple victims of the Stati Parties' fraud (e.g., the Republic of Kazakhstan, the U.S. and non-U.S. investors, KazMunaiGas, the other bidders for the Stati Parties assets, the auditors of the Stati Parties' companies, Compl. (ECF 1) ¶¶ 45, 130, 214, 252), and multiple perpetrators (e.g., Anatolie Stati, Gabriel Stati, Ascom Group, S.A., Terra Raf Trans Traiding Ltd., Tristan Oil Ltd., other Stati Companies Perkwood Investment Limited, Compl. (ECF 1) ¶¶ 2, 31-32, 33, 39, 68). This more than satisfies these factors. Further, the D.C. Circuit has recognized the need for flexibility by creating a balancing test wherein the strength of the first three factors, coupled with the sixth as discussed below, "weigh so strongly in one direction as to be dispositive." *Edmondson*, 48 F.3d at 1265. In any event, as described above, a pattern of racketeering activity can arise with respect to a single victim and, anyway, the racketeering in the instant case potentially victimized more than one person or entity. *Handeen*, 112 F.3d at 1343-44.

The final factor—the character of the unlawful activity—cannot be overlooked. The Stati Parties' criminal enterprise is vast—spanning decades and continents; involving investors and courts in multiple jurisdictions, alike. The Stati Parties claim, on the contrary, that the "litigation activity" relates to a single dispute. Def. Mem. at 20. To the extent that the "single dispute" is that the Stati Parties' entire scheme is fraudulent, that is true. But, as the Supreme Court has recognized, "it is implausible to suppose that Congress thought continuity might be shown *only* by proof of multiple schemes." *H.J.*, 492 U.S. at 234, 236, 240. Kazakhstan claims the Stati

Parties orchestrated long-running, multiple schemes to defraud Kazakhstan, and others. The Stati Parties' efforts to procure and enforce a fraudulent damages award from Kazakhstan in international arbitration is but *one part* of that larger scheme, the character of which supports a finding of continuity.

> ### C. The Complaint Alleges Domestic Application of the Mail and Wire Fraud Statutes

The Supreme Court has made clear that "§ 1962 applies to foreign racketeering activity" to the extent that the predicates alleged in a particular case themselves apply extraterritorially. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2102 (2016). Kazakhstan alleges the predicate acts of mail fraud, wire fraud, and money laundering. Compl. (ECF 1) ¶¶ 259, 263-274. The Stati Parties do not, and cannot, argue that the money laundering statute does not apply to conduct abroad. It undeniably does. *See United States v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 93 (D.D.C. 2017 ("The language of 18 U.S.C. § 1956 expressly indicates that Congress intended for the statute to apply to conduct abroad."). Rather, they claim that the mail and wire fraud statutes have no extraterritorial application. Def. Mem. at 22-23.

While the D.C. Circuit has not ruled on this issue, this is irrelevant in this case given that Kazakhstan's claims are predicated on *domestic* mail and wire fraud. Mail and wire fraud violations are considered domestic even if some conduct contributing to the violation occurred outside the United States, as long as the "focus" of the those violations occurred in the United States. *RJR Nabisco*, 136 S. Ct. at 2101. Such is the case, here.

The "focus" of the wire fraud statute is the scheme to defraud that involves the use of U.S. wires. *See Bank Julius*, 251 F. Supp. 3d at 102 ("the focus of the wire fraud statute is the scheme to defraud—or more precisely, a scheme to defraud that involves the use of U.S. wires"). The "focus" of the mail fraud statute is, by extension, the scheme to defraud that involves the use

of mails or interstate carriers. *Phillip Morris*, 304 F. Supp. 2d at 70 n.5 ("The requisite elements of 'scheme to defraud' under the wire fraud statute . . . and the mail fraud statute . . . are identical"). The scheme to defraud does not have to be entirely executed in the United States to constitute domestic application of the statutes. *Bank Julius*, 251 F. Supp. 3d at 102.

The *Bank Julius* court concluded that "a complaint alleges a domestic application of wire [and mail] fraud when (1) a defendant or coconspirator commits a substantial amount of conduct in the United States, (2) the conduct is integral to the commission of the scheme to defraud, and (3) at least some of the conduct involves the use of U.S. wires [and mails] in furtherance of the scheme to defraud." *Bank Julius*, 251 F. Supp. 3d at 103. The Complaint easily establishes all of these elements.

*First*, a substantial amount of the Stati Parties' fraudulent scheme occurred in the United States. The scheme to defraud—that started when the Stati Parties artificially inflated the construction costs of the LPG Plant and obtained bids based on falsified financial statements and misleading information for the purchase of the LPG Plant—culminated in the Stati Parties fraudulently obtaining the SCC Award and then attempting to enforce that award in multiple jurisdictions. The Stati Parties incorrectly contend the "vast majority" of the conduct took place outside of the United States, citing the SCC Arbitration and the various related proceedings in Sweden, London, the Netherlands, and Luxembourg. Def. Mem. at 24. In fact, as alleged, the scheme was pervasive in the United States. First, the Stati Parties raised funds in the United States pursuant to an Indenture agreement with a U.S. bank that served as trustee to finance the operations of two Kazakh companies. Compl. (ECF 1) ¶¶ 38-57. Second, to fraudulently obtain the SCC Award, the Stati Parties relied upon U.S. counsel and U.S. experts. *Id.* ¶¶ 139, 154. Third, in the New York § 1782 Proceedings, the Stati Parties tried to conceal that they had

