## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REPUBLIC OF KAZAKHSTAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANATOLIE STATI, GABRIEL STATI, | )  Civil Action No. 17-cv-02067-ABJ |
| ASCOM GROUP, S.A., AND TERRA RAF | ) |
| TRANS TRAIDING LTD., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

James E. Berger (DC Bar No. 481408)
Charlene C. Sun (DC Bar No. 1027854)
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY  10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
csun@kslaw.com

Taylor T. Lankford (DC Bar No. 1002758)
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W., Ste. 200
Washington, DC  20006
Tel: (202) 737-0500
Fax: (212) 626-3737
tlankford@kslaw.com

*Counsel for Defendants*

June 11, 2018

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT AND AUTHORITIES ............................................................................. 1

    A.  Judicial Estoppel Does Not Bar Defendants' Arguments ...................................... 1

    B.  Failure to State a RICO Claim .............................................................................. 4

        1.  ROK Fails To Adequately Allege Racketeering Activity ........................... 4

        2.  ROK Fails To Adequately Allege A Pattern of Racketeering Activity ...... 8

        3.  ROK Impermissibly Seeks To Apply RICO To Conduct That Is Overwhelmingly Extraterritorial ................................................................ 13

        4.  ROK Fails To Allege A Domestic Injury ................................................. 15

        5.  The ROK Fails To Allege The Predicate Acts Are The "But For" Or Proximate Cause Of Its Alleged Injuries. ................................................. 18

    C.  The ROK Fails To State A Claim As To RICO Conspiracy ............................... 19

    D.  The ROK's Fraud Claims Must Be Dismissed ................................................... 19

        1.  The ROK Does Not Plead Fraud With Specificity ................................... 19

        2.  The ROK's Fraud Claims Regarding The U.S. Enforcement Actions Doe Not Satisfy The Elements of Fraud ......................................................... 22

    E.  Comity Principles Require Deference To the Swedish Courts And Claim Preclusion Bars The ROK's Claims ................................................................... 23

III. CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Singh*,
480 F.3d 351 (5th Cir. 2007) ...............................................................12

*Akishev v. Kapustin*,
No. 13-7152(NLH)(AMD), 2016 WL 7165714 (D.N.J. Dec. 8, 2016)...........................16, 17

*Alford v. Providence Hosp.*,
60 F. Supp. 3d 118 (D.D.C. 2014) ........................................................25

*Am. Special Risk Ins. v. Greyhound*,
No. 90 Civ. 2066 (RPP), 1996 U.S. Dist. Lexis 14231 (S.D.N.Y. Sept. 26, 1996) ................................................................................12

*Armada (Sing.) PTE Ltd. v. Amcol Int'l Corp.*,
No. 17-2324, 2018 WL 1464556 (7th Cir. Mar. 26, 2018)...................16

*W. Assocs. Ltd. P'ship, ex rel. Ave. Assoc. Ltd. P'ship v. Mkt. Square Assocs.*,
235 F.3d 629 (D.C. Cir. 2001) ...........................................................8, 9

*Bascunan v. Elsaca*,
874 F.3d 806 (2d Cir. 2017).......................................................15, 16, 17

*Brown v. M St. Five, LLC*,
56 A.3d 765 (D.C. 2012) .......................................................................3

*Burger v. Kuimelis*,
325 F. Supp. 2d 1026 (N.D. Cal. 2004) ...............................................17

*Busby v. Capital One, N.A.*,
772 F. Supp. 2d 268 (D.D.C. 2011)...................................9, 10, 13, 20

*Casares v. Wells Fargo Bank, N.A.*,
268 F. Supp. 3d 248 (D.D.C. 2017) ......................................................24

*Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*,
245 F. Supp. 3d 650 (D.N.J. 2017) .........................................15, 17, 18

*Cheeks v. Fort Myer Constr. Corp.*,
216 F. Supp. 3d 146 (D.D.C. 2016) ......................................................19

*Choimbol v. Fairfield Resorts, Inc.*,
428 F. Supp. 2d 437 (E.D. Va. 2006) .....................................................7

*Comcast Corp. v. FCC*,
  600 F.3d 642 (D.C. Cir. 2010) ........................................................................2

*Daedalus Capital LLC v. Vinecombe*,
  625 F. App'x 973 (11th Cir. 2015) ...............................................................11

*E. Savs. Bank v. Papageorge*,
  31 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015)..............................19

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
  48 F.3d 1260 (D.C. Cir. 1995)......................................................................9, 10

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*,
  246 F. Supp. 3d 52 (D.D.C. 2017) ................................................................22

*Exeed Indus., LLC v. Younis*,
  No. 15 C 14, 2016 WL 6599949 (N.D. Ill. Nov. 8, 2016) .......................................18

*Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*,
  873 F. Supp. 2d 288 (D.D.C. 2012) .............................................................4, 5

*Firestone v. Firestone*,
  76 F. 3d 1205 (D.C. Circuit 1996) ................................................................23

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002)..........................................................22

*Gen. Cigar Co., Inc. v. CR Carriers, Inc.*,
  948 F. Supp. 1030 (M.D. Ala. 1996) ...........................................................7

*Golden v. Nadler, Pritikin & Mirabelli, LLC*,
  No, 05 C 0283, 2005 WL 2897397 (N.D. Ill Nov. 1, 2005)..............................10, 11

*Hall Am. Ctr. Assocs. L.P. v. Dick*,
  726 F. Supp. 1083 (E.D. Mich. 1989).........................................................6

*Henry v. Farmer City State Bank*,
  808 F.2d 1228 (7th Cir. 1986) ....................................................................25

*Himmelstein v. Comcast of the Dist., L.L.C.*,
  908 F. Supp. 2d 49 (D.D.C. 2012) ..............................................................22

*U.S., ex. rel. Hood v. Satory Glob., Inc.*,
  946 F. Supp. 2d 69 (D.D.C. 2013) ..............................................................21

*Hurst v. Socialist People's Libyan Arab Jamahiriya*,
  474 F. Supp. 2d 19 (D.D.C. 2007) ..............................................................24

*Kowal v. MCI Commc'ns Corp.*,
  16 F. 3d 1271 (D.C. Cir. 1994) ........................................................................21

*Lary v. Ansari*,
  817 F.2d 1521 (11th Cir. 1987) ......................................................................25

*Lattisaw v. D.C.*,
  118 F. Supp. 3d 142 (D.D.C. 2015) .................................................................22

*Lefkowitz v. Reissman*,
  No. 12 CIV. 8703 RA, 2014 WL 925410 (S.D.N.Y. Mar. 7, 2014).........................7

*Lemelson v. Wang Labs. Inc.*,
  874 F. Supp. 430 (D. Mass. 1994) ...................................................................6

*U.S., ex. rel. McCready v. Columbia/HCA Healthcare Corp.*,
  251 F. Supp. 2d 114 (D.D.C. 2003) .................................................................21

*Moses v. Howard Univ. Hosp.*,
  606 F.3d 789 (D.C. Cir. 2010) .......................................................................2, 3

*N.H. v. Me.*,
  532 U.S. 742, 121 S. Ct. 1808 (2001) ..............................................................1

