UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                    |   |                              |
|------------------------------------|---|------------------------------|
| REPUBLIC OF KAZAKHSTAN,            | ) |                              |
|                                    | ) |                              |
| Plaintiff,                         | ) |                              |
|                                    | ) |                              |
| v.                                 | ) | Civil Action No. 17-2067 (ABJ) |
|                                    | ) |                              |
| ANATOLIE STATI, *et al.*,          | ) |                              |
|                                    | ) |                              |
| Defendants.                        | ) |                              |

## MEMORANDUM OPINION

Plaintiff, the Republic of Kazakhstan ("Kazakhstan"), brought this civil suit against the defendants – Anatolie Stati, Gabriel Stati, and the two companies they own, Ascom Group, S.A. and Terra Raf Trans Traiding Ltd. (the "Stati Parties") – for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., and the common law torts of fraud and civil conspiracy. Compl. ¶ 1 [Dkt. # 1]. Kazakhstan claims that defendants obtained an arbitral award from the Stockholm Chamber of Commerce ("SCC") in Sweden through fraud, and that defendants' subsequent efforts to use legal process to enforce and collect on that arbitral award have been unlawful. *Id.* ¶¶ 6, 8. Kazakhstan filed this lawsuit while an action to enforce the arbitral award was already pending in this Court, and it seeks damages, attorneys' fees, and an injunction preventing defendants from enforcing the foreign arbitral award in the United States. *Id.*, "Prayer for Relief," at 92–93.

The Stati Parties moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposed the motion, and the matter is ripe for decision. For the reasons that follow, the Court will grant defendants' motion and dismiss the ill-

advised lawsuit. A RICO civil suit is not a vehicle to challenge non-frivolous litigation, or in this case, a valid and final foreign arbitral award.

## BACKGROUND

In a related case to enforce the same foreign arbitral award, this Court granted the Stati Parties' petition to confirm the award pursuant to the New York Convention. *Anatolie Stati v. Republic of Kazakhstan*, 302 F. Supp. 3d 187, 209 (D.D.C. 2018).[1] The Court held that Kazakhstan did not establish any of the narrow grounds for denying confirmation of the foreign award. *Id.* at 202–09. The facts surrounding this case are discussed in detail in that opinion.

To briefly recap, the Stati Parties initiated arbitration proceedings seeking reparations against Kazakhstan with the Stockholm Chamber of Commerce on July 26, 2010 for the expropriation of their assets, including an unfinished liquified petroleum gas plant ("LPG plant"). Compl. ¶¶ 6, 138. On December 19, 2013, the SCC tribunal found that Kazakhstan violated its obligations under the Energy Charter Treaty, and it issued an award in favor of the Stati Parties in the amount of $497,685,101.00, which included $199 million for the LPG plant. *Id.* ¶¶ 158–59.

Kazakhstan attempted to nullify the SCC award by instituting proceedings before the Svea Court of Appeal in Stockholm. Compl. ¶ 183. It argued, among other things, that the SCC award was procured by fraud. *Id.* ¶ 185. The alleged fraud concerned the value of the LPG plant. *Id.* ¶ 5. According to plaintiff, prior to the initiation of the arbitral proceedings, the Stati Parties "created a number of illegitimate contractual documents with related parties for the

---

1     In the same opinion, the Court also denied Kazakhstan's motion to reconsider the Court's denial of its motion for leave to include additional defense grounds premised on a theory that the Stati Parties obtained the SCC award through fraud. *Stati*, 302 F. Supp. 3d at 196–201. The Court found that it did not err as a matter of law when it found that Kazakhstan had failed to demonstrate a connection between the complained-of fraud and the arbitral decision. *Id.* at 199–201.

purpose of artificially inflating the construction costs of the LPG [p]lant." *Id.* ¶ 65. These falsified construction costs, Kazakhstan alleges, were included in financial statements, which were in turn used to fraudulently induce companies, including the state-owned oil and gas company, KazMunaiGas ("KMG"), into bidding $199 million for the LPG plant in 2008. *Id.* ¶¶ 5, 116, 130–31. Thus, Kazakhstan charges that the Stati Parties misrepresented the value of the LPG plant during the SCC arbitration when they proffered "the fraudulently procured bids," the "falsified financial statements," "false testimony regarding the amount of the investment in the LPG [p]lant," and "expert reports" that restated those figures as evidence. *Id.* ¶ 152. According to Kazakhstan, based upon this "false evidence" the arbitral panel awarded the Stati Parties $199 million in compensation for the LPG plant. *Id.*