submitted false evidence in the SCC Arbitration. *Id.* ¶ 175. Fourth, the Stati Parties enforced the fraudulently obtained award in the Washington Enforcement Proceedings. *Id.* ¶¶ 194-206. Fifth, the Stati Parties attempted to enforce the fraudulently obtained award in the New York Enforcement Proceedings. *Id.* ¶¶ 227-231. Finally, the Stati Parties instituted § 1782 Proceedings in the United States seeking information regarding Kazakhstan's assets in satisfaction of the fraudulently obtained award. *Id.* ¶¶ 248-51. It is therefore clear that the Stati Parties committed a substantial amount of conduct related to their fraudulent scheme in the United States.

*Second*, the alleged domestic conduct of the Stati Parties is integral to the commission of the scheme to defraud. The Stati Parties insist that the "core allegations" relate to the proceedings in Sweden, and that the only U.S. connection to those proceedings is their retention of U.S.-based lawyers. Def. Mem. at 24-25. That too is incorrect. The Stati Parties' entire scheme—from raising funds in the U.S., artificially inflating the LPG Plant construction costs, and obtaining bids based on falsified financial documents to using those numbers to obtain an arbitral award and attempting to collect that fraudulently obtained award—was fraudulent. And, the conduct that took place in the United States was integral to that scheme. To illustrate, the funds raised in the United States were misused by the Stati Parties as part of their artificial inflation the LPG Plant construction costs, which fraud was perpetuated by the Stati Parties in their falsified financial statements, which statements again were used to induce potential purchasers to overstate the value of the LPG Plant in the bids. *Id.* ¶¶ 65-134. Those fraudulently obtained bids then were used affirmatively by the Stati Parties to obtain the SCC Award. *Id.* ¶¶ 138, 141, 149, 151, 158-59. Moreover, the Stati Parties' reliance on U.S. counsel and U.S. experts was vital to their victory in the SCC Arbitration. *Id.* ¶¶ 139, 158. Finally, the scheme to defraud depends on the Stati Parties collecting the fraudulently obtained SCC Award, which they seek to do through

24

the adjudicative proceedings that are pending in the United States—the Washington, New York, New York § 1782, and the Stati Parties' § 1782 Proceedings. *Id.* ¶¶ 175, 194-206, 227-231, 248-51. The Stati Parties' fraudulent scheme therefore has, with respect to the United States, come full circle—starting in the United States and ending here.

*Third*, a substantial amount of this conduct involved the use of U.S. wires and mails in furtherance of the scheme to defraud. As alleged in the Complaint, to fraudulently obtain the SCC Award in the SCC Arbitration, to resist annulment of the fraudulently procured SCC Award in the Swedish Annulment Proceedings, and to confirm the fraudulently procured SCC Award in the Washington, New York Enforcement, and § 1782 Proceedings, the Stati Parties submitted pleadings, briefs, witness statements and other evidence, and communicated with U.S. counsel. Each communication, pleading, brief, witness statement and other evidence in those proceedings was sent through the United States mails, private or commercial interstate carriers, and/or interstate wires. Compl. (ECF 1) ¶¶ 167-68, 179-80, 191-92, 204-05, 229-30, 249-50, 263. Thus, much of the Stati Parties' conduct in the fraudulent scheme involved the use of U.S. wires and mails. The Stati Parties do not argue otherwise.

Accordingly, the extraterritorial application of the mail and wire fraud statutes are irrelevant as Kazakhstan has alleged domestic mail and wire fraud to support its claims.

### D.     The Complaint Alleges a Domestic Injury

The Supreme Court announced in 2016 that section 1964(c) requires a RICO plaintiff to allege a domestic injury to its business or property, but it did not indicate what factors a court should examine to determine whether a plaintiff's alleged injury is foreign or domestic. *RJR*, 136 S. Ct. at 2106-11. Neither the D.C. Circuit nor any court in this district has had occasion to address the issue. The Second and Seventh Circuits and several district courts have considered the meaning of "domestic injury" in light of the *RJR* decision, and two lines of reasoning have

emerged from those opinions. The Complaint alleges a domestic injury under either line of reasoning.

The first line focuses on where the alleged injury was suffered. *See, e.g., Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1094 (7th Cir. 2018); *Bascunan v. Elsaca*, 874 F.3d 806, 817 (2d Cir. 2017); *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, 245 F. Supp. 3d 650, 657-58 (D.N.J. 2017). To determine where the losses are located geographically, courts have examined the specific type of injuries alleged. *Bascunan*, 874 F.3d at 817. "Where the injury is to *tangible* property, . . . the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if the plaintiff himself resides abroad." *Id.* at 821 (emphasis added). On the other hand, "a party experiences or sustains injuries to its *intangible* property at its residence." *Armada*, 885 F.3d at 1094 (emphasis added).