*Phrasavang v. Deutsche Bank*,
  656 F. Supp. 2d 196 (D.D.C. 2009) .................................................................19

*RJR Nabisco, Inc. v. European Cmty.*,
  136, S.Ct. 2090 (2016) .....................................................................11, 15, 17

*Roe v. Bernabei & Wachtel PLLC*,
  85 F. Supp. 3d 89 (D.D.C. 2015) .....................................................................9

*Tatung Co., Ltd. v. Shu Tze Hsu*,
  217 F. Supp. 3d 1138 (C.D. Cal. 2016) ......................................................17, 18

*U.S. v. All Assets Held at Bank Julius*,
  251 F. Supp. 3d 82 (D.D.C. 2017) ..................................................................14

*U.S. v. Eisen*,
  974 F.2d 246 (2d Cir. 1992)............................................................................6

*U.S. v. Phillip Morris*,
  566 F.3d 1095 (D.C. Cir. 2009) ......................................................................13

*U.S. v. Richardson*,
  167 F.3d 621 (D.C. Cir. 1999) .......................................................................13

*U.S. v. Wilson*,
   605 F.3d 985 (D.C. Cir. 2010) ..................................................................................11, 12, 13

*Viacom, Inc. v. Harbridge Merch. Servs.*,
   20 F.3d 771 (7th Cir. 1994) ................................................................................................10

*U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*,
   389 F. 3d 1251 (D.C. Cir. 2004) .........................................................................................20

*Winmar Constr., Inc. v. Kasemir*,
   233 F. Supp. 3d 53 (D.D.C. 2017) ....................................................................................2, 3

**Statutes**

28 U.S.C. § 1782.....................................................................................................................22

18 U.S.C. § 1956..................................................................................................................7, 8

18 U.S. Code § 1962..............................................................................................................19

**Other Authorities**

Fed. R. Civ. P. 9(b) ..........................................................................................................20, 21

Defendants Anatolie Stati, Gabriel Stati (collectively, the "Statis"), Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (together with the Statis, the "Defendants"), respectfully submit this reply in support of their motion to dismiss the Complaint.

## I.     INTRODUCTION

The Republic of Kazakhstan's (the "ROK") Opposition to Defendants' Motion to Dismiss the Complaint (the "Opposition" or "Opp.") does little to address any of the reasons Defendants have provided for dismissing the Complaint.  Its lead argument—that Defendants are "judicially estopped" from seeking to dismiss the complaint—fails even on its own terms, and appears to be more of an effort to call the Court's attention, yet again, to the London Enforcement Proceedings, than a serious argument against dismissal.  With no real explanations for the fatal flaws in its Complaint, the ROK resorts to misconstruing Defendants' arguments and trying to bolster its RICO claims with unrelated allegations in the Complaint.  As outlined in Defendants' memorandum in support of their Motion to Dismiss (ECF No. 19-1, the "Brief"), the Complaint should be dismissed with prejudice.

## II.    ARGUMENT AND AUTHORITIES

### A.     Judicial Estoppel Does Not Bar Defendants' Arguments

The ROK's lead argument in opposition to the Motion to Dismiss is wholly meritless. Under the doctrine of judicial estoppel, "'[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'"  *N.H. v. Me.*, 532 U.S. 742, 749 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).  The doctrine is discretionary and not reducible to a single formulation, but courts general consider three factors:

> (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

*Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) (citing *New Hampshire*, 532 U.S. at 750-51).  The law in this Circuit provides further that "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency."  *Winmar Constr., Inc. v. Kasemir*, 233 F. Supp. 3d 53, 58–59 (D.D.C. 2017) (*citing New Hampshire*, 532 U.S. at 753; *Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010).

The ROK misleadingly cites a single sentence in Justice Knowles' May 11, 2018 opinion in *Stati v. Republic of Kazakhstan*, No. 14-70 (High Court of Justice, London) (the "London Enforcement Proceedings"), ECF No. 26-1, to suggest that Defendants have taken "inconsistent positions" about whether this RICO action should be dismissed.  In the cited sentence, Justice Knowles summarizes statements by Defendants' counsel during a hearing as follows: "[t]he Statis say that that fraud claim [this U.S. RICO action] will consider every aspect of the fraud alleged in the proceedings here, and more, and after a trial involving full disclosure and oral evidence."  *Id*. ECF 26-1 at ¶ 28.  Inexplicably, the ROK omits any reference to the next paragraph in which Justice Knowles stated that Defendants' counsel in the London Enforcement Proceedings "**was, understandably, not in a position to say that [a jurisdiction challenge] would not happen**."  *Id*. at ¶ 29 (emphasis supplied).  Justice Knowles further concluded "I certainly cannot assume there will be a trial in the United States to which the Statis refer."  *Id*.

Applied to these facts, none of the *Moses* factors supports judicial estoppel.[1]   With respect to the first factor (whether a party's later position is clearly inconsistent with its earlier position), there is no evidence that Defendants have taken an inconsistent position.   The Judgment clearly states that Defendants' counsel in the London Enforcement Proceedings "was, understandably, not in a position to say that [a jurisdiction challenge in this case] would not happen."   ECF 26-1 at ¶ 29.   Thus, Defendants simply did not represent to the UK court that it did not intend to challenge the ROK's Complaint or that a trial would definitely take place.   At best, Justice Knowles' paraphrase of the statement by Defendants' counsel is ambiguous and, as noted above, "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency."   *Winmar*, 233 F. Supp. 3d at 58–59 (citations omitted).

With respect to the second factor (whether the party succeeded in persuading a court to accept that party's earlier position), there is no question that Justice Knowles did not accept there would be a trial in this action.   Not only did he conclude "I certainly cannot assume there will be a trial in the United States [on the RICO claims]," (ECF 26-1 at ¶29), he also, rather than dismissing the London Enforcement Proceedings, as Defendants requested, ordered that the fraud claims proceed in the London Enforcement Proceedings.   ECF 26-1.

With respect to the third and final factor (whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped), Defendants have gained **no advantage** and the ROK has suffered **no detriment** based on the representations in question.   The ROK got exactly what it

---

[1]   As a threshold matter, although the doctrine of judicial estoppel applies broadly to an inconsistent position taken "in a pleading, in a deposition, or in testimony" (*e.g., Brown v. M St. Five*, LLC, 56 A.3d 765, 780 (D.C. 2012)), the ROK has cited no cases that it would apply to statements by counsel in a hearing about what may happen in another court in the future.

requested from Justice Knowles—the ability to proceed with its fraud claims—and its representations to the contrary strain credulity.  Like the rest of its claims, the ROK's judicial estoppel arguments do not withstand scrutiny.

**B.      Failure to State a RICO Claim**

The ROK's Opposition does nothing to salvage its RICO claim, which suffers from serious defects including (1) a failure to adequately allege predicate acts; (2) a failure to allege a pattern of racketeering activity; (3) impermissibly seeking to apply RICO to conduct that is overwhelmingly extraterritorial; (4) a failure to allege a domestic injury; and (5) a failure to allege predicate acts that are the but for or proximate cause of its injuries.