Despite what Kazakhstan characterizes as its "detailed and specific allegations regarding [d]efendants' fraudulent scheme," the Svea Court of Appeal affirmed the arbitral award on December 9, 2016. Compl. ¶ 188. Kazakhstan then filed a motion to the Swedish Supreme Court seeking to quash the Svea Court of Appeal's judgment due to "grave procedural errors." *Id.* ¶ 190. That legal challenge also failed. On October 24, 2017, the Swedish Supreme Court denied Kazakhstan's motion. *Stati*, 302 F. Supp. 3d at 196.

Although the Swedish Supreme Court decision extinguished Kazakhstan's hope of vacating the final arbitral award, the legal battle to resist the award's enforcement rages on in several jurisdictions across Europe and the United States where the Stati Parties initiated enforcement proceedings to collect on the award.[2] Compl. ¶¶ 194–247. This suit, for alleged

---

2      *See TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 939 (D.C. Cir. 2007) ("From the plain language and history of the [New York] Convention, it is thus apparent that a party may seek to vacate or set aside an award in the state in which, or under the law of which, the award is rendered.").

RICO violations, is the latest chapter. In its 93-page complaint, plaintiff accuses defendants of engaging in a "sophisticated and wide-ranging illegal pattern of racketeering," based upon its efforts to fraudulently inflate the value of the LPG plant, both prior to and during the SCC arbitration, and its ongoing litigation activities to enforce and collect on the SCC award. Compl. ¶¶ 2, 5–18.

Plaintiff filed this suit on October 5, 2017. *See* Compl. Defendants moved to dismiss the complaint on April 20, 2018, arguing that plaintiff failed to state a claim, Defs.' Mot. to Dismiss [Dkt. # 19] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss [Dkt. # 19-1] ("Defs.' Mem."). Plaintiff filed its opposition to the motion on May 25, 2018, *see* Rep. of Kazakhstan's Mem. of P. & A. in Opp. to Defs.' Mot. [Dkt. # 26] ("Pl.'s Opp."), and defendants filed their reply on June 11, 2018. *See* Reply of Defs.' Mot. to Dismiss [Dkt. # 28] ("Defs.' Reply").[3]

The Court finds that plaintiff failed to state a RICO claim based upon a "scheme" that amounts to a protracted legal dispute over an LPG plant. Accordingly, the Court will dismiss the RICO claims with prejudice, and it declines to exercise supplemental jurisdiction over the common law claims of fraud and civil conspiracy.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is

---

3   On April 24, 2018, the Court granted defendants' Motion to Vacate the Clerk's Entry of Default against Ascom Group, S.A. and Terra Raf Trans Traiding Ltd. *See* Order [Dkt. # 20]; Mem. Op. [Dkt. # 21].

4

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Therefore, when considering a motion to dismiss, a court must construe a complaint liberally in the plaintiff's favor. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the

Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.     The RICO Claims**

In Count I and II of its complaint, Kazakhstan alleges that the Stati Parties violated the RICO statute, 18 U.S.C. § 1962(c), by engaging in a pattern of racketeering activity involving mail fraud, wire fraud, and money laundering, as well as a conspiracy to commit those offenses, 18 U.S.C. § 1962(d). Compl. ¶¶ 253–87.[4] Plaintiff alleges that defendants engaged in fraud to inflate the value of the LPG plant to enrich themselves, concealing the alleged fraud during the SCC arbitration and in the subsequent proceedings to enforce the arbitral award. *Id.* ¶¶ 5–11.

Defendants have moved to dismiss the RICO claims on several grounds, arguing that: 1) the complaint fails to allege cognizable predicate acts of racketeering; 2) plaintiff has failed to allege a pattern of racketeering activity; 3) plaintiff seeks to impermissibly apply RICO to conduct that is overwhelmingly extraterritorial; 4) plaintiff fails to allege a domestic injury; and 5) plaintiff fails to allege proximate causation between the predicate acts and the alleged harm. Defs.' Mem. at 10–28.