Kazakhstan alleges damages in the form of attorneys' fees for the proceedings in the United States. Compl. (ECF 1) ¶ 277. Money is a tangible asset—one "that has a physical existence and is capable of being assigned a value." *Armada*, 885 F.3d at 1094 (quoting *Tangible asset*, Black's Law Dictionary (9th ed. 2009)); *compare Bascunan*, 874 F.3d at 824 (funds from a specific bank account located in the United States are tangible assets), *with Armada*, 885 F.3d at 1094-95 (intangible assets include patents, services, bundle of litigation rights, value of shares). Therefore, under the first line of reasoning, Kazakhstan's injury is domestic if the money was located in the United States when it was harmed. *Bascunan*, 874 F.3d at 817. It was: the litigation expenses and attorneys' fees were incurred in the United States. Compl. (ECF 1) ¶ 277.

Faced with this inevitable conclusion, the Stati Parties resort to mischaracterizing Kazakhstan's injury as "the incurrence of an obligation to pay legal fees" to blatantly move the

injury abroad. Def. Mem. at 26. They incorrectly argue that such a debt is an intangible asset, which injury is sustained at Kazakhstan's residence. *Id.* But, they are wrong. "Legal expenses are concrete financial losses, not mere injury to a valuable intangible property interest." *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004). What is more, the Stati Parties' argument entirely ignores that Kazakhstan in fact paid the legal fees—in the United States—as a result of the Stati Parties' pattern of racketeering. Compl. (ECF 1) ¶ 252. Those specific funds are tangible assets, and the injury, suffered in the United States, was accordingly domestic. *See Akishev v. Kapustin*, No. 13-cv-7152, 2016 WL 7165714, at *5–8 (D.N.J. Dec. 8, 2016) (finding domestic injury where foreign plaintiffs purchased used cars online from defendant's Pennsylvania and New Jersey dealerships; injuries were felt on defendant's United States-based website).

Moreover, the Stati Parties are now enforcing the SCC Award in the United States and seeking to attach property of Kazakhstan in the United States in support of those efforts, *see Stati, et al. v. Republic of Kazakhstan*, No. 1:14-cv-01638-ABJ (D.D.C.), ECF 73 (Motion for Relief Pursuant to 28 U.S.C. § 1610(c) and 28 U.S.C. § 1963), and this too undoubtedly satisfies the domestic injury requirement.

The second line of inquiry into domestic injury focuses on where the conduct occurred that caused the injury. *See Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1156-7 (C.D. Cal. 2016). In *Tatung*, plaintiff was a foreign corporation who was awarded a judgment through arbitration in California against defendant. Plaintiff subsequently alleged a RICO conspiracy between defendant and others to avoid the arbitration judgment. A judgment is an intangible asset, *Armada*, 885 F.3d at 1095, and therefore would have constituted a foreign injury suffered at plaintiff's residence under the first line of reasoning. But, the *Tatung* court found that RICO

27

civil liability was appropriate because "the defendants specifically targeted their conduct at California with the aim of thwarting [plaintiff's] rights in California" and that "[i]t would be absurd to find that such activity did not result in a domestic injury to [p]laintiff." 217 F. Supp. 3d at 1156. "It is ludicrous to think that a foreign individual could not sue under civil RICO for financial injuries incurred while they are working, traveling, or doing business in this country as the result of an American RICO operation." *Id.* Similarly, here, the Stati Parties specifically targeted their conduct at the United States through their raising of funds in the U.S., and attempting to collect that fraudulently obtained award, reliance upon U.S. counsel and U.S. experts to obtain the fraudulent arbitration award, concealment of the false evidence in the § 1782 proceeding and attempts to enforce the fraudulently obtained award in the Washington and New York Enforcement Proceedings—all through the use of the U.S. mail and wires—and such activity resulted in a domestic injury to Kazakhstan. Compl. (ECF 1) ¶ 252.

E.  **The Complaint Alleges the Predicate Acts Are the But For and Proximate Causes of Kazakhstan's Injuries**

In order to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Feld Entm't*, 873 F. Supp. 2d at 320 (citing *Holmes v. Sec. Investor Protection Corp.,* 503 U.S. 258, 268 (1992)). "Proximate cause . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient.'" *Hemi Group, LLC v. City of New York,* 559 U.S. 1, 9 (2010) (quoting *Holmes,* 503 U.S. at 268, 271, 274, 112 S.Ct. 1311). The present injury to Kazakhstan here is the money spent defending the U.S. Enforcement Actions. Compl. (ECF 1) at ¶¶ 252, 277, 285. The predicate acts directly caused that injury.

The Stati Parties contend that the alleged racketeering is not the "but for" or proximate cause of injury—attorneys' fees and expenses in connection with the U.S. Enforcement Actions—because the Complaint does not allege that the SCC Tribunal would not have ruled in the Stati Parties' favor absent the fraud, or that Kazakhstan would have paid the SCC Award promptly had the additional value of the LPG Plant not been included in the award. Def. Mem. at 27-28. This argument misstates the Complaint and parses causation too thinly. Kazakhstan has alleged, in detail, that the SCC Tribunal's ruling was a direct result of the Stati Parties' fraud. Compl. (ECF 1) at ¶¶ 158-166. That Kazakhstan has not voluntarily paid a fraudulently-induced award is irrelevant.