**1.      ROK Fails To Adequately Allege Racketeering Activity**

Because the only predicate acts alleged in the Complaint are litigation activities (the mail and wire fraud allegations—*see* Compl. at ¶¶ 263, 167, 168, 191, 192, 204, 205, 179, 180, 249, 250, 229, 230) and payments to counsel in connection with those litigation activities (the money laundering allegations—*see* Compl. at ¶¶ 274, 169, 193, 226, 206, 181, 251, 231, 247), the ROK has not adequately alleged any "racketeering" that is actionable under the RICO statute.

The ROK's mail and wire fraud allegations are not by themselves a sufficient basis for a RICO claim.  The ROK attempts to rebut Defendants' arguments by flatly misrepresenting what Defendants' Brief states—a recurring tactic employed by the ROK.  To that end, the ROK claims that Defendants have "incorrectly" stated that litigation activities cannot be predicate acts.  Opp. at 9.  In fact, Defendants plainly state the correct rule in their Brief—litigation activities that constitute the only fraudulent conduct cannot serve as the basis for a RICO claim.  Brief at 12. "[S]ome other pattern of 'racketeering activity'" or "additional allegations of extortion" beyond "litigation misconduct" is required to state a RICO claim.  *See, e.g., Feld Entm't Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318-19 (D.D.C. 2012).

First, the ROK argues that the mail and wire fraud allegations are sufficient predicate acts to state a RICO claim because the "entire lawsuit is based on a fraudulent scheme." The ROK relies on *Feld Entertainment* to support its argument. *Feld Entertainment*, however, provides that "some other pattern of 'racketeering activity'" beyond mail and wire fraud in the form of alleged "litigation misconduct" is required to state a RICO claim. *Feld Entm't*, 873 F. Supp. 2d at 318-19. In *Feld Entertainment*, the court found such racketeering activity because, in addition to alleged mail and wire fraud related to litigation activity, the plaintiff pleaded predicate acts of money laundering, bribery, and obstruction. *Id*. at 319. In this action, the ROK has not alleged bribery or obstruction. With respect to money laundering, in *Feld Entertainment*, the alleged money laundering involved the mischaracterization of bribes paid by the defendant to a former employee of the plaintiff to influence the employee to join in a lawsuit against the plaintiff. *Id*. at 319, 300. It did not involve paying counsel for serving as the defendant's attorney.

Second, the ROK argues that the litigation activities that form the basis of its mail and wire fraud claims are sufficient because it also alleged money laundering in the form of payments by Defendants to their counsel in connection with the litigation activities. None of the cases the ROK cites, however, support that argument. The ROK has also not identified a single case in any jurisdiction in which a court upheld RICO allegations where the only alleged predicate acts were mail and wire fraud related to litigation activities, and "money laundering" in the form of payments to counsel in connection with those litigation activities (and certainly no cases in which the litigation activities consisted of actions to enforce judgments that had (a) been rendered by the RICO forum court (*i.e*., this Court's judgment), and/or (b) had been affirmed on appeal (the Svea Court of Appeal judgment)).

The cases that the ROK does rely upon are inapposite. In *U.S. v. Eisen*, 974 F.2d 246, 251 (2d Cir. 1992), the criminal action involved bribery in addition to mail fraud. As noted, the ROK has not alleged any bribery. In *Hall Am. Ctr. Assocs. L.P. v. Dick*, 726 F. Supp. 1083 (E.D. Mich. 1989), the court actually ruled that it would dismiss the RICO claim unless the plaintiffs cured certain defects. *Id*. at 1091. The court also specifically found the mail and wire fraud allegations for certain litigation activities to be insufficient to establish predicate acts (*id*. at 1093) and only found that the RICO count might possibly go forward (if certain deficiencies were remedied) on alleged violations of extortion and attempted extortion (*id*.), predicate acts that have not been alleged in this action. Moreover, the alleged predicate acts included, among other things, "interference with the Joint Venture," and "other harassment of third persons involved with the Property." *Id*. at 1097. Finally, in *Lemelson v. Wang Labs. Inc.*, 874 F. Supp. 430, (D. Mass. 1994), in addition to mail and wire fraud allegations, the counterclaiming defendant also alleged extortion. *Id*. at 434. None of these cases support the ROK's argument that litigation activities are sufficient predicate acts so long as payments by the defendant to counsel in connection with those litigation activities is also alleged as a predicate act.

In an effort to find some other predicate act to manufacture a RICO claim, the ROK alleges that Defendants' payments to their counsel constitute "money laundering." *See* Opp. at 11. However, if these allegations were sufficient to state a RICO claim, almost **any** litigation involving a foreign litigant represented by a U.S. law firm would give rise to a RICO claim. It is a preposterous theory that enjoys no support in RICO jurisprudence.

With respect to the alleged money laundering under 18 U.S.C. § 1956(a)(2)(A), as the ROK acknowledges, that section prohibits the transportation or transmission of money into or outside the United States when done "with the intent to promote the carrying on of **specified**

**unlawful activity**." *Id*. (emphasis added).  The ROK argues that the Complaint properly alleges money laundering under section 1956(a)(2)(A) because the litigation activities that form the basis of its mail and wire fraud claims are the "specified unlawful activity"[2] and the payments to Defendants' counsel serve to carry on that "fraudulent scheme."  Opp. at 12.  As noted in the Brief, because the litigation activities alleged in the Complaint are not "unlawful activity," and the ROK has not alleged any other "specified unlawful activity" as defined in section 1956(c)(7), the ROK simply does not satisfy the basic elements of section 1956(a)(2)(A).  *See Lefkowitz v. Reissman*, No. 12 CIV. 8703, 2014 WL 925410, at \*6 (S.D.N.Y. Mar. 7, 2014) (finding no wire fraud under section 1956(a)(2)(A) because the "Plaintiff [did] not allege[] any facts from which the Court may infer that Defendants intended to commit mail or wire fraud").  The ROK also cites *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437 (E.D. Va. 2006), but *Choimbol* does not support its argument.  In *Choimbol*, plaintiffs alleged that the defendant engaged in money laundering and mail and wire fraud by making out fraudulent paychecks that miscalculated time rates and then mailing them.  *Id*. at 443-44.  It did not address payments to defendant's counsel for representing it in litigation.[3]

    With respect to the alleged money laundering under 18 U.S.C. § 1956(a)(2)(B)(i), the ROK argues it has properly stated a claim because it alleges that Defendants fraudulently raised proceeds in the United States.  First, the ROK does not allege that those funds were used to pay any of the Defendants' legal fees.  *See, e.g.*, Compl. at ¶ 274.  Second, the Complaint does not

---

2   Following the maxim of an experienced propagandist that "one should accuse the other side of that which one is guilty," the ROK admonishes Defendants for employing "circular logic." Opp. at 13.  Any circular logic lies in the ROK's flawed arguments.

3   The ROK also cites *Gen. Cigar Co., Inc. v. CR Carriers, Inc.*, 948 F. Supp. 1030, 1039 (M.D. Ala. 1996) for the proposition that a RICO claim may state money laundering and mail fraud claims arising from the same scheme.  That is wholly irrelevant.  The flaw in the ROK's 1956(a)(2)(A) money laundering claim is that it has alleged no "specified unlawful activity."

contain any allegation that alleged fundraising violated any applicable law such that the funds could be considered to be the proceeds of "specified unlawful activity" as required by section 1956(a)(2)(B)(i).