---

4      Kazakhstan requests that the Court deny the Stati Parties' motion to dismiss on the basis of the doctrine of judicial estoppel "given that the Stati Parties, on March 26, 2018, represented to the High Court of London – in enforcement proceedings concerning the SCC Award – that the merits of Kazakhstan's fraud allegations will be adjudicated in this case, after discovery and oral evidence." Pl.'s Opp. at 1. The Court reviewed the judgment of the High Court, and it finds that judicial estoppel is unwarranted, *see Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010), particularly given the Justice's statements that he "certainly cannot assume there will be the trial in the United States," and his observation that the Stati Parties' counsel did not foreclose the possibility of a jurisdictional challenge to this RICO suit. Ex. A to Pl.'s Opp. [Dkt. # 26-1] ¶ 29.

Because the Court finds that the complaint fails to adequately allege the necessary predicate acts and a pattern of racketeering, plaintiff's RICO claims fail, and the Court need not address defendants' other arguments.

Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Section 1964(c) allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to bring a civil suit for treble damages, costs, and attorneys' fees. 18 U.S.C. § 1964(c). A private RICO plaintiff must allege a *domestic* injury to its business or property, *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2106 (2016) (emphasis in original), and the injury must be proximately caused by the alleged RICO violation. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 462 (2006).

"Racketeering activity" encompasses "any act which is indictable" under a specific list of federal criminal offenses known as "predicate offense[s]." 18 U.S.C. § 1961(1)(B); *RJR Nabisco*, 136 S. Ct. at 2096–97.[5] In order to establish a "pattern of racketeering activity" a plaintiff must allege "at least two acts of racketeering activity . . . within ten years." 18 U.S.C. § 1961(5). And "in addition to the requisite number of predicate acts, the plaintiff must [also] show 'that the racketeering predicates are related, *and* that they amount to or pose a threat of

---

5  Under the statute, "racketeering activity" also "means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

7

continued criminal activity.'" *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1264 (D.C. Cir. 1995), quoting *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

### a. Plaintiff fails to allege predicate acts.

Plaintiff's RICO claims are predicated on violations of the mail fraud, wire fraud, and money laundering statutes. Compl. ¶¶ 263, 274, 283. Kazakhstan contends that by transmitting "pleadings, briefs, witness statements" and other litigation materials during the SCC arbitral proceeding and the subsequent enforcement actions, defendants committed various acts of mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343. Pl.'s Opp. at 8; Compl. ¶ 263. Kazkhstan also accuses the Stati Parties of engaging in "money laundering" in violation of 18 U.S.C. § 1956(a)(2)(A) and (B)(i), because they paid their attorneys' legal fees in connection with those proceedings. Compl. ¶ 274; Pl.'s Opp. at 8. The complaint alleges that these litigation activities constituted a "pattern of racketeering" because the pleadings were transmitted, and the legal fees paid, on an ongoing basis. Compl. ¶¶ 263, 274. Kazakhstan further alleges that these predicate acts were the direct and proximate cause of its injuries: "the money spent defending the U.S. Enforcement Actions." Pl.'s Opp. at 28, citing Compl. ¶¶ 252, 277, 285.

At bottom, the RICO claims are entirely predicated on defendants' initiation and prosecution of non-frivolous litigation, and plaintiff's alleged domestic injuries consist of the legal costs it incurred in resisting the enforcement of a valid and binding arbitral award. This far-fetched theory of RICO liability lacks legal support.

Courts do not allow allegedly fraudulent "'litigation activities,' such as filing fraudulent documents or engaging in baseless litigation to serve as predicate acts for RICO . . . where such acts constitute 'the only allegedly fraudulent conduct.'" *Feld Entm't, Inc. v. Am. Soc'y for the*

*Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318–19 (D.D.C. 2012), quoting *Daddona v. Gaudio*, 156 F. Supp. 2d 153, 162 (D. Conn. 2000); *see also Quick v. EduCap, Inc.*, 318 F. Supp. 3d 121, 141–42 (D.D.C. 2018) ("As Plaintiffs' RICO claim is premised entirely on mailings done for the purpose of litigation activity, they have failed to state a claim."). In a case in this district recently upheld by the D.C. Circuit, the court recited the broadly accepted principle that, "[a]busive or sham litigation does not constitute a RICO predicate act." *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) (collecting cases), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015). In dismissing the RICO claims, the Court held that "the vast majority of the plaintiff's litany of woes delineated in the complaint cannot, as a matter of law, form the basis of a RICO complaint, since they are all directly related to ongoing, non-frivolous litigation." *Id.* at 13–14.