All that is required is "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Group,* 130 S.Ct. at 989. That has been met, here. The Stati Parties submitted false evidence in the SCC Arbitration in furtherance of their illegal scheme, Compl. (ECF 1) at ¶¶ 139-57, 263, which the SCC Tribunal relied upon in issuing the SCC Award, *id.* ¶¶ 158-166. Kazakhstan has suffered injury as a direct and proximate result of the Stati Parties' attempts to enforce that award in the Washington and New York Enforcement Proceedings, and the Stati Parties' § 1782 Proceedings, and attempts to quash Kazakhstan's inquiry into their fraud in the New York § 1782 Proceedings. *Id.* ¶¶ 252, 277, 285. The Stati Parties used the mails, wires and private interstate carriers to effectuate the corrupt scheme, which propelled the U.S. Enforcement Actions. *Id.* ¶¶ 167-68, 179-80, 192-92, 204-05, 229-30, 249-50, 263. And their money laundering was integral to the scheme. *Id.* ¶¶ 169, 181, 193, 206, 226, 231, 247, 251, 274. All of these predicate acts directly harmed Kazakhstan because they all caused Kazakhstan's expenditure of legal fees, and Kazakhstan now stands at risk of enforcement of the fraudulent SCC Award in the United States. *See Hemi Group*, 559 U.S. at 3 ("[T]he compensable injury

flowing from a RICO violation necessarily is the harm caused by the predicate acts."). There is no more direct relation between an injury and injurious conduct than that alleged by Kazakhstan.

The Stati Parties' reliance on *Eastern Savings Bank* is misplaced. Def. Mem. at 28. That case is inapposite. There, over the course of thirteen years following the foreclosure of the mortgage on a townhome, in connection with the property, the mortgagee sued the mortgagor, tenants, and others four times and they, in turn, sued the mortgagee four times. 31 F. Supp. 3d at 7-10. The mortgagee's fifth suit against the defendants was a civil RICO cause of action relating to defendants' post-foreclosure litigation activity. *Id.* At base, the claim was that the defendants engaged in various obstructive, abusive, and fraudulent tactics in the multiple suits between the parties. *Id.* But, the alleged damages arose from the mortgagee's expenditure of funds in pursuing or defending the various suits. *Id.* at 15. The court found that such purported harm was "wholly removed" from the alleged litigation tactics. *Id.* That is, the mortgagee would have incurred expenses in connection with the litigation between the parties absent the specific tactics allegedly employed during the suits. Not so here, where Kazakhstan's complaint is that the U.S. Enforcement Proceedings themselves, from which its injuries stem, and not any specific tactic employed within them, furthered the Stati Parties' fraudulent scheme. *See Feld Entm't*, 873 F. Supp. 2d at 322 (finding plaintiff's injuries directly flowed from the prosecution of a fraudulent lawsuit).

## III.    The Complaint States a Cognizable RICO Conspiracy Claim

The Stati Parties' only argument that Count II, the RICO conspiracy claim, should be dismissed is that Kazakhstan failed to state a claim under section 1962(c). Def. Mem. at 28-29. This contention is without merit on its face because, as explained above, the Complaint adequately alleges a civil RICO claim.

IV.     **The Complaint States a Cognizable Fraud Claim**

The Stati Parties argue that the Court lacks subject matter jurisdiction over Kazakhstan's fraud claims and that the Complaint fails to state a cognizable cause of action for fraud, Def Mem. at 29-36, but these contentions also have no merit.

A.      **The Court Has Subject Matter Jurisdiction Over the Fraud Claims**

The Stati Parties maintain that, because the RICO causes of action must be dismissed, and Kazakhstan's fraud claims provide no independent basis for federal jurisdiction, the fraud claims also must be dismissed. Def. Mem. at 29. This contention fails at the outset because, for the reasons above, the Court has no basis to dismiss the RICO causes of action.

B.      **The Complaint Sufficiently Alleges a Fraud Claim**

Defendants contend that Kazakhstan fails to plead fraud with specificity and that the fraud claims regarding the U.S. Enforcement Proceedings do not satisfy the elements of fraud. Def. Mem. at 29-36. These arguments fail for the following reasons.

1.      **The Complaint Pleads Fraud with Specificity**

All three reasons the Stati Parties proffer to support the contention that the Complaint does not allege fraud with specificity are unavailing.

*First*, the Stati Parties argue that, although the Complaint alleges misrepresentations and/or omissions, Kazakhstan does not plead *which* misrepresentations and omissions form the basis for its fraud claim. *Id.* at 30-31. But, this contention is based on a myopic reading of *just* the allegations in the seven paragraphs detailing the elements of Kazakhstan's cause of action for fraud. The preceding 279 paragraphs describe in depth the conduct of each individual defendant constituting fraud. The Complaint thus leaves little doubt as to the specific acts of each defendant that form the basis for the various causes of action.

***Second***, the Stati Parties blame Kazakhstan for impermissibly accusing them of fraud *en bloc*. *Id.* at 31-32. This is an argument, at root, that the Stati Parties lack fair notice of the allegations against them. "The main purpose of Rule 9(b) is to ensure that defendants have adequate notice of the charges against them to prepare a defense." *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 116 (D.D.C. 2003). Accordingly, a court "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). Even then, "the courts should be sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud." *McQueen v. Woodstream Corp.*, 248 F.R.D. 73, 78 (D.D.C. 2008). Here, the idea that the Stati Parties lack fair notice of the circumstances for which they will have to prepare a defense at trial has no merit given the detailed allegations of the Complaint.