The fact is that every single predicate act alleged in the Complaint relates to some litigation activity by Defendants or their payments to counsel in connection with the litigation activities.  These are not RICO predicate acts.

### 2.       ROK Fails To Adequately Allege A Pattern of Racketeering Activity

The ROK also fails to allege a "pattern" of racketeering activity sufficient to state a claim for relief under RICO.  As outlined in the Brief (at 16-20), application of the D.C. Circuit's multifactor analysis reveals that the Complaint does not allege a pattern of racketeering.  The ROK's primary argument is that the Court should ignore the multifactor analysis because it is not a *per se* rule.  Opp. at 20.  While the multifactor analysis is not a *per se* rule, and Defendants never argued that it was (*see* Brief at 17), the D.C. Circuit has instructed that "a court should consider" the six factors, even though it has cautioned that they should not be applied in a "rigid or formulaic" manner.  *W. Assocs. Ltd. P'ship, ex rel. Ave. Assoc. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 633, 637 (D.C. Cir. 2001).

With respect to the first three factors—the number of unlawful acts, the length of time over which the acts were committed, and the similarity of the acts—the ROK argues that these demonstrate a pattern because the Complaint alleges "68 different predicate offenses extending continually over a seven-year period."  Opp. at 20.  This argument, however, ignores the "similarity of the acts" factor.  As discussed in the Brief (at 18), the alleged predicates all relate to the repetition of the same fact in legal papers (and failure to confess the alleged falsity of the fact in later papers) and payments to counsel in connection with the proceedings in which the

facts were asserted.  That is not indicative of a "pattern of racketeering activity."  *See W. Assocs.*, 235 F.3d at 633; *Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 281-82 (D.D.C. 2011).

With respect to the fourth and fifth factors—the number of victims and the number of perpetrators—the ROK first argues it is not the only victim, but rather, "the U.S. and non-U.S. investors, KazMunaiGas, the other bidders for the Stati Parties [sic] assets, [and] the auditors of the Stati Parties' companies" are also victims.  Opp. at 21.  None of those other individuals and entities, however, are alleged in the Complaint to be "victims" of the litigation activities and payments to Defendants' counsel that form the basis for the alleged predicate acts.  *See* Compl. at ¶ 258.[4]  The ROK similarly argues that there are perpetrators other than the Defendants including "Tristan Oil Ltd., other Stati Companies[, and] Perkwood Investment Limited."  None of those other entities is alleged in the Complaint to have engaged in any of the litigation activities or payments to counsel that are the subject of the ROK's RICO claims.  Compl. at ¶¶ 263, 167, 168, 191, 192, 204, 205, 179, 180, 249, 250, 229, 230, 274, 169, 193, 226, 206, 181, 251, 231, 247.  Rather, the only alleged victim of the alleged predicate acts is the ROK, and the only alleged perpetrators are the Defendants.  Thus, the fourth and fifth factors weigh against finding a pattern.  *See Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F. 3d 1260, 1265 (D.C. Cir. 1995); *Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 101 (D.D.C. 2015).

With respect to the sixth factor—the character of the unlawful activity—the ROK argues it has alleged a pattern because "[t]he Stati Parties' criminal enterprise is vast. . ." and a pattern may exist even though there is a single scheme.  Opp. at 21.  The allegations in the Complaint do not support the ROK's conclusory statement that Defendants' "criminal enterprise is vast."

---

4   *See Busby*, 772 F. Supp. 2d at 282 ("Although the plaintiff states in a conclusory fashion that other D.C. homeowners have been similarly victimized by the defendants, the plaintiff has identified no similar actions taken by the defendants against any other homeowners.").

Rather, the Complaint only alleges activity with respect to the LPG Plant and Defendants' efforts to enforce the arbitral award (the "Award") they received when the ROK seized the LPG Plant. Although a pattern may exist even though there is a single scheme, the fact that the Complaint alleges a single scheme related to a single dispute weighs against finding a pattern.  *See generally Golden v. Nadler, Pritikin & Mirabelli, LLC*, No, 05 C 0283, 2005 WL 2897397 at *7 (N.D. Ill Nov. 1, 2005).

In lieu of applying the multifactor test, the ROK also argues that the Court should find it has alleged a pattern of racketeering activity because it has alleged both "open-ended" and "closed-ended" continuity.  Opp. at 14-19.  To plead a pattern, "the plaintiff must establish that the **predicate acts** 'are related, and that they amount to pose a threat to **continued criminal activity**.'"  *Busby*, 772 F. Supp. 2d at 281-82 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)) (emphasis added); *see also Viacom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 779 (7th Cir. 1994) (cited by the ROK in its Opposition).  Open-ended continuity exists when there is "past conduct that by its nature projects into the future with a threat of repetition," and requires "far more than a hypothetical possibility of further predicate acts."  *Edmondson,* 48 F.3d at 1264.  Closed-ended continuity exists when there is "a closed period of repeated conduct."  *Id.*

With respect to its "open-ended" continuity argument, the ROK first claims to have alleged open-ended continuity because "[t]he conduct complained of in the Complaint continued long beyond the artificial inflation of the construction costs of the LPG Plant, and the fraudulent procurement of the SCC Award, to the various enforcement proceedings that are ongoing."  *Id*. As an initial matter, this argument misconstrues the basic elements of a RICO claim.  As outlined above, the pattern requirement applies to **predicate acts**.  Predicate acts are "any act which is 'indictable'" under an exclusive list of federal criminal offenses, as well as certain crimes that

are "chargeable" under state law.  *See RJR Nabisco, Inc. v. European Cmty.*, 136, S.Ct. 2090, 2096-97 (2016).  The ROK cites alleged "artificial inflation of the construction costs of the LPG Plant" as part of the ongoing criminal activity (Opp. at 15) that the Court may consider in evaluating whether a pattern exists, but the alleged inflation of the construction costs of the LPG Plant is not alleged as a predicate act and is not part of the ROK's RICO claim.  The only predicate acts alleged are litigation activities and payments to Defendants' counsel in connection with those activities.  *See* Appendix A to Defendants' Motion to Dismiss ("Appendix A"), ECF 19-2 (listing all alleged predicate acts).  Second, the ROK argues it has alleged open-ended continuity because "what occurred was the enterprise's 'regular way of doing business.'"  Opp. at p. 15 (citing *H.J.*, 492 U.S. at 242).

Both of these arguments fail for a variety of reasons, including that although the alleged predicates span several years, the litigation activities all deal with the repetition of the same fact in various litigation filings and/or the failure to confess the alleged falsity of prior statements in later proceedings to recognize the arbitration award.  Compl. at ¶¶ 263-273; 274-78.  Moreover, because the alleged RICO activity all deals with litigation to enforce an arbitration award, and payments to counsel in connection with the litigation activity, there is a logical stopping point – enforcement and collection of the Award – and no threat of future repetition.  *See Golden v. Nadler, Pritikin & Mirabelli, LLC*, No, 05 C 0283, 2005 WL 2897397 at *7 (N.D. Ill. Nov. 1, 2005); *Daedalus Capital LLC v. Vinecombe*, 625 F. App'x 973, 976–77 (11th Cir. 2015).