The same principle applies here. The predicate acts of mail fraud and wire fraud that Kazakhstan lists to support its RICO claim all involve the filing of legal documents and complaints. *See, e.g.*, Compl. ¶ 263 ("Stati Parties submit Request for Arbitration," "Stati Parties file Petition to Confirm Arbitral Award," "Stati Parties file Complaint to enforce, *inter alia,* amount of the SCC Award").

Numerous other circuit courts and district courts across the country have concluded that wrongful litigation activities cannot serve as RICO predicate acts. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016), quoting *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) ("[P]rosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system. Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecutions into federal RICO actions."); *Pendergraft*, 297 F.3d at 1208 ("Serving a motion by mail is an ordinary

litigation practice. A number of courts have considered whether serving litigation documents by mail can constitute mail fraud, and all have rejected that possibility. . . . [T]hese courts have rejected this mail-fraud theory on policy grounds, recognizing that such charges are merely artfully pleaded claims for malicious prosecution."); *I.S. Joseph Co., Inc. v. J. Lauritzen A/S,* 751 F.2d 265, 267–68 (8th Cir. 1984) ("If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."); *Snyder v. U.S. Equities Corp.*, No. 12-CV-6092, 2014 WL 317189, at *7–8 (W.D.N.Y. Jan. 28, 2014) (rejecting RICO mail fraud and wire fraud predicate acts where "the gravamen of the allegations is . . . that the defendants pursued fraudulent litigation, using fraudulent affidavits and filings, in an attempt to obtain money or property to which they were not entitled"); *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 170–74 (E.D.N.Y. 2010), *aff'd,* 443 Fed. Appx. 582 (2d Cir. 2011) (dismissing RICO claim predicated on mail fraud and wire fraud because all of the predicate acts "involve the mailing of litigation documents such as pleadings"); *Auburn Med. Ctr., Inc. v. Andrus*, 9 F. Supp. 2d 1291, 1298 (M.D. Ala. 1998) ("Numerous other courts have found that the actions underlying claims for malicious prosecution, or analogous actions in the litigation context, will not support a RICO action.").

The Court's conclusion is consistent with the D.C. Circuit's admonition regarding RICO claims premised on mail fraud or wire fraud in general:

> RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it . . . This caution stems from the fact that "[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice."

*W. Assocs. Ltd. P'ship, ex rel. Ave. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001), quoting *Al–Abood ex rel. Al–Abood v. El–Shamari,* 217 F.3d 225, 238 (4th

Cir. 2000); *see id.* ("Although a RICO claim may be based only on predicate acts consisting exclusively of mail and wire fraud, scrutiny of such claims is necessary, and not inconsistent with the breadth of RICO.").

Plaintiff insists that its RICO suit can be distinguished from this general principle because the "fraud claims are not the only bases for the civil RICO violation" – the complaint included a money laundering claim as well. Pl.'s Opp. at 11. But that misses the mark since the alleged "money laundering" consists merely of defendants' payments of their legal fees. *See* Compl. ¶ 274.[6] This too is a litigation-related activity. Not surprisingly, plaintiff has not

---

6    Moreover, plaintiff has not stated a claim for money laundering that could support the RICO allegations. Plaintiff alleges that defendants violated sections 1956(a)(2)(A) and (B)(i) of the money laundering statute by "making payments from outside the United States to counsel in the United States." Compl. ¶ 274. The federal money laundering statute provides:

> **(2)** Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States
> **(A)** with the intent to promote the carrying on of specified unlawful activity; or
>
> **(B)** knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part –
> **(i)** to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
> 18 U.S.C. §§ 1956(a)(2)(A) & (B)(i)

18 U.S.C. §§ 1956(a)(2)(A) & (B)(i).

But Kazakhstan's suggestion that funds were transmitted with the intent to promote "specified unlawful activity" in violation of section 1956(a)(2)(A) of the money laundering statute, fails for the reasons set forth above: according to plaintiff, the "unlawful activity" of mail fraud and wire fraud is based solely on the filing of "fraudulent pleadings, briefs, witness statements, and other evidence in the various legal proceedings." Pl.'s Opp. at 12.

11

identified a single decision in which a court sustained RICO allegations based solely on the transmission of litigation materials and the payment of legal fees associated with the enforcement of a valid and binding arbitral award. The cases plaintiff cites are all distinguishable because the complained-of lawsuits were not only frivolous, but they involved other unlawful conduct, such as bribery and/or the intimidation of witnesses and third parties.[7] Pl.'s Opp. at 11.