The Stati Parties fixation on Kazakhstan's allegations regarding the "Stati Companies" is particularly misguided. Def. Mem. at 31-32. The Stati Parties portray the "Stati Companies" as "third parties that are not subject to the complaint," yet they acknowledge the Complaint's well-pleaded allegations that the Statis *control those companies*. Far from implicating "third parties" that otherwise would be strangers to the suit, the Complaint simply adopts shorthand to describe entities controlled by the Stati Parties and used by them to commit fraudulent and criminal acts. As the Complaint makes clear, the Statis Parties are the parties ultimately responsible for Kazakhstan's injuries. If discovery reveals that certain Stati Companies should be added as defendants, Plaintiff can amend its Complaint accordingly.

32

*Third*, the Stati Parties maintain that Kazakhstan relies too extensively on "information and belief" allegations, faulting the Complaint for not stating that certain allegations are based on information in the Stati Parties' exclusive control. *Id.* at 32-33. The substantive allegations made on "information and belief" are accompanied by detailed factual allegations that indicate the basis for each claim. *See* Compl. (ECF 1) ¶¶ 52, 65-102, 105-112, 141-48. That satisfies Rule 9(b). *See, e.g.*, *United States ex rel. Davis v. Dist. of Columbia*, 591 F. Supp. 2d 30, 38 (D.D.C. 2008) ("Although plaintiff uses the phrase 'upon information and belief' several times in his complaint, the actual basis of plaintiff's allegations is stronger.").

To the extent that information necessary to support Kazakhstan's claims remains in the Stati Parties' exclusive control, Kazakhstan is permitted to plead allegations of fraud "on information and belief," as the Stati Parties acknowledge. Kazakhstan need only state "the facts upon which the allegations are based" and indicate that "the necessary information lies within the defendant['s] control." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994). Reading the Complaint as a whole, and bearing in mind that "Rule 9(b) does not completely vitiate the liberality of Rule 8," the factual basis for each allegation made on information and belief is clear. *United States ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69, 84 (D.D.C. 2013) (quoting *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 258, 269 (D.D.C. 2002)) (denying motion to dismiss under Rule 9(b) where plaintiff alleged the who, what, where, when, and how of the fraud and indicated that it did not have direct access to additional details).

Accordingly, the Stati Parties real issue is that not every fact pleaded on information and belief is followed by an allegation that the relevant information is within the Stati Parties' control. However, their single example of "information and belief" pleading, Def. Mem. at 33,

33

indicates that the information necessary to make more specific factual assertions about the conduct at the heart of the fraud is within the Stati Parties' exclusive control. Compl. (ECF 1) ¶¶ 96-101. That is, *obviously* the Stati Parties know the details concerning why and how the $72,003,345.000 entry was false and artificially inflated the construction costs of the LPG Plant. In any event, Kazakhstan may supplement the Complaint in this narrow circumstance with allegations that certain information is within the Stati Parties' exclusive control through briefing. *See United States ex rel. Conteh v. IKON Office Solutions, Inc.*, 27 F. Supp. 3d 80, 89-90 (D.D.C. 2014) ("While it is generally understood that the complaint may not be amended by legal memoranda that are submitted as opposition to motions for dismissal . . . [,] courts have allowed, for Rule 9(b) purposes, a party to supplement its complaint through such legal memoranda . . . for the sake of judicial economy." (quoting *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 73 (D.D.C. 2002), *aff'd*, 409 F.3d 414 (D.C. Cir. 2005))); *United States v. First Choice Armor & Equip. Co.*, 808 F. Supp. 2d 68, 79 (D.D.C. 2011) (same, and citing cases). "[A]llowing such amendments is fair" when, as here, "the allegations contained in the plaintiffs' legal memoranda" provide defendants with "adequate notice of the specifics of the fraud claim." *Shekoyan*, 217 F. Supp. 2d at 74.

Even if the Court were to find that the Complaint falls short of Rule 9(b), which it does not, Kazakhstan should be given the opportunity to replead. *See Antoine v. U.S. Bank Nat. Ass'n*, 547 F. Supp. 2d 30, 36 (D.D.C. 2008) ("Where a pleading does not satisfy the heightened requirements of Rule 9(b), the court should freely grant leave to amend.").

2.   **The Fraud Claims Regarding the U.S. Enforcement Proceedings Satisfy the Elements of Fraud**

The Stati Parties advance four arguments why the fraud claims regarding the U.S. Enforcement Proceedings do not satisfy the elements of fraud, Def. Mem. at 33-36, but not one has merit.

*First*, the Stati Parties claim Kazakhstan could not have relied on misrepresentations and/or omissions made by the Stati Parties during legal proceedings. *Id.* at 34. This contradicts the allegations of the Complaint and therefore should be rejected under Fed. R. Civ. P. 12(b)(6). Kazakhstan has pleaded that it tailored its efforts in the SCC Arbitration and in the various enforcement proceedings, including the U.S. Enforcement Proceedings, in reliance on the Stati Parties' representations regarding the truthfulness of the Information Memorandum, the related party status of Perkwood, and the non-existence of documents responsive to the February 3, 2012 Document Production Order (namely, the Perkwood Agreement). Compl. (ECF 1) ¶¶ 164-65, 264-69, 292.