The cases that the ROK cites in its Opposition are inapposite as they deal with widespread criminal conduct with no natural stopping point.  Their lead case is *U.S. v. Wilson*, 605 F.3d 985 (D.C. Cir. 2010), which dealt with the operation of "a massive drug ring" that sold PCP, ecstasy, and some crack cocaine, and involved the purchase of at least 15 to 20 gallons of

PCP between 2002 and 2004.  *Id*. at 997.  It is unsurprising that the D.C. Circuit found the multitude of alleged criminal RICO predicate acts, when paired with a statement from the group's leader during a wiretap (*id*. at 998) that "[n]othing will stop this money train!" (*id*. at 1021), constituted a pattern and suggested likely repetition in the future.  *Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007), another case cited by the ROK, dealt with a scam enterprise involving a purported steel manufacturing company.  *Id*. at 353-54.  The scam involved inducing non-citizens to immigrate to the United States by promising them non-existent steel manufacturing jobs, only to "farm[]" them out for manual labor, house them in poor conditions, threaten, and otherwise take advantage of them in a scheme that involved alleged racketeering acts of money laundering, peonage, visa fraud, immigration violations, Travel Act violations, and Hobbs Act extortion.  *Id*.  The whole business was a scheme that involved numerous RICO violations, and there was no reason to believe that it would have stopped if the lawsuit was not filed.  *Id*. at 356. *Am. Special Risk Ins. v. Greyhound*, 1996 U.S. Dist. Lexis 14231 (S.D.N.Y. Sept. 26, 1996),  is equally inapplicable.  The RICO claim was actually dismissed (*id*. at *251), and dealt with alleged bribery, which was likely to continue because the goal of the scheme was to "avoid reporting significant losses in [Greyhound's] insurance business in its consolidated financial reports," and had no logical endpoint.  *Id*. at *1-2.

With respect to the ROK's closed-ended continuity argument, the ROK, once again, creates a strawman to attack by misstating Defendants' arguments.  Defendants have not argued that predicate acts may only form a pattern when they are part of "separate illegal schemes." Opp. at 17.  Rather, as detailed in the Brief (at 16-20), the Complaint fails to plead closed-ended continuity because it does not satisfy the D.C. multifactor test, and there is no threat of "continued criminal activity."  *See Busby*, 772 F. Supp. 2d at 281-82; Opp. at 14 ("[T]o prove a

pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.") (emphasis and alteration in original) (citing *H.J.*, 492 U.S. at 239).

The cases that the ROK relies upon do not dictate a different result than the D.C. multifactor test, and although the plaintiffs in those cases alleged past acts, the schemes all involve a threat of "continued criminal activity."  For example, *Wilson*, also the ROK's lead case for its closed-ended continuity argument, dealt with a "massive drug ring," a variety of federal and RICO crimes over an extended time period, and statements by the drug ring leader, that the drug ring would continue.  *Wilson*, 605 F.3d at 997-98, 1021; *see also U.S. v. Phillip Morris*, 566 F.3d 1095, 1105-06 (D.C. Cir. 2009) (scheme involving "a decades-long conspiracy to deceive the American public about the health effects and addictiveness of smoking cigarettes."); *U.S. v. Richardson*, 167 F.3d 621, 626 (D.C. Cir. 1999) (noting in case involving armed robbery ring that "the sheer number of serious crimes, 'which victimized dozens of persons and led to five deaths during the course of one summer, with no abatement of activity in sight,' made the 'threat of future criminality . . . palpable.'").[5]

In short, ROK's RICO claims should be dismissed for failure to plausibly allege facts sufficient to show a pattern, as required to state a claim for RICO.

### 3.     ROK Impermissibly Seeks To Apply RICO To Conduct That Is Overwhelmingly Extraterritorial

---

[5]   Moreover, the ROK continues to claim that the pattern racketeering activity includes acts that are not alleged to be RICO violations.  For example, the ROK states that Defendants' efforts to raise funds in the United States are part of the pattern of racketeering activity, but that activity is not an alleged RICO violation.  *See* Opp. at 17-18 ("[T]he Stati Parties' racketeering activity was not limited to a single transaction but rather was a wide-ranging scheme that involved, at minimum, that Stati Parties fraudulently obtaining funds in the United States and elsewhere. . .");  Appendix A, ECF 19-2 (listing all alleged predicate acts).

The ROK's mail and wire fraud allegations in Count I must also be dismissed because ROK impermissibly seeks to apply RICO to conduct that is overwhelmingly extraterritorial. Under *Bank Julius*, "a complaint alleges a domestic application of wire fraud when (1) a defendant or coconspirator commits a substantial amount of conduct in the United States, (2) the conduct is integral to the commission of the scheme to defraud, and (3) at least some of the conduct involves the use of U.S. wires in furtherance of the scheme to defraud." *U.S. v. All Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 103 (D.D.C. 2017).

With respect to the first factor, the ROK argues that "a substantial amount" of the alleged scheme occurred in the United States. Opp. at 23. In fact, as detailed in the Brief, the majority took place outside the United States. Brief at 24; Compl. at ¶¶ 135-169, 182-193, 207-226, 234-240, 241, 242-247. Moreover, as the ROK acknowledges, Defendants challenge only the extraterritorial application of the mail and wire fraud statutes and not the extraterritorial application of the money laundering statute. Opp. at 22. Accordingly, with regard to this argument, the ROK's money laundering allegations are irrelevant. Yet, in its Opposition, the ROK relies on the alleged fundraising in the United States as a basis for rebutting Defendants' arguments concerning the ROK's mail and wire fraud allegations. Opp. at 23. The fundraising, however, has nothing to do with the ROK's mail and wire fraud allegations, which address communications with counsel in connection with various litigation activities. Compl. at ¶¶ 263, 167, 168, 191, 192, 204, 205, 179, 180, 249, 250, 229, 230.

With respect to the second factor, none of the conduct alleged to have occurred in the United States is integral to the scheme to defraud. Everything is derivative of the proceedings in Sweden (the SCC Arbitration Proceeding and the Swedish Annulment Proceedings) that resulted in the Award. Compl. at ¶¶ 194-251. In response, the ROK argues that the "core" mail and wire

fraud allegations include "raising funds in the U.S., artificially inflating the LPG Plant construction costs, and obtaining bids based on falsified financial documents," but those allegations have nothing to do with the mail and wire fraud claims, which address submissions to the arbitral tribunal and courts, and communications with counsel in connection with various litigation activities to obtain and enforce the Award.  Compl. at ¶¶ 263, 167, 168, 191, 192, 204, 205, 179, 180, 249, 250, 229, 230.  The ROK also retorts that "the Stati Parties' reliance on U.S. counsel and U.S. experts was vital to their victory in the SCC Arbitration," citing paragraphs 139 and 158 in the Complaint.  Opp. at 24.  Paragraph 139 of the Complaint, however, merely states who represented Defendants in the SCC Arbitration and paragraph 158 of the Complaint states the amount of the Award.  These paragraphs and the other paragraphs in the Complaint do not allege that Defendants' U.S. counsel or experts were vital to the foreign litigation and Award.  Accordingly, the ROK offers no legitimate explanation for how its mail and wire fraud claims do not target conduct that is overwhelmingly extraterritorial.