### b. Plaintiff fails to allege a pattern of racketeering.

Even if plaintiff had succeeded in alleging predicate acts that are cognizable under the RICO statute, its RICO claims would fail because it has not properly alleged a "pattern of racketeering activity." 18 U.S.C. § 1962 (c). In *Edmondson*, the D.C. Circuit outlined six factors that are relevant in determining the existence of a "pattern of racketeering." 48 F.3d at 1263. These factors are: "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Id.* at 1265, quoting *Kehr Packages, Inc. v. Fidelcor*,

---

Plaintiff's claim under section 1956(a)(2)(B)(i) fares no better. To make out a claim under this provision a plaintiff must allege that a defendant transmitted money into or outside the United States, knowing that the monies involved "represent the proceeds of some form of unlawful activity." 18 U.S.C § 1956(a)(2)(B)(i). Plaintiff's complaint recites the elements of the provision but fails to allege that the money used to pay defendants' attorneys was derived from any "unlawful activity." *See* Compl. ¶ 274. In its opposition, Kazakhstan contends that the Stati Parties used "proceeds raised fraudulently in the United States" to pay their attorneys' fees. Pl.'s Opp. at 13, citing Compl. ¶¶ 38–57, 65–102. However, those paragraphs make no reference of the use of illegally obtained funds to pay attorneys' fees. Therefore, plaintiff has failed to allege facts to support a conclusion that defendants engaged in the RICO predicate crime of money laundering.

7     *See U.S. v. Eisen*, 974 F.2d 246, 257 (2d Cir. 1992) (criminal RICO case involving fraudulent lawsuits as well as witness bribery); *Lemelson v. Wang Labs. Inc.*, 874 F. Supp. 430, 434 (D. Mass. 1994) (alleging extortion in addition to mail fraud and wire fraud); *Hall American Center Assoc. L.P. v. Dick*, 726 F. Supp. 1083, 1097 (E.D. Mich. 1989) (alleging predicate acts outside the conduct of litigation, such as harassment of third parties, interference with a joint venture, and an attempt to persuade the United States Attorney to investigate the plaintiff).

*Inc.*, 926 F.2d 1406, 1411–13 (3d Cir. 1991). The six factors serve as a guide, rather than a strict legal test, and courts are encouraged to evaluate cases using a "fact-specific approach" that is both "flexible" and "commonsensical." *W. Assocs.*, 235 F.3d at 637. In some cases, "some factors will weigh so strongly in one direction as to be dispositive." *Edmondson*, 48 F.3d at 1265.

Applying this framework, the *Edmonson* court rejected a real estate developer's RICO claim premised on allegations that a tenants' association illegally blocked the sale of building. 48 F.3d at 1265. The real estate developer accused the tenants' association of committing extortion, bribery, and perjury by "exploit[ing] [a] quiet-title action, holding the building sale hostage and thereby attempting to force [the developer] to pay them off." *Id.* at 1263. The D.C. Circuit affirmed the dismissal of the RICO claims because "the single scheme alleged – designed to frustrate one transaction and inflicting a single, discrete injury on a small number of victims – fail[ed] to meet RICO's requirement of a 'pattern of racketeering activity.'" *Id*. Notably, the Court held that when a plaintiff merely alleges a "single scheme, single injury, and few victims," it is "virtually impossible for plaintiffs to state a RICO claim." *Id.* at 1265. That is squarely the case here.

Plaintiff's 93-page complaint describes a single scheme. As summarized by plaintiff: "The Complaint sets out the details of the Stati Parties' elaborate and fraudulent scheme to artificially inflate the construction costs of the LPG plant, conceal that fraud during the SCC Arbitration to obtain the SCC Award, and then attempt to enforce the fraudulently procured SCC Award in multiple jurisdictions, including the United States." Pl.'s Opp. at 10. While there are various stages to this alleged scheme, ultimately all of the actions described in the complaint were aimed at accomplishing a "single discrete goal," *Edmondson*, 48 F.3d at 1265 – defendants'

13

efforts to artificially inflate the value of the LPG plant to enrich themselves. Moreover, plaintiff pled a single, discrete injury – legal fees – and a single victim – itself. *See* Compl. ¶¶ 252, 277, 285.[8] Accordingly, the Court finds that plaintiff has not pled a "pattern of racketeering." *See W. Assocs.*, 235 F.3d at 634 (dismissing RICO claim where plaintiff alleged single scheme of fraudulent bookkeeping entries, resulting in single injury to single set of victims); *Papageorge*, 31 F. Supp. 3d at 13 (rejecting RICO claim because "plaintiff has only alleged that the defendants engaged in acts designed to" achieve a "single discrete goal": "obtain[ing] control of the Property from the plaintiff at a low price").