Contrary to the Stati Parties' suggestion, there is no *per se* rule barring reliance on an opponent's factual representations in adversarial proceedings. *See G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 542-43 (S.D.N.Y. 2002) (denying motion to dismiss RICO-predicate mail and wire fraud claims based on the submission of fraudulent affidavits in connection with litigation, and explaining that, "i]n the absence of some 'red flag,' . . . whether a party may reasonably rely on sworn affidavits presents a factual issue that cannot be determined at this stage of the proceedings"). Plainly, a party cannot rely on its opponent's *advice* or *omission*, but where that opponent makes an *affirmative misrepresentation* based on facts in its exclusive possession, the party can hardly be faulted for relying on that misrepresentation, and reliance cannot fail as a matter of law. *See id.* Indeed, courts in this jurisdiction recognize that "the

35

'reasonableness of reliance upon a misrepresentation is a question of fact, for which disposition by [pre-trial motion] is generally inappropriate.'" *In re APA Assessment Fee Litig.*, 766 F.3d 39, 48 (D.C. Cir. 2014) (quoting *Cassidy v. Owen*, 533 A.2d 253, 256 (D.C. 1987)).

*Second*, the Stati Parties contend Kazakhstan has not plausibly alleged any damages resulting from the Stati Parties' fraud. Def. Mem. at 34-35. This too ignores the allegations of the Complaint, which make clear "how Defendants' alleged misrepresentations caused damage to" Kazakhstan; specifically, that the Stati Parties' fraud caused the result of the SCC Arbitration, necessitating the expenditure of considerable resources to contest the unjust SCC Award; the same is true of the Stati Parties' attempts to enforce that fraudulently procured award; and the Stati Parties' persistent efforts to obscure the fraud have caused Kazakhstan to incur significant expenses uncovering the latter, seeking judicial assistance in conducting discovery on the latter, and bringing the latter to the attention of various tribunals. Compl. (ECF 1) ¶¶ 252, 293.

*Third*, the Stati Parties argue the District Court for the District of Columbia has rejected attempts to claim damages resulting from attorneys' fees and costs. Def. Mem. at 35. The Stati Parties misapprehend the basis of Kazakhstan's claim for damages. Kazakhstan does not seek attorneys' fees and costs in connection with routine litigation or even as a result of bad faith litigation conduct by its adversaries, but rather the recovery of fees incurred as a direct result of litigation that is integral to the Stati Parties' fraudulent scheme. Absent the alleged fraud, there would be no Section 1782 proceedings or U.S. Enforcement Proceedings, and therefore none of the associated legal fees and expenses in these proceedings. Defendants cite no case law that excludes the inclusion of legal expenses as a component of damages in these circumstances, and, indeed, case law in analogous contexts is to the contrary. Specifically, monies expended in defending litigation that is the product of racketeering activity are recoverable as damages under

36

RICO. *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993); *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1105 (2d Cir. 1988); *Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 354-55 (3d Cir. 1986), *aff'd sub nom. Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987); *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004).[3]

   ***Finally***, the Stati Parties maintain that the alleged fraud was, at best, intended to induce reliance by the courts, not by Kazakhstan. Def. Mem. at 35-36. The Stati Parties cannot seriously contend that their misrepresentations were not intended to induce reliance by Kazakhstan. There is no other conceivable explanation for their failure to produce the Perkwood Agreement, at a minimum. In any event, this is a *non sequitur*, as the Stati Parties' own citations make clear that a cause of action for fraud requires proof only that defendant acted "with the intent to *deceive* the plaintiff" and that "the plaintiff acted in reasonable reliance on that representation." *E.g.*, *Safarini v. Ashcroft*, 285 F. Supp. 3d 407, 416 (D.D.C. 2018). Moreover, unlike in the cases cited by the Stati Parties, Kazakhstan has pleaded that *it* in fact relied on the Stati Parties' misrepresentations. *Compare* Compl. (ECF 1) ¶¶ 265-69, *with Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 23 (D.C. Cir. 2008) ("Rather than suggesting its own reliance, Bestseller says the PTO relied on Fame's alleged misrepresentation."), *Safarini*, 285 F. Supp. 3d at 416 ("Safarini does not allege that the Federal Defendants intended to deceive *him* or

---

[3] D.C. law also recognizes that investigation and litigation costs caused by another party's misconduct may be compensable as damages. *See Answering Serv., Inc. v. Egan*, 785 F.2d 1084, 1086 (D.C. Cir. 1986) (describing the D.C. common law cause of action for wrongful involvement in litigation, which "creates a very limited exception to the general rule that attorney's fees and other expenses of litigation are not recoverable as an element of damages"); *Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*, 985 A.2d 443, 458-59 (D.C. 2009) (detailing the elements of a claim for wrongful involvement in litigation); *see also McNamara v. Picken*, 965 F. Supp. 2d 1, 11 n.5 (D.D.C. 2013) ("[A] Court may award attorney's fees incurred for defending against a claim as an element of damages in malicious prosecution cases, or 'when the other party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."); *Weisman v. Middleton*, 390 A.2d 996, 999 (D.C. 1978) (attorney's fees, compensatory damages, and punitive damages "traditionally have been held to be proper elements for the jury's consideration in malicious prosecution cases").

that *he* acted in reliance on any representation they made."), *and E. Savings Bank*, 31 F. Supp. 3d at 18 ("The plaintiff pleads that the defendants made 'misrepresentations and/or omissions with the intent of obtaining favorable rulings from the District of Columbia courts and administrative tribunals.'"). The Complaint thus sufficiently pleads fraud with respect to the U.S. Enforcement Proceedings.

## V.    The Complaint States a Cognizable Civil Conspiracy Claim

The Stati Parties' only argument that the Complaint does not allege an actionable claim for civil conspiracy is that Kazakhstan fail to adequately allege an underlying tort. Def. Mem. at 36. For the reasons stated above, the Complaint sufficiently alleges the tort of fraud, and therefore, this argument fails.

## VI.    Principles of Comity Do Not Apply Except to the Extent They Compel the Rejection of the Stati Parties' Argument

The Stati Parties ask this Court to recognize the Svea Court of Appeal's judgment rejecting Kazakhstan's application to set aside the SCC Award under principles of international comity, and dismiss the Complaint accordingly. Def. Mem. at 36-41. This argument is unavailing. Comity only applies if a foreign court adjudicates the "truth of the matter" that a party seeks to have adjudicated subsequently in a domestic court. *Hilton v. Guyot*, 159 U.S. 113, 205-06 (1895). As the Stati Parties well know, the Svea Court of Appeal *did not* adjudicate the "truth of the matter[s]" that Kazakhstan presents to this Court.

### A.    The Swedish Annulment Proceedings

Kazakhstan instituted the Swedish Annulment Proceedings to set-aside the SCC Award under the Swedish Arbitration Act. Compl. (ECF 1) ¶ 183. Kazakhstan argued therein that the SCC Award was invalid because it was contrary to Swedish public policy. *Id.* ¶ 185. More

specifically, Kazakhstan asserted that the SCC Tribunal's damages ruling would have been different if the SCC Tribunal had known that the Stati Parties were engaged in fraud. *Id.* ¶ 186.

The Svea Court of Appeal dismissed Kazakhstan's claim to annul the SCC Award. *Id.* ¶ 188. The court held, on a demurrer basis, that the Stati Parties' alleged fraud, if accepted as true, would not violate Swedish public policy. *Id.* The court therefore ***did not*** decide the merits of Kazakhstan's fraud allegations. *See Stati et al. v. Republic of Kazakhstan*, No. 14-cv-1638-ABJ (D.D.C.), ECF 45-3 (Svea Court of Appeal Judgment) § 5.3.1. The Stati Parties' contention in the Motion to Dismiss otherwise is frankly absurd, and has been flatly rejected by the High Court in London, which came to this conclusion after thorough examination of this issue, including submission of extensive evidence and oral argument of counsel. *See id.* at ECF 51-1 (June 6, 2017 London Court Judgment Granting Motion for Leave) ¶ 80 ("No Court has decided the question whether there has been the fraud alleged."); Exhibit A ¶ 64 ("the Swedish Courts, as the courts of the seat. Have no determined the question of fraud discussed in that judgment").

In fact, the Stati Parties affirmatively represented to the High Court in the London Proceedings that the merits of Kazakhstan's fraud allegations have not been adjudicated and would in fact be adjudicated in this RICO action *after* full discovery and trial. *See* Exhibit A ¶ 28 (citing argument by the Stati Parties' counsel that this Court in this RICO action "will consider every aspect of the fraud alleged in the proceedings [before the London Court], and more, and after a trial involving full disclosure and oral evidence.").

Finally, the only decision that should be recognized under the doctrine of comity is the June 6, 2017 London Court Judgment, which fully considered the precise issue now raised by the Stati Parties—whether the Svea Court of Appeal adjudicated the merits of Kazakhstan's fraud allegations—and ***expressly rejected*** it. *See* No. 14-cv-1638-ABJ (D.D.C.), ECF 51-1 (June 6,

2017 London Court Judgment Granting Motion for Leave) ¶ 80 ("No Court has decided the question whether there has been the fraud alleged."); Exhibit A ¶ 64 ("the Swedish Courts, as the courts of the seat. Have no determined the question of fraud discussed in that judgment"). Given that the Stati Parties have already litigated and lost on this issue, they should not be permitted to re-litigate it in this Court. *Montana v. U. S.*, 440 U.S. 147, 153 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").

### B.      Claim Preclusion Does Not Bar Kazakhstan's Claims

The Stati Parties urge the Court to bar this action under the doctrine of res judicata (claim preclusion). Def. Mem. at 38-41. That doctrine does not apply. "Under res judicata, a final judgment on the merits bars further claims by parties or their privies ***based on the same cause of action***." *Montana*, 440 U.S. at 153 (emphasis added). The claims that Kazakhstan presents to this Court—that the Stati Parties' sophisticated and wide-ranging illegal pattern of racketeering consisting of multiple acts of mail fraud, wire fraud, and money laundering and their commission of the common law torts of fraud and civil conspiracy injured Kazakhstan—were not decided in the Swedish Annulment Proceedings, as described above. The Svea Court of Appeal's judgment cannot therefore give rise to res judicata. *Id.*

The Stati Parties do not (and cannot) contend that the Svea Court of Appeal decided the claims at issue in the Complaint. Instead, they maintain the Complaint and the Swedish Annulment Proceedings both address the same nucleus of facts: the procurement of the SCC Award based on an alleged fraudulent scheme to inflate the value of the LPG Plant. Def. Mem. 40-41. Not so. This case involves facts that were not before the Svea Court of Appeal—the circumstances surrounding the U.S. Enforcement Proceedings, for instance. Even if the two

actions shared a common nucleus of facts, the same claim for res judicata purposes would only be involved if "the rights asserted in the last suit were in existence at the time the first suit was brought, . . . [and c]ould have been asserted in that suit." *The Haytian Republic*, 154 U.S. 118, 125 (1894); *see also NRDC v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008) ("[C]laim preclusion is also intended to prevent litigation of matters that should have been raised in an earlier suit."). Indeed, the parties in the cases relied upon by the Stati Parties could have raised their later claims in the earlier suits. *See Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491-92 (D.C. Cir. 2009); *Laufer v. Westminster Brokers, Ltd.*, 532 A.2d 130, 136-37 (D.C. Cir. 1987); *Lary v. Ansari*, 817 F.2d 1521 (11th Cir. 1987).

By contrast, the causes of action in the Complaint could not have been asserted in the Swedish Annulment Proceedings. Kazakhstan was limited by Swedish law to arguing that the SCC Award was invalid because it was contrary to Swedish public policy. Compl. (ECF 1) ¶ 185. Whether the Stati Parties' alleged fraudulent conduct violated Swedish public policy is entirely irrelevant to whether such conduct constitutes a RICO violation. Certainly, Kazakhstan did not assert in the Swedish proceeding any cause of action under U.S. law, including RICO, RICO conspiracy, fraud, and civil conspiracy. The doctrine of claim preclusion accordingly does not bar the causes of action in the Complaint. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985) ("claim preclusion generally does not apply where '[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject matter jurisdiction of the courts.'" (quoting Restatement (Second) of Judgments § 26(1)(c) (1982)); *U.S. Indus., Inc. v. Blake Const. Co., Inc.*, 765 F.2d 195, 205 n. 21 (D.C. Cir. 1985) (claims are not barred where they "would have been utterly impracticable to join at that time").

Further, res judicata does not apply to claims where, due to jurisdictional or legal barriers, certain remedies were not available in the first instance. *See Hurd v. D.C., Gov't*, 864 F.3d 671, 679 (D.C. Cir. 2017) (finding that a Habeas claim was not the same as a section 1983 claim because no damages were available in the first claim). The only remedy available to Kazakhstan in the Swedish Annulment Proceedings was to have the SCC Award set-aside under principles of Swedish law. Compl. (ECF 1) ¶ 183. Any decision by the Swedish courts therefore is irrelevant to Kazakhstan's present claims, which are all brought under U.S. law. *Id.* ¶¶ 252, 277-79, 285-87, 293-94, 298-99.

At bottom, claim preclusion "is designed to limit a plaintiff to one bite at the apple, not to prevent even that single bite." *Hurd v. D.C., Gov't*, 864 F.3d 671, 679 (D.C. Cir. 2017). Here, the Stati Parties' res judicata arguments must be rejected because they would in fact prevent Kazakhstan from taking its "single bite" of the apple, i.e., the adjudication of its U.S. law claims that arise from the Stati Parties' illegal and fraudulent scheme.

## VII.   There Is No Basis for Dismissal with Prejudice

Even if the Court were to find that the Complaint insufficiently pleaded any given cause of action, which it does not, Kazakhstan should be given the opportunity to replead. *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (recognizing that courts almost always grant leave to amend to cure deficiencies in pleading fraud). "[O]utright dismissal should generally be reserved for extreme situations where the pleader has had the opportunity to cure any deficiencies but either has not or cannot do so." *Shields v. Washington Bancorporation*, CIV. A. 90-1101(RCL), 1992 WL 88004, at *5 (D.D.C. Apr. 7, 1992). This is not such a case.

## CONCLUSION

WHEREFORE, Kazakhstan respectfully requests that the Court deny the Stati Parties' Motion to Dismiss.

Respectfully  Submitted,

/s/ Mathew H. Kirtland
Matthew H. Kirtland  (D.C. Bar No. 456006)
Katie Connolly  (D.C. Bar No. 1048518)
NORTON ROSE FULBRIGHT  US LLP
799 9th St. NW, Suite  1000
Washington,  D.C. 20001
Telephone:  (202) 662-0200
Facsimile:  (202) 662-4643
matthew.kirtland@nortonrosefulbright.com
katie.connolly@nortonrsosefulbright.com

Kelly Klingseisen  (admitted  *pro hac vice*)
NORTON ROSE FULBRIGHT  US LLP
98 San Jacinto Blvd,  Suite 1100
Austin,  Texas 78701
Telephone:  (512) 536-5260
Facsimile:  (512) 536-4598
kelly.klingseisen@nortonrosefulbright.com

*Counsel for Plaintiff Republic  of Kazakhstan*

May 25, 2018

## CERTIFICATE OF SERVICE

I hereby certify that, on May 25, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

*/s/ Mathew H. Kirtland*
*Counsel for Plaintiff*