### 4.    ROK Fails To Allege A Domestic Injury

Count I must also be dismissed under *RJR*, which requires a private RICO plaintiff to "allege and prove a *domestic* injury to its business or property."  *RJR*, 136 S. Ct. at 2106 (emphasis in original).  Although *RJR* and D.C. courts have not addressed the issue of how to prove domestic injury, most courts to address the issue have "focused on where plaintiffs' injuries were felt."  *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, 245 F. Supp. 3d 650, 657-58 (D.N.J. 2017).  If the injury is to specific money, the injury is tangible and is "domestic if the plaintiff's property was located in the United States when it was stolen or harmed, even if plaintiff himself resides abroad."  *Bascunan v. Elsaca*, 874 F.3d 806, 820–21 (2d Cir. 2017).  By contrast, with respect to intangible property, "[i]t is well understood that a party experiences or

sustains injuries . . . at its residence . . ."  *Armada (Sing.) PTE Ltd. v. Amcol Int'l Corp.*, No. 17-2324, 2018 WL 1464556, at *4 (7th Cir. Mar. 26, 2018) (citations omitted).

First, the ROK argues that the alleged injuries—litigation expenses and attorneys' fees incurred in the United States (Opp. at 26 (citing Compl. at ¶ 277))—were domestic because the "money was located in the United States when it was harmed."  Opp. at 26.  In support of its argument, the ROK cites *Bascunan*.  In *Bascunan*, the court observed that "money is, of course, ultimately fungible," but found that the money in question was tangible and located in the United States because "the money allegedly stolen as a result of this  scheme was situated in a specific geographic location at the time of the injury such that we can treat it as tangible property for purposes of this inquiry."  *Bascunan*, 874 F.3d at 820.  Specifically, it involved "the misappropriation of about $3 million held in a bank account in New York, and the theft of bearer shares, worth roughly $40 million, from a safety deposit box also in New York."  *Id*. at 810.  In sharp contrast, the ROK alleges intangible injury—that it incurred legal expenses and fees in connection with litigation in the United States.  Compl. at ¶ 277.  *Akishev v. Kapustin*, No. 13-7152, 2016 WL 7165714 (D.N.J. Dec. 8, 2016), also does not address a situation analogous to the facts alleged in the Complaint.  In *Akishev*, the defendants engaged in a "bait and switch" business in which they lured people into purchasing cars from their United States business online by misrepresenting the condition of the cars as excellent, when in fact the cars were not.  *Id*. at *1.  The defendants then requested additional money for a variety of issues including shipping, storage, and replacement cars, and attempted to get the plaintiffs to cancel their orders and let the defendants retain the proceeds.  *Id*. at *1-2.  Accordingly, the injury involved the lost cars, located in the United States, that were bargained for by the defrauded customers.  Here, the ROK's obligation to pay attorneys' fees and expenses is not an injury to any specific tangible

assets like in *Bascunan* or *Akishev*, but rather could be paid from any assets the ROK possesses. The other case the ROK cites in support of its argument is wholly inapposite.  In *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1035 (N.D. Cal. 2004), the court dismissed the RICO claim and held that the complaint "does not adequately describe the damages sought by the" plaintiffs. The injuries claimed included attorneys' fees and expenses.  *Id.*  In assessing whether the RICO claims should be dismissed with prejudice, the court found that legal expenses are recoverable under RICO because they are "concrete financial losses, 'not mere injury to a valuable intangible property interest. . .'"  *Id.* at 1035. The case had nothing to do with the issue of pleading a domestic injury and was decided before *RJR* outlined the rule in 2016.  The ROK also argues that it has incurred a domestic injury because the Defendants will enforce the Award in the United States.  Opp. at 27.  The loss of assets in the United States in satisfaction of the Award, however, is not the damage alleged in the Complaint.  In addition, none of the ROK's assets in the United States have been attached or otherwise impacted by the Award.

Second, the ROK argues that this Court should follow the minority position and focus on where the conduct occurred that caused the injury.  *See Cevdet*, 245 F. Supp. 3d at 656 (citing *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (C.D. Cal. 2016).  According to the ROK, the most analogous case applying the minority rule is *Tatung*.  Opp. at 27.  In *Tatung*, the foreign plaintiff extended credit and goods to the defendant, a United States business.  *Id.* at 1156. When the defendant did not repay the plaintiff, there were arbitration proceedings and an arbitration award issued in California that was confirmed by a California court.  *Id.*  The alleged RICO conspiracy dealt with the defendants' efforts to render the defendant an empty shell.  The California court found a domestic injury and noted that the defendants had "'specifically targeted their conduct at California' with the aim of 'thwarting [plaintiff's] rights in California.'"  *Id.*  The

differences between *Tatung* and this case are stark.  In *Tatung*, the defendant was a United States business.  *Id*.  In this case, neither the plaintiff nor any of the defendants are United States businesses or citizens.  In *Tatung*, the basis for the arbitration dispute were plaintiff's extension of credit and delivery of goods to the defendant in the United States*.  Id*.  In this case, the basis for the arbitration were events that took place in Kazakhstan.  Compl. at ¶ 135-138.  In *Tatung*, the basis for the RICO conspiracy was the defendant's efforts to render itself into a shell corporation (in the United States).  *Tatung*, 217 F. Supp. 3d at 1156.  By contrast, the basis for the ROK's RICO allegations are Defendants' litigation activities in Sweden to obtain an arbitration award and subsequent activities to enforce the award.  Accordingly, the conduct that caused the ROK's injury took place almost entirely outside of the United States; application of the test outlined in *Tatung* would not, therefore, help the ROK avoid dismissal.

In any event, the ROK completely ignores Defendants' argument that the attorneys' fees and expenses in question are only the "downstream effects" of the true alleged injury—the issuance of the Award—and for purposes of determining whether the ROK has alleged an extraterritorial injury, the Court should examine whether the issuance of the Award, in Sweden, was a domestic injury.  *See* Brief at 20; *Exeed Indus., LLC v. Younis*, No. 15 C 14, 2016 WL 6599949, at *3 (N.D. Ill. Nov. 8, 2016); *Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, 245 F. Supp. 3d 650, 658 (D.N.J. 2017).  There is no question that the ultimate source of the ROK's alleged injury, the Award and Swedish proceedings affirming the Award, have no connection to the United States at all.  Because the ROK failed to respond to this argument in its Opposition, the Court may treat it as conceded.  *See Phrasavang v. Deutsche Bank*, 656 F. Supp. 2d 196, 201 (D.D.C. 2009).

### 5.    The ROK Fails To Allege The Predicate Acts Are The "But For" Or Proximate Cause Of Its Alleged Injuries.

The ROK has also failed to rebut Defendants' demonstration that Count I must be dismissed because the ROK has not alleged that the predicate acts are the "but for" or proximate cause of its injuries.  In its Opposition, the ROK does nothing to address the fact that only $199 million of the $497,685,101 Award was associated with the costs of the LPG Plant.  Compl. at ¶ 158-159.  Although the only component of the Award that the ROK alleges was affected by alleged fraud are the costs of the LPG Plant, the ROK has not alleged that "but for" the alleged wrongful conduct, the SCC Tribunal would not have ruled in Defendants' favor, nor that it would have promptly complied with the Award – thereby vitiating the need for litigation to enforce the Award – even had the Award not included the amounts to which the ROK now objects.  Accordingly, the alleged racketeering is not the "but for" or proximate cause of the U.S. Enforcement Actions and the attorneys' fees that the ROK has incurred therein.  *Cheeks v. Fort Myer Constr. Corp.*, 216 F. Supp. 3d 146, 153 (D.D.C. 2016); *E. Savs. Bank v. Papageorge*, 31 F. Supp. 3d 1, 12 (D.D.C. 2014).

### C.      The ROK Fails To State A Claim As To RICO Conspiracy

The ROK concedes that if Count I is dismissed, its Count II RICO conspiracy claim must also be dismissed.  Opp. at 30.  Because the ROK has not stated a claim under RICO Section 1962(c), its claim for RICO conspiracy under Section 1962(d) necessarily fails as well.  *E. Savs. Bank*, 31 F. Supp. 3d at 15, *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015).

### D.      The ROK's Fraud Claims Must Be Dismissed[6]

### 1.      The ROK Does Not Plead Fraud With Specificity

The ROK's fraud allegations fall short of the specificity required to provide Defendants with sufficient notice, and nothing in its Opposition overcomes that shortcoming.  The ROK's

---

6   The ROK concedes that if the RICO claims are dismissed, the fraud claims must also be dismissed.  *See* Opp. at 31.

admonition to "[r]ea[d] the Complaint as a whole" does not debunk, but indeed unmasks, its failure to plead fraud with particularity.  Opp. at 33.

First, the ROK does not identify which misrepresentations and/or omissions form the basis of its fraud claim.  In its Opposition, the ROK accuses Defendants of "a myopic reading of just the allegations in the seven paragraphs detailing the elements of Kazakhstan's cause of action for fraud" and points to "[t]he preceding 279 paragraphs [which purportedly] describe in depth the conduct of each individual defendant constituting fraud."  Opp. at 31.  But "'fraud' encompasses a wide variety of activities," and the ROK has not specified which of the activities in those 279 paragraphs form the basis of its fraud claims.  *Busby*, 772 F. Supp. 2d at 277.  Indeed, in threadbare, conclusory fashion, the Complaint only states that "Defendants knowingly misrepresented, omitted, and/or concealed material facts from Kazakhstan in multiple circumstances, as alleged above," Compl. at ¶ 289, leaving Defendants, and this Court, to divine from the lengthy, and repetitive Complaint what constitutes "those multiple circumstances."

Second, the ROK does not deny that it has alleged fraud *en bloc*.  Although complaints that "fai[l] to identify with specificity who precisely was involved in the fraudulent activity" do not satisfy Rule 9(b)'s particularity requirement, the ROK argues that it has provided Defendants sufficient notice "given the detailed allegations of the Complaint."  That is not sufficient because the ROK has not identified which of the "multiple circumstances" set out in its lengthy Complaint constitute fraud, instead leaving Defendants to surmise for themselves who amongst them committed the alleged material omissions and/or misrepresentations in unspecified "multiple circumstances."  *See U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F. 3d 1251, 1257 (D.C. Cir. 2004) (pleading fraud generally fails to give defendants sufficient information to answer the complaint).  The ROK also seeks to excuse its flawed allegations

regarding the "Stati Companies" because it has alleged that the Defendants control those companies.   Opp. at 32.   But, for example, Defendants cannot even admit, deny, or clarify the ROK's assertion regarding corporate control absent information on what companies Defendants allegedly used to commit acts of fraud.   In sum, the Complaint fails even the two-point test put forward by the ROK under *U.S., ex. rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 116 (D.D.C. 2003).   With respect to the first prong, Defendants have not "been made aware of the particular circumstances" for which they will have to prepare a defense because they do not even know what entities are alleged to have participated in the fraud.   With respect to the second prong, the ROK has not demonstrated that it has substantial pre-discovery evidence of the facts, rather stating that "[i]f discovery reveals that certain Stati Companies should be added as defendants, Plaintiff can amend its Complaint accordingly."   Opp. at 32.   As the D.C. Circuit has ruled, using vague pleading as a doorway for discovery of unknown wrongs, and, indeed, unknown defendants, should not be countenanced by this Court.   *See Kowal v. MCI Commc'ns Corp.*, 16 F. 3d 1271, 1279 n. 3 (D.C. Cir. 1994) (Rule 9(b) aims to prevent a claim from being used as a "pretext for the discovery of unknown wrongs") (citations omitted).

Third, while plaintiffs may plead fraud on information and belief when "necessary information lies within the defendant['s] control" and plaintiff has "include[d] 'a statement of the facts upon which the allegations are based,'" those circumstances are not present here.   *U.S., ex. rel. Hood v. Satory Glob., Inc.*, 946 F. Supp. 2d 69, 79 (D.D.C. 2013).   As outlined in the Brief, the ROK has not shown why each of its more than twenty-one averments on information and belief pertain to information within Defendants' control.   Even if the Court permits the ROK to supplement its deficient pleading through its Opposition, the ROK only seeks to supplement the Complaint in one "narrow circumstance" *(i.e.*, the purported false and  artificially inflated nature

of the $72,003,345.00 entry in the TNG accounting database) and does nothing to address the other "information and belief" allegations identified in Defendants' Brief (at 32-33).

### 2. The ROK's Fraud Claims Regarding The U.S. Enforcement Actions Doe Not Satisfy The Elements of Fraud

The ROK's fraud claims regarding the U.S. Enforcement Proceedings and Defendants' § 1782 Proceedings do not satisfy the elements of common law fraud in D.C., which are: (1) the defendants made a false representation; (2) in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive the plaintiff; and (5) the plaintiff acted in reasonable reliance on that representation; (6) which consequently resulted in provable damages.  *See Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 59 (D.D.C. 2012).

First, the ROK does not satisfy the fifth element of reasonable reliance.  The ROK argues that because it alleges in the Complaint that it relied on alleged misrepresentations and/or omissions, the Court must accept those allegations as true.  Opp. at 35.  Those allegations, however, are not plausible given the other allegations in the Complaint.  *See, e.g., EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 66 (D.D.C. 2017)  (noting a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); Compl. at ¶¶ 135-169, 182-193, 194-206, 227-231, 248-251, 207-226, 234-240, 241, 242-247.  Moreover, the Court is not required to accept legal conclusions couched as factual allegations as true.  *See Lattisaw v. D.C.*, 118 F. Supp. 3d 142, 150-51 (D.D.C. 2015).  The ROK also cites *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 542-43 (S.D.N.Y. 2002), to suggest reliance on affidavits is possible in the absence of a red flag.  Opp. at 35.  *G-I Holdings*, however, is inapplicable to this case, in which the ROK vigorously contested all the proceedings in question.

Second, the ROK fails to satisfy the sixth element because it has not plausibly alleged damages that resulted from the purported fraud.  The ROK argues that the alleged fraud "caused the result of the SCC Arbitration, necessitating the expenditure of considerable resources to contest the unjust SCC Award."  Opp. at 36.  The purported fraud, however, admittedly could only have impacted the value of the LPG Plant, and no other components of the Award.  As addressed in Section II(B)(5) above, the ROK has not pleaded sufficient facts to demonstrate that it would have avoided the U.S. Enforcement Actions even if the cost of the LPG Plant had not allegedly been overstated, since that was only a single component of the Award.

Third, the ROK may not recover litigation costs resulting from the U.S. Enforcement Actions.  The ROK responds that it may recover litigation costs if those costs are incurred as a result of a fraudulent scheme.  Opp. at 36.  As outlined in the previous paragraph and in Section II(B)(5) above, the ROK has not pleaded sufficient facts to demonstrate that it would have avoided litigation costs in the U.S. Enforcement Actions absent the alleged fraud.

The Court should not grant the ROK leave to amend the Complaint because the deficiencies in the ROK's fraud claim are beyond repair.  For example, the ROK could not have relied upon Defendants' purportedly fraudulent misrepresentations in the enforcement proceedings when the ROK has vigorously contested those actions.  *Firestone v. Firestone*, 76 F. 3d 1205, 1210 (D.C. Cir. 1996) (dismissal with prejudice is warranted if allegation of additional facts could not possibly cure deficiency).[7]

### E.      Comity Principles Require Deference To the Swedish Courts And Claim Preclusion Bars The ROK's Claims

The ruling by the Svea Court of Appeal bars the ROK's claims in this action.  *See* Brief at 36-41.  The ROK does not challenge the Court's ability to recognize the Svea Court of Appeal

---

[7]   The ROK concedes that if its fraud claim fails, its claim for civil conspiracy must fail as well.  *See* Opp. at 38.

judgment or argue that the judgment is defective in any manner.  Opp. at 38-39.  Rather, the

ROK argues that the Court should reject Defendants' preclusion claims because another court,

the High Court in London, already determined that the ruling by the Svea Court of Appeal did

not bar re-litigation of that issue in the United Kingdom.  Opp. at 39-40.  However, like the

majority of U.S. courts, the United States District for the District of Columbia follows domestic

rules of preclusion, not the laws of the United Kingdom.  *See Hurst v. Socialist People's Libyan

Arab Jamahiriya*, 474 F. Supp. 2d 19, 32-33 (D.D.C. 2007).  Moreover, as noted above, the

ROK's suggestion that the Defendants "affirmatively represented to the High Court in the

London Proceedings that the merits of Kazakhstan's fraud allegations have not been adjudicated

and would in fact be adjudicated in this RICO after full discovery and trial" (Opp. at 39)

(emphasis omitted), is wrong.  The portion of the judgment cited does not include a statement by

Defendants that the fraud allegations were not adjudicated, nor does any other portion of the

judgment.  In fact, in the High Court's June 6, 2017 judgment, the court noted that Mr. Sprange

QC, attorney for Defendants, represented to the court that "the Claimants' case that the Award

was obtained by fraud, was 'fully ventilated'" by the Swedish court.  ECF 51-1 at ¶ 58.

Once the Court recognizes the Svea Court of Appeal judgment, under the doctrine of

claim preclusion "'a subsequent lawsuit will be barred if there has been prior litigation (1)

involving the same claims or cause of action, (2) between the same parties or their privies, and

(3) there has been a final, valid judgment on the merits, (4) by a court of competent

jurisdiction.'"  *Casares v. Wells Fargo Bank, N.A.*, 268 F. Supp. 3d 248, 254 (D.D.C. 2017).

The ROK argues that preclusion does not apply because the cause of action to set aside

the Award was different than the RICO and fraud counts in the Complaint.  Opp. at 40.  That is

not the test.  In the D.C. Circuit, two lawsuits involve the same "cause of action" when "the

claims arise from the same 'nucleus of facts.'"  *Alford v. Providence Hosp.*, 60 F. Supp. 3d 118,

125 (D.D.C. 2014).  As outlined in the Brief, the claims in both actions arise from the same

nucleus of facts.  Brief at 39-40.  The ROK also argues that claim preclusion should not apply

because it could not have raised its RICO and fraud claims before the Svea Court of Appeal due

to the applicable Swedish laws.  The Svea Court of Appeal, however, did address the ROK's

claims that the Award was invalid "based on the fraudulent scheme, false, evidence, [and]

misleading information."  Svea Court of Appeal Opinion, ECF 45-3, § 5.3.1.  Because the ROK

had the opportunity to challenge the Award on the ground of fraud, this argument fails.  The

ROK's attempt to restyle its cause of action as a RICO claim or rely on additional evidence that

was available to it at the time of the Svea Court proceedings is irrelevant.  *See, e.g., Lary v.

Ansari*, 817 F.2d 1521, 1523 (11th Cir. 1987) (barring RICO action based on res judicata

because "[a]lthough styled as a RICO claim, the complaint here relies on the same allegations of

misconduct by Ansari as did the prior suit.")  *Henry v. Farmer City State Bank*, 808 F.2d 1228,

1236 (7th Cir. 1986) ("Even assuming, however, that the federal courts have exclusive

jurisdiction over RICO claims, the Henrys were still required to raise their allegations of fraud

and forgery, which form the sole basis for their RICO claims, as a defense to the mortgage

foreclosures.") (citations omitted).  Indeed, as in *Henry*, the fraud allegations made by the ROK

to the Svea Court of Appeal are the basis for its RICO claims.  The ROK now seeks the same

relief it sought in the Svea Court of Appeal—to set aside the Award—and both proceedings arise

from the same nucleus of facts.  Since the ROK could, and did, raise its fraud claims before the

Svea Court of Appeal, the Complaint should be dismissed.

## III.    CONCLUSION

WHEREFORE, Defendants respectfully request that the Court dismiss the Complaint

without leave to amend.

Dated: New York, New York
        June 11, 2018

                                        Respectfully submitted,

                                         /s/ James E. Berger
                                        James E. Berger (DC Bar No. 481408)
                                        Charlene C. Sun (DC Bar No. 1027854)
                                        KING & SPALDING LLP
                                        1185 Avenue of the Americas
                                        New York, NY  10036
                                        Tel: (212) 556-2100
                                        Fax: (212) 556-2222
                                        jberger@kslaw.com
                                        csun@kslaw.com

                                        Taylor T. Lankford (DC Bar No. 1002758)
                                        KING & SPALDING LLP
                                        1700 Pennsylvania Ave., N.W., Ste. 200
                                        Washington, DC  20006
                                        Tel: (202) 737-0500
                                        Fax: (212) 626-3737
                                        tlankford@kslaw.com

                                        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 11, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

 /s/ James E. Berger
*Counsel for Defendants*