Defendant insists that its RICO claims survive based upon Supreme Court and D.C. Circuit precedent which provides that in some circumstances, a single scheme may be sufficient under RICO. Pl.'s Opp. at 17, citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 234, 236, 240 (1989) and *W. Assocs.*, 235 F.3d at 634. While there may be cases that have recognized that possibility, the facts here do not support varying from the general principles that would apply to a complaint that alleges a single scheme, single injury, and single victim. The mere fact that the alleged scheme occurred over an extended period of time, is of no consequence in this case, because the acts listed relate to the same goal, and much of the time spent on these matters was expended dealing with Kazakhstan's repeated efforts to undermine the arbitral award. *See W. Assocs.*, 235 F.3d at 636 ("[T]he mere longevity of a scheme or schemes does not necessarily mean that a 'pattern of racketeering activity' is present.").

---

8     Plaintiff contends that it pled "multiple victims of the Stati Parties' fraud," including defrauded investors, the Kazakhstan-owned oil and gas company, and auditors. Pl.'s Opp. at 8. The complaint does not allege that these parties were the victims of the conduct that forms the basis of the predicate acts – the "wrongful" litigation and payments to counsel. *See* Compl. ¶¶ 45, 130, 214, 252. But even if did, it would merely mean that plaintiff identified "a few" rather than single victim, which does not change the outcome. *Edmonson*, 48 F.3d at 1265; *see also Lu v. Lezell*, 45 F. Supp. 3d 86, 98 (D.D.C. 2014) ("Nor does RICO apply merely because a single, narrow, fraudulent scheme affects numerous plaintiffs.").

At bottom, this suit is yet another attempt to relitigate the underlying arbitral award. Whatever fraud Kazakhstan contends occurred before and during the SCC arbitration more than eight years ago, it had a full opportunity to raise those issues in the appeals process in Sweden and its allegations were rejected. Kazakhstan tried again in the numerous subsequent proceedings where it has resisted the enforcement of the arbitral award on the same grounds. As the Court noted in its prior opinion, the grounds for refusing the enforcement of a foreign arbitral award under the New York Convention are "narrow," and Kazakhstan failed to meet its "heavy burden." *Stati*, 302 F. Supp. 3d at 202, 209. Casting defendants' enforcement proceedings now as an unlawful "pattern of racketeering activity," is an improper use of the auspices of this Court to revive and prolong a dispute that is over. The motion to dismiss will be granted.

Because the Court finds that plaintiff failed to allege a substantive RICO violation under Section 1962(c), it also finds that it has failed to plead a conspiracy to violate RICO under Section 1962(d). *See Papageorge*, 31 F. Supp. 3d at 15–16 (dismissing RICO conspiracy claim under § 1962(d) where plaintiff failed to plead a RICO violation under 18 U.S.C. § 1962(a)–(c)). Accordingly, Counts I and II of the complaint are dismissed with prejudice.

## II. The State Law Claims

Having dismissed plaintiff's federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims of fraud and civil conspiracy. Under 28 U.S.C. § 1367(c) a district court "may decline to exercise supplemental jurisdiction over a claim" when the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). This decision "is a matter left to the sound discretion of the district court," and is reviewed for "abuse of discretion." *Edmondson*, 48 F.3d at 1265–66. However, the D.C. Circuit has noted that, "[i]n the usual case in which all federal-law claims are eliminated before

trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Anderson v. Holder*, 647 F.3d 1165, 1174 (D.C. Cir. 2011), quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Edmondson*, 48 F.3d at 1266–67 (holding that the principles of "comity and fairness point[ed] strongly towards having the District of Columbia's courts decide the [local] claims," and that the district court abused its discretion by exercising supplemental jurisdiction over the local-law claims after it had dismissed the federal RICO claims). Accordingly, the Court will dismiss Counts III and IV without prejudice.

## CONCLUSION

Because plaintiff has failed to plead predicate acts or a pattern of racketeering activity, the Court will dismiss its RICO claims under Counts I and II with prejudice. The Court declines to exercise supplemental jurisdiction over the common law counts of fraud and civil conspiracy. Accordingly, Counts III and IV are dismissed without prejudice. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 30, 